## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**THOMAS O'NEAL,**

      **Plaintiff,**                                                    **CASE NO.:**

**vs.**

**AMERICAN SHAMAN FRANCHISE**
**SYSTEMS, INC.; CBD AMERICAN SHAMAN,**
**LLC; FLORIDA SHAMAN PROPERTIES, LLC;**
**BRANDON CARNES; and KATELYN SIGMAN,**

      **Defendants.**

_____/

## COMPLAINT

Plaintiff, Thomas J. O'Neal ("Plaintiff" or "O'Neal") sues the Defendants, American Shaman Franchise Systems, Inc. ("Shaman Franchise"); CBD American Shaman, LLC ("American Shaman"); Florida Shaman Properties, LLC ("Florida Shaman"); Mr. Brandon Carnes ("Carnes"); and Ms. Katelyn Sigman ("Sigman") (collectively, "Defendants"), and alleges as follows.

### JURISDICTION AND VENUE

1.      The Court has jurisdiction over this case in accordance to 28 U.S.C. § 1331.

2.      Venue lies within the United States District Court for the Middle District of Florida, Tampa Division because a substantial part of the events giving rise to this claim occurred in this Judicial District and is therefore proper pursuant to 28 U.S.C. § 1391(b).

### PARTIES

3.      Plaintiff resides in Ohio.

4.      Defendant, Shaman Franchise is a foreign corporation based in Nevada and doing

business in Hillsborough County, Florida.

5.      Defendant, American Shaman is a foreign limited liability company, based in Kansas City, Missouri and doing business in Hillsborough County, Florida.

6.      Defendant Florida Shaman in a domestic limited liability company, based and doing business in Hillsborough County, Florida

7.      Defendant Carnes is, upon information and belief, a Kansas resident.

8.      Defendant Sigman is, upon information and belief, a Kansas resident.

## GENERAL ALLEGATIONS

9.      At all times material, Plaintiff was qualified to perform his job duties within the legitimate expectations of his employers.

10.     Plaintiff has been required to retain the undersigned counsel to represent him in this action and is obligated to pay them a reasonable fee for their services.

11.     Plaintiff requests a jury trial for all issues so triable.

12.     Defendants are a joint employer or a common enterprise.

## FACTS

13.     Defendant American Shaman retails hemp derived CBD products at retail locations across the United States.  American Shaman sells franchises for these retail establishments through its affiliate Shaman Franchise.  Florida Shaman is an American Shaman franchisee operated by Carnes and Sigman in the Tampa Bay area.

14.     In May 2018, Plaintiff met Mr. Bud Miley ("Miley"), the President of Shaman Franchise.  During the course of that initial meeting, Mr. Miley discussed American Shaman and its franchising system.

15.     The following month, in June of 2015, Plaintiff travelled to Tampa to meet with

Miley and Mr. Vince Sanders ("Sanders"), the CEO/Founder of American Shaman.  During that meeting Miley and Sanders discussed ways Plaintiff could get involved in American Shaman and told Plaintiff that they expected Florida to be a large retail market for its products.

16.     Over the next several months, Plaintiff and Miley continued to discuss options for Plaintiff to join American Shaman.  Those discussions culminated in an August 29, 2018 Agreement, a copy of which is attached as Exhibit A ("Agreement").

17.     Under the terms of the Agreement, American Shaman planned to place one or more stores in the Florida market, which Plaintiff agreed to manage.  American Shaman would cover the initial costs to open the store, and Plaintiff would work and/or staff the store for 60 hours per week.

18.     The Agreement further provided that Plaintiff would be paid $1,200 per week as a non-recoverable draw against commissions, and that Plaintiff would own 30% of the business.  As a 30% owner of the business, Plaintiff was entitled to 30% of the net profits to be paid monthly. The parties also agreed that the Plaintiff's ownership interest would increase when certain sales figures were met.

19.     In early September, after signing the Agreement, Plaintiff travelled to Tampa to begin looking for store locations.  Plaintiff ultimately located a retail location on Dale Mabry Highway in Tampa and negotiated a lease that was executed in late October.

20.     In November 2018, Miley introduced Plaintiff to Mr. Joe Griffith, who Plaintiff understood to be a general contractor that would help him build out the store.  Plaintiff would ultimately learn, however, that Griffith was a close friend of Miley and involved in managing several American Shaman stores in the area.

21.     On November 16, 2018, Plaintiff arrived in Tampa to check on the progress of the

store and work on the build-out.  Griffith was reportedly working on another new location in Orlando, so Plaintiff did much of the initial prep work (i.e. painting walls) alone.

22.     On November 24, 2018, Plaintiff flew to Kansas City, Missouri for sales training at Defendant's corporate location.  During his visit to Kansas City, Plaintiff met with Miley and asked whether he would begin to pay him, since Plaintiff was then already working regularly on the administrative tasks necessary to open the store.  Miley rejected Plaintiff's request to be paid, but noted that he had spoken with Griffith and the store would be ready to open on December 7, 2018.

23.     On December 5, 2018, Plaintiff returned to Tampa expecting the store to be nearly ready to open.  To his dismay, however, he saw that Griffith had done very little to prepare the store to open.

24.     Throughout early December, Plaintiff worked with Griffith at the store to prepare it to open.  Defendant was still not paying Plaintiff anything at that point.

25.     On December 14, 2018, Plaintiff received his first shipment of CBD oils and creams and was told to begin selling.  For the remainder of December, Plaintiff attempted to sell product while completing the store build out.   Sales were initially slow.

26.     In early January 2019, Griffith called to let him know that Brandon Carnes and Katie Sigman would be coming by the Tampa store later with him.  Carnes and Sigman, Plaintiff learned, were American Shaman franchisees with multiple stores throughout Florida.

27.     Shortly thereafter, Griffith instructed Plaintiff to close his Tampa store on January 11 and 12, and to travel for a grand opening of a new store in Manatee County owned by Carnes and Sigman.  Plaintiff objected because he wanted to keep the Tampa store open, but he ultimately complied.

4

28.     On January 11, Plaintiff asked whether he had to return to Manatee the next day, again noting his desire to open his store in Tampa.  Griffith, with Sigman present, said "you need to come down to open the store tomorrow.  You are working for Brandon [Carnes] and Katie [Sigman] now."  Sigman said something about their goal to increase sales in Tampa, and noted that they needed help in Manatee.

29.     The next day, Carnes and Sigman denied having any intent to take over his store in Tampa, just stating that they all had to work together so everyone could grow.

30.     Nevertheless, from that point forward Carnes and Sigman became increasingly involved in the Tampa store.  For example, Plaintiff was instructed to report his daily sales to Carnes.  On January 17, 2019, Carnes arrived at the store to install a video and audio surveillance device.

31.     On January 24, 2019, a Frontier Communications representative came by the store to pick up some equipment that had been previously installed.  That representative confirmed that the equipment Carnes had installed recently was capable of intercepting and recording audio.  The Frontier representative told Plaintiff that to be legal the store should post warnings on the door to notify customers that their conversations could be recorded.

32.     That same day, Plaintiff emailed Griffith and notified him that he was unplugging the audio and video recordings because he understood that intercepting communication could be illegal and potentially expose himself and Defendants to legal liability.

33.     At 6:00 pm that evening, Griffith came to the store and notified Plaintiff that he was terminated effective immediately and that a locksmith would be there shortly to change the locks.

34.     Defendants did not pay Plaintiff for any of the services that he provided in

September, October, November, and several weeks in December. Defendants have not paid Plaintiff 30%, or any other amount for profits from the business in which he has a 30% ownership interest pursuant to contract.

## COUNT I - BREACH OF CONTRACT
### (against Shaman Franchise)

35.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

36.     Plaintiff and Defendant Shaman Franchise entered into a valid contract, a copy of which is attached as Exhibit A.

37.     Although Plaintiff performed all of his conditions and obligations of his contract with Defendant, Defendant has failed and refused to make payments required under the contract.

38.     As a direct and proximate legal result of Defendant's breach of contract, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

a.      Unpaid earnings and/or wages/commissions and/or profits;

b.      Damages arising from the breach;

c.      Prejudgment and post-judgment interest;

d.      Attorneys' fees and costs pursuant to Fla. Stat. § 448.08; and

e.      Such other relief as the Court may deem just and proper.

**WHEREFORE,** Plaintiff, Thomas O'Neal, demands a trial by jury and judgment against Defendant, American Shaman Franchise Systems, Inc. for damages plus interest, attorney's fees, and costs, and for such other and further relief to which Plaintiff may be justly entitled.

## COUNT II - TORTIOUS INTERFERENCE WITH A CONTRACT
### (against Florida Shaman, Carnes, and Sigman)

39.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in

Paragraphs one (1) through thirty-four (34).

40.     A valid contract existed between Plaintiff and Defendant Shaman  Franchise.

41.     Defendants Florida Shaman, Carnes, and Sigman knew Plaintiff had a valid contract with Shaman Franchise.

42.     Despite their knowledge of that contract, Defendants Florida Shaman, Carnes, and Sigman took actions causing the breach of that contract.

43.     The conduct of Defendants Florida Shaman, Carnes, and Sigman constitutes an intentional and willful tortious interference with Plaintiff's contractual relationship.

44.     As a direct and proximate legal result of Defendants' breach of contract, Plaintiff has suffered and continues to suffer damages, including, but not limited to, the following:

      a.     Back pay and benefits;

      b.     Lost Profits;

      c.     Interest on back pay and lost profits;

      d.     Front pay and/or lost earning capacity;

      e.     Compensatory damages;

      f.     Costs;

      g.     Other relief as the Court deems equitable.

**WHEREFORE,** Plaintiff, Thomas O'Neal, demands a trial by jury and judgment against Defendants, Florida Shaman Properties, LLC, Brandon Carnes, and Katelyn Sigman, for damages plus interest, attorney's fees, and costs, and for such other and further relief to which Plaintiff may be justly entitled.

### COUNT III - FLSA - MINUMUM WAGE
### (against American Shaman)

45.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in

7

Paragraphs one (1) through thirty-four (34).

46.     Plaintiff is entitled to minimum wage for all hours worked pursuant to the FLSA.

47.     By reason of the intentional, willful, and unlawful acts of the Defendants in violation of the FLSA, Plaintiff has suffered damages, including but not limited to, the following:

       a.      Minimum wage compensation;

       b.      Liquidated damages;

       c.      Prejudgment and post-judgment interest;

       d.      Equitable relief declaring and mandating the cessation of Defendants' unlawful pay policy;

       e.      Attorney's fees and costs; and

       f.      All other relief to which Plaintiff may be justly entitled.

**WHEREFORE,** Plaintiff, Thomas O'Neal, demands a trial by jury and judgment against Defendant, American Shaman Franchise Systems, Inc. for damages plus interest, attorney's fees, and costs, and for such other and further relief to which Plaintiff may be justly entitled.

## COUNT IV - FLSA - OVERTIME
### (against American Shaman)

48.     Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

49.     At all times material, Defendants failed to comply with 29 U.S.C. § 201 et seq., in that Plaintiff worked for Defendants in excess of the maximum hours provided by law, but no provision was made by Defendants to compensate Plaintiff at the rate of time and one-half his regular rate of pay for the hours worked over forty (40) in a work week.

50.     Defendants' failure to pay Plaintiff the required overtime pay was intentional and willful.

51.     As a direct and legal consequence of Defendants' unlawful acts, Plaintiff has suffered damages and has incurred, or will incur, costs and attorneys' fees in the prosecution of

this matter.

**WHEREFORE,** Plaintiff, Thomas O'Neal, demands a trial by jury and judgment against Defendant, American Shaman Franchise Systems, Inc. for damages plus interest, attorney's fees, and costs, and for such other and further relief to which Plaintiff may be justly entitled.

<u>**COUNT V – FLORIDA PRIVATE WHISTLEBLOWER**</u>
<u>**(against American Shaman)**</u>

53.. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

54. This is an action for damages pursuant to Florida's Private Whistleblower's Act, Section 448.102, *Florida Statutes.*

55. Pursuant to Section 448.102, *Florida Statutes,* an employer may not take any retaliatory personnel action against an employee because the employee has objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation.

56. In contravention of said statute, Defendant terminated Plaintiff in direct retaliation for objecting to and/or refusing to participate in a policy, practice or activity that was a violation of a law, rule or regulation.

57. As a result of Defendant's unlawful acts as above-described, Plaintiff has and will continue to incur attorneys' fees, which are recoverable under Section 448.104, *Florida Statutes*.

58. As a result of the retaliatory actions of Defendant, Plaintiff has suffered and will to continue to suffer damages, including, but not limited to, the following:

   a.    Compensation for lost wages, benefits, and other remuneration;

   b.    Prejudgment interest;

   c.    Emotional pain and suffering, humiliation, and any other compensatory

damages allowable by law;

d.  Reinstatement of the Plaintiff to the same position held before the retaliatory personnel action, or to an equivalent position;

e.  Reinstatement of full fringe benefits and seniority rights;

f.  An injunction restraining continued violation of the FWA;

g.  Attorney's fees and costs;

h.  Such other relief as the Court may deem just and proper.

**WHEREFORE,** Plaintiff, Thomas O'Neal, demands a trial by jury and judgment against Defendant, American Shaman Franchise Systems, Inc. for damages plus interest, attorney's fees, and costs, and for such other and further relief to which Plaintiff may be justly entitled.

## COUNT VI – UNJUST ENRICHMENT
### (against all Defendants)

59.  Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs one (1) through thirty-four (34).

60.  At all times relevant to this litigation, Defendants owed a legal duty to Plaintiff to not unfairly or unduly take advantage of Plaintiff or commit wrongful acts in order to unjustly enrich themselves at Plaintiff's expense or at the expense of Plaintiff's property or financial interests.

61.  During the period from approximately August 29, 2018 to the present, Defendants unjustly enriched themselves by wrongfully converting, taking, utilizing or managing the property and financial interests of Plaintiff.

62.  Such acts and omissions leading to the Defendants unjust enrichment were the actual and proximate cause of harm to Plaintiff.

63.  Accordingly, Defendants are liable in damages to Plaintiff, the exact amount to be

proven at trial, arising out of Defendants unjust enrichment.

**WHEREFORE,** Plaintiff respectfully requests all legal and equitable relief allowed by law against Defendants based on its unjust enrichment including consequential damages, prejudgment interest, and payment of reasonable attorneys' fees and costs incurred in the prosecution of the claim and such other relief as the Court may deem just and proper.

Dated this 22nd day of April 2020

FLORIN GRAY BOUZAS OWENS, LLC

/s Scott L. Terry
Scott L. Terry
Florida Bar No.: 77105
scott@fgbolaw.com
debbie@fgbolaw.com
Wolfgang M. Florin
Florida Bar No. 907804
wolfgang@fgbolaw.com
E-Filing@fgbolaw.com
tina@fgbolaw.com
16524 Pointe Village Drive, Suite 100
Lutz, FL 33558
Telephone (727) 254-5255
Facsimile (727) 483-7942
Attorneys for Plaintiff