IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| THOMAS O'NEAL,<br><br>        **Plaintiff,**<br><br>v.<br><br>BRANDON M. CARNES, et al.,<br><br>        **Defendants.** | Case No. 8:20-cv-00936-KKM-AAS |

**MOTION FOR COURT APPROVAL OF FLSA SETTLEMENT
WITH MEMORANDUM IN SUPPORT**

American Shaman Franchise System, LLC, CBD American Shaman, LLC, and Shaman Botanicals, LLC (the "Shaman Defendants") move for Court approval of their settlement with Plaintiff Thomas O'Neal in the underlying action. In support of this motion, the Shaman Defendants provide the following memorandum in support:

**Introduction**

Plaintiff's claims against the Shaman Defendants for fraudulent transfer and related causes of action in this supplemental proceeding in aid of execution are barred by the mutual general release included in the parties' settlement of the underlying action. Plaintiff knowingly and voluntarily gave that release upon advice of counsel and in exchange for a settlement payment of $50,000.

Now, unsatisfied with their ability to collect a subsequent default judgment against other defendants in the underlying action, Plaintiff and one attorney who represented him in the underlying action are attempting to sidestep the release by arguing that the settlement agreement is unenforceable because it resolved claims under the Fair Labor Standards Act without approval. This cynical ploy should be rejected as a matter of fundamental fairness and protection against gamesmanship by Plaintiff's counsel, who seemingly advised his client to take the settlement payment of $50,000 in exchange for a general release while knowing full well he would challenge the enforceability of the settlement at a later stage.

The circumstances of the parties' settlement are described in the attached Declaration of David L. Luck, counsel of record for the Shaman Defendants in the underlying action. In particular, Mr. Luck explains that the parties negotiated and consummated the settlement with full knowledge and understanding that the settlement payment was being made with a mutual general release "to provide maximum relief and global closure for both sides." (Luck Decl., **Ex. 1**, ¶ 9.) Plaintiff and his counsel proposed a carve-out of fraudulent transfer claims, but that proposal was rejected and the parties' settlement was completed with the full release of all claims. (*Id.* ¶¶ 12-13.)

The settlement agreement fully compensates Plaintiff for all unpaid wages on his alleged FLSA claims and provides him substantial additional compensation

for resolution of his primary non-FLSA claims in exchange for the general release. (*Id.* ¶¶ 14-18.) Under the circumstances, the settlement agreement and release are enforceable *without Court approval*. *See, e.g.*, *Hamilton v. Frito-Lay, Inc.*, No. 6:05-cv-592-Orl-22JGG, 2007 US Dist. LEXIS 10287, *3 (M.D. Fla. Jan. 8, 2007) ("Where the employer offers the plaintiff full compensation on his FLSA claim, no compromise is involved and judicial approval is not required.").

This motion is filed in an abundance of caution, however, because Plaintiff continues to maintain that the settlement agreement and release are unenforceable without Court approval.[1] Plaintiff's counsel in this supplemental proceeding was directly and significantly involved in all aspects of negotiating and completing the settlement agreement and advising his client on the acceptance and implication of the agreement (*id.* ¶¶ 4, 13, 18), which flies in the face of his present assertions that the settlement agreement should not be enforced. As discussed in detail below, the settlement agreement between Plaintiff and the Shaman Defendants is fair and reasonable and should be approved.

---

[1] The release in the settlement agreement has already been a subject of much discussion by the parties in this supplemental proceeding. Plaintiff has consistently taken the position that the settlement agreement and release are unenforceable because the parties did not obtain Court approval for a settlement that involved claims under the FLSA. (*See, e.g.*, Doc. #131 at 23-25; Doc. #139 at 19-20; Doc. #163 at 6; Doc. #172 at 3-4.) The Shaman Defendants strongly disagree that Court approval is required for enforcement of the mutual general release in the settlement agreement against the fraudulent joinder claims Plaintiff is asserting in this supplemental proceeding. (*See, e.g.*, Doc. #152 at 11-16; Doc. #155 at 14-18.)

3

## Factual Background

Plaintiff initiated the underlying lawsuit on April 22, 2020, and he filed an Amended Complaint on April 29, 2020. (*See* Doc. #6.) The gravamen of Plaintiff's claims is an agreement he executed with American Shaman Franchise System in August 2018 that promised to pay Plaintiff a weekly salary and give him 30% ownership (and 30% of net profits) of a Shaman franchise store to be opened in Tampa. (*Id.* ¶¶ 15-19; *see also* Doc. #6-1.) Plaintiff alleged that in violation of the agreement, he was forced out of operating the Tampa store and was not paid the sums called for under the agreement. (*Id.* ¶¶ 20-35.)

As to the Shaman Defendants, the Amended Complaint asserted the following claims: breach of contract regarding violation of the agreement to operate and own the Tampa franchise store (Count I); FLSA minimum wage and overtime pay violations (Counts III and IV); a Private Whistleblower Act violation (Count V); and unjust enrichment for wrongfully converting Plaintiff's interest in the Tampa store (Count VI).[2] The primary and most valuable claim against the Shaman Defendants was the breach of contract claim, with estimated damages of more than $600,000. (Declaration of Thomas O'Neal, Doc. #58-1, ¶¶ 10-14.) In contrast, the

---

[2] Plaintiff also sued separate defendants Brandon Carnes, Katelyn Sigman and Florida Shaman Properties, LLC. Carnes and Sigman were Shaman franchisees who allegedly interfered with operation of the Tampa store. (Doc. #6 ¶¶ 27-32, 40-44.) Florida Shaman Properties was an LLC formed and operated by Carnes and Sigman. (*Id.* ¶ 14.) The Amended Complaint asserts claims against Carnes, Sigman and Florida Shaman Properties for tortious interference with contract (Count II) and unjust enrichment (Count VI). (*See id.* at 7, 10-11.)

4

full measure of damages on Plaintiff's FLSA claims was just $11,680. (Answers to Court Interrogatories, Doc. #15, at 3, Resp. to Interrogatory No. 7(e).).

On April 16, 2021, after almost a year of litigation, Plaintiff and the Shaman Defendants participated in mediation with Marquis W. Heilig, a certified mediator in this jurisdiction. The mediation was unsuccessful that day (Doc. #68), but the parties and their counsel continued negotiating a potential resolution with the assistance of the mediator over the next several days and reached a settlement of the matter that was reported to the Court on April 21, 2021 (Doc. #65). (*See* Luck Decl., **Ex.** 1, ¶ 2.)

Plaintiff and the Shaman Defendants executed a Confidential Settlement Agreement and Mutual Release (the "Settlement Agreement"), which required a $50,000 payment to Plaintiff in exchange for dismissal with prejudice of the underlying action. (Luck Decl., **Ex. 1**, ¶ 8.)[3] On May 14, 2021, after the Settlement Agreement was fully executed and the settlement payment was made, the parties filed a Joint Stipulation of Voluntary Dismissal With Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (Doc. #72.) The Court then entered an Order noting that the joint

---

[3] A true and accurate copy of the Settlement Agreement is attached as Exhibit A to Mr. Luck's declaration. The Settlement Agreement includes a confidentiality provision with an exception that "all parties may be allowed to disclose terms of this settlement to a court in order to obtain an order seeking enforcement of the settlement." (Luck Decl., **Ex. 1**, ¶ 6 & Ex. A at 3, § 4.1.) A complete, unredacted copy of the Settlement Agreement is included in the record in accordance with that exception and the confidentiality provision is no longer in force.

5

stipulation of dismissal with prejudice was self-executing and directing the Clerk to terminate the Shaman Defendants as parties in the case. (Doc. #73.)

The Settlement Agreement and stipulation of dismissal both indicated that Plaintiff's separate claims against Carnes, Sigman and Florida Shaman Properties were not resolved or dismissed. (Luck Decl., **Ex. 1**, ¶ 10 & Ex. A at 2, § 2.2; *see also* Doc. #72 at 1.) Plaintiff then obtained a default judgment against those separate defendants in an amount of $608,400 on the claim for tortious interference with the agreement between Plaintiff and American Shaman Franchise System for Plaintiff to operate franchise stores in Florida. (Doc. #78.) That default judgment remains unsatisfied.

With an unsatisfied judgment against Carnes, Plaintiff now circles back in this supplemental proceeding to assert new claims against the Shaman Defendants and related individuals and entities for alleged fraudulent transfer of assets—specifically, the franchise stores formerly operated by Carnes, which the Shaman Defendants reacquired from Carnes in October 2020. (*See* First Am. Supp. Compl. in Aid of Execution, Doc. #161, ¶¶ 29-35.) The claims Plaintiff now asserts are barred by the parties' earlier settlement agreement, which included a mutual general release of all claims by the parties. (Luck Decl., **Ex. 1**, ¶¶ 11-12 & Ex. A at 2, § 2.3.) To the extent Court approval is necessary for enforcement of that release, the Shaman Defendants request that such approval be given.

## Argument and Authorities

"The settlement of a claim for unpaid minimum wage or overtime wages under the FLSA may become enforceable by obtaining the Court's approval of the settlement agreement." *Bustamante-Garrison v. Aji Gourmet, LLC*, No. 6:21-cv-1539-RDB-DCI, 2021 US Dist. LEXIS 243880, *2 (M.D. Fla. Dec. 7, 2021) (citing *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1352-53 (11th Cir. 1982)). In assessing a settlement, the court must determine "whether it is a fair and reasonable resolution of a bona fide dispute of plaintiff's FLSA claims." *Id.* (citing *Lynn's Food*, 679 F.2d at 1352-53). "There is a strong presumption in favor of settlement." *Id.* (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

While this motion for Court approval may be unorthodox in its timing, there is no procedural impediment to granting approval in the circumstances of the case. No rule or case dictates when a motion for approval must be filed, and this matter is open for adjudication of that issue with the supplemental complaint Plaintiff has filed invoking the Court's jurisdiction and reopening the underlying case in which the Settlement Agreement was made. *See Nat'l Auto Serv. Ctrs. v. F/R 550, LLC*, 192 So.3d 498, 502 (Fla. Dist. Ct. App. 2016) ("Proceedings supplementary under section 56.29 are ancillary, postjudgment proceedings conducted in the same action in which the judgment was obtained."). For the reasons discussed below, the Court should approve the parties' settlement of the underlying action.

7

## I. The Court Should Summarily Approve the Settlement Agreement Because Plaintiff Received Full Compensation of His FLSA Claims

As noted above, Plaintiff's sworn answers to court interrogatories confirm that the damages on his FLSA claims totaled just $11,680, including $5,840 in base damages for 279 regular hours of unpaid work and 26 hours of unpaid overtime between June and December 2018, with liquidated damages to double that amount under 29 U.S.C. § 260. (Doc. #15 at 3, Resp. to Rog. No. 7.) Even with a maximum allocation of attorneys' fees, the $50,000 settlement pays Plaintiff much more than the full value of his FLSA claims.[4] Having fully compensated Plaintiff on his FLSA claims, the Settlement Agreement should be summarily approved as fair and reasonable. *See Caamal v. Shelter Mortg. Co., LLC*, No. 6:13-cv-706-Orl-36KRS, 2013 US Dist. LEXIS 138342, *2 (M.D. Fla. Sept. 26, 2013) (approving settlement as fair and reasonable because "Plaintiff is receiving all the compensation arguably due him under the Fair Labor Standards Act"); *Middleton v. Sonic Brands, LLC*, No. 6:13-cv-386-Orl-28KRS, 2013 US Dist. LEXIS 129042, *8 (M.D. Fla. Aug. 22, 2013) ("If

---

[4] The Shaman Defendants are not privy to the fee arrangement between Plaintiff and his counsel in the underlying action. But the Florida Rules of Professional Conduct prohibit lawyers from charging or collecting clearly excessive fees. Fla. R. Prof'l Conduct 4-1.5(a). Under that Rule, the maximum contingent fee Plaintiff could pay on the settlement with the Shaman Defendants is 40 percent. Fla. R. Prof'l Conduct 4-1.5(f)(4)(B)(i)(b)(1). At that maximum rate, Plaintiff would keep at least $30,000 of the settlement payment—i.e., at least $18,320 above and beyond the full amount he is allegedly owed on his FLSA claims. Because the attorneys' fees could not possibly reduce Plaintiff's recovery below the amount of his FLSA claim, "the Court may approve this settlement without considering the reasonableness of the attorneys' fees." *Bacorn v. Palmer Auto Body & Glass, LLC*, No. 6:11-cv-1683-Orl-28KRS, 2012 US Dist. LEXIS 183819, *4-5 (M.D. Fla. Dec. 19, 2012).

judicial scrutiny confirms that the parties' settlement involves no compromise of the employee's [FLSA] claim, the district court should approve the settlement . . ." (internal brackets omitted)).

The parties' mutual general release of non-FLSA claims in exchange for the portion of the settlement payment above and beyond the amount due on Plaintiff's FLSA claims "is generally not subject to judicial scrutiny." *Shearer v. Estep Constr. Inc.*, No. 6:14-cv-1658-Orl-41GJK, 2015 US Dist. LEXIS 65832, *11 (M.D. Fla. May 20, 2015). But even if that portion of the settlement is scrutinized, it should also be approved as fair and reasonable. *See, e.g.*, *Bacorn*, 2012 US Dist. LEXIS 183819, *5-6 ("[W]hen an FLSA case involves claims other than failure to pay minimum wages and overtime compensation and the release is mutual, judges have found that the release does not render the settlement unfair.").[5]

---

[5] *See also Drake v. Cent. Fla. Gaming, LLC*, No. 5:18-cv-302-Oc-PRL, 2018 US Dist. LEXIS 188530, *4 (M.D. Fla. Nov. 5, 2018) ("Finally, with respect to the release of non-FLSA claims, the Court finds persuasive other cases from around the district that approve of such general releases where the release is supported by separate consideration and does not diminish plaintiff's recovery on the FLSA claims."); *Goodrich v. Park Ave. Dermatology, P.A.*, No. 3:15-cv-1435-J-32PDB, 2016 US Dist. LEXIS 158673, *12 (M.D. Fla. Oct. 25, 2016) ("[I]f, as here, the agreement includes consideration for the settlement of other, non-FLSA-overtime claims, the same concerns do not warrant disapproving the settlement or striking the offending provisions because the plaintiff agreed to them to settle all of the claims, including those that do not require the court to approve the settlement."); *Claflin v. Shelter Mortg. Co.*, No. 6:13-cv-1028-Orl-37DAB, 2013 US Dist. LEXIS 195339, *6 (M.D. Fla. Dec. 2, 2013) ("Because substantial consideration above that arguably due under the FLSA is being paid, this Court does not find the existence of a separate agreement settling any non-FLSA claims to be an impediment to the FLSA settlement."); *Liles v. City of Ashford*, No. 1:19-cv-739-RAH-SMD, 2020 US Dist. LEXIS 197074, *6 (M.D. Ala. Oct. 23, 2020) ("[I]n numerous cases, courts have approved settlement agreements where an employee receives additional consideration in exchange for concessions to the employer that go beyond release of the FLSA claim.").

The record in this case easily justifies Court approval of the settlement in the underlying case as fair and reasonable. It fully compensates Plaintiff for his FLSA claims and includes an appropriate, bargained-for mutual general release.

## II. A More Detailed Factor-Based Analysis Also Supports Court Approval of the Settlement Agreement as a Fair and Reasonable Compromise

If the Court does not summarily approve the Settlement Agreement as a full and fair resolution of Plaintiff's FLSA claims (and non-FLSA claims), it should give approval on consideration of relevant factors including: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Dominguez v. More Than Ins.*, No. 6:21-cv-1616-CEM-EJK, 2022 US Dist. LEXIS 11375, *5 (M.D. Fla. Jan. 21, 2022). All of these factors support approval of the parties' settlement.

### A. There is No Fraud, Collusion or Undue Influence in the Settlement

The settlement in this case was negotiated over a period of several days with assistance of a court-certified mediator, Marquis W. Heilig. (Luck Decl., **Ex. 1**, ¶ 2.) The settlement was the result of arms'-length negotiations on disputed and vigorously litigated claims between adverse parties represented at all times by counsel who were fully informed of the facts of the case and the strengths and weaknesses of the parties' respective positions. (*Id.* ¶¶ 3-5.)

District courts in the Eleventh Circuit recognize that "if the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Crabtree v. Volkert, Inc.*, No. 11-0529-WS-B, 2013 US Dist. LEXIS 20543, *8 (S.D. Ala. Feb. 14, 2013) (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)). This is consistent with the Eleventh Circuit's explanation:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Lynn's Food*, 679 F.2d at 1354.

The concerns that normally weigh against general releases in FLSA cases are not present here because Plaintiff was represented by counsel and received mutual benefit of the release and settlement of his non-FLSA claims against the Shaman Defendants. *Vela v. Sunnygrove Landscape & Irrigation Maint., LLC*, No. 2:18-cv-165-FtM-38MRM, 2018 US Dist. LEXIS 190667 (M.D. Fla. Oct. 4, 2018). The settlement

11

agreement with a mutual general release of claims was struck as a deliberate and well-informed bargain that provides global resolution of the parties' dispute while still allowing Plaintiff to pursue other claims against Carnes, Sigman and Florida Shaman Properties. (Luck Decl., **Ex. 1**, ¶¶ 9-10.) Plaintiff and his counsel both knew and understood that the general release in the Settlement Agreement covered the fraudulent transfer claims Plaintiff is now pursuing. (*Id.* ¶¶ 12-14.) The decision to give this release did not result from undue leverage. (*Id.* ¶ 18.) In this circumstance, the first factor strongly favors approval of the settlement.

    **B.**    **The Complexity, Expense and Likely Duration of Litigation Support the Settlement**

At the time of their settlement in April 2021, the parties had been litigating for almost a year toward a trial date set for October 2021 that was subject to significant uncertainty during an ongoing global pandemic. The lawsuit involved highly disputed factual and legal issues on both the FLSA and non-FLSA claims, including disputes whether terms of the subject contract had been breached and, if so, what damages Plaintiff had suffered, as well as a potentially dispositive argument that Plaintiff was exempt from the pay provisions of the FLSA as an alleged owner of the store that he managed. (Luck Decl., **Ex. 1**, ¶¶ 16-17.)

Given these disputes and the substantial amount in controversy, a judgment in the underlying case was almost certain to be appealed regardless of which party prevailed. The parties' settlement in this circumstance is reasonable considering

the nature of the dispute and the substantial time and expense of continued litigation. *See Clarke v. Alta Res. Corp.*, No. 2:17-cv-276-FtM-99CM, 2017 US Dist. LEXIS 181168, *5-6 (M.D. Fla. Oct. 30, 2017) (noting courts in this district have approved compromise FLSA settlements in light of factors including the "strength of the defenses and the expense and length of continued litigation"). This factor weighs in favor of settlement approval.

### C. The Stage of the Proceedings and Amount of Discovery Completed Support the Settlement

When negotiating their settlement agreement, the parties and their counsel "were well aware of the facts of the case, the strengths and weaknesses of the claims and defenses, the potential damages, and the risks and benefits of settlement." (Luck Decl., **Ex. 1**, ¶ 3.) This allowed them to make informed decisions on accepting the settlement agreement given the negotiated terms. (*Id.* ¶¶ 12-18.) The stage of litigation and development of the case at the time of settlement supports approval of the settlement agreement. *See Harrison v. Experis US, Inc.*. No. 3:16-cv-1392-J-25PDB, 2017 US Dist. LEXIS 227102, *10-11 (M.D. Fla. Aug. 22, 2017) (recommending approval of FLSA settlement in part because parties had litigated for three months, exchanged information and represented that they had "sufficient information and had conducted an adequate investigation to allow them to make an educated and informed analysis of [the plaintiff's] claims.").

### D. The Probability of Plaintiff's Success on the Merits was Subject to Significant Dispute

With regard to Plaintiff's FLSA claim in particular, his probability of success was low because he was admittedly a manager of the Tampa store with an alleged ownership interest of at least 30% in that store. (*See, e.g.*, Doc. #6 ¶¶ 17-19; *see also* Doc. #6-1.) As a matter of law, the minimum-wage and maximum-hour provisions of the FLSA do not apply to salaried managers and partial bona-fide owners with at least a 20% equity interest in a business. *See* 29 C.F.R. § 541.100; *id.* § 541.101; *see also Beard v. Langham*, 649 F. Supp. 2d 1332, 1338-39 (S.D. Ala. 2009) (holding that company owner is not an "employee" for purposes of determining applicability of FLSA). In settlement negotiations, Plaintiff's counsel acknowledged the weakness of his FLSA claims in this regard and admitted that his primary and more valuable claims were his non-FLSA claims for breach of the contract and related causes of action under Florida law. (Luck Decl., **Ex. 1**, ¶¶ 15-18.)

In these circumstances, Plaintiff was not entitled to any uncontested wages under the FLSA and even if he had not received full value of the alleged damages on his FLSA claims, the compromise of the claims was perfectly reasonable given the legal hurdles. *See Palm v. Streamline Automation, LLC*, No. 5:15-cv-00292-MHH, 2015 US Dist. LEXIS 122389, *6 (N.D. Ala. Sept. 15, 2015) ("'If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage . . . , that are actually in dispute,' then a court may approve a

14

settlement." (quoting *Lynn's Food*, 679 F.2d at 1354)). This factor strongly favors the approval of the parties' settlement.

### E. The Range of Possible Recovery Supports the Settlement

As just noted, Plaintiff's FLSA claims faced significant and potentially dispositive legal arguments that he was exempt from the FLSA's wage and overtime provisions. The possible recovery on those claims ranged from $0 to no more than $11,680 as indicated in Plaintiff's sworn discovery responses. (Doc. #15, at 3, Resp. to Interrogatory No. 7(e).). This range of possible recovery was fully accounted for by Plaintiff and his counsel in negotiations. (Luck Decl., **Ex. 1**, ¶¶ 15-19.) And even at maximum value, Plaintiff received full compensation on his FLSA claims. (*Id.* ¶ 18.) This factor supports settlement approval. *Caamal*, 2013 US Dist. LEXIS 138342, *2 (approving settlement where "Plaintiff is receiving all the compensation arguably due him under the Fair Labor Standards Act").

### F. The Opinion of Counsel Supports the Settlement

After outlining all the circumstances surrounding the parties' negotiations and understanding of the settlement terms (including the mutual general release), Mr. Luck concludes his Declaration stating: "Under the law, the Settlement Agreement reflects a fair and reasonable settlement of disputed claims in the underlying litigation, including [Plaintiff's] primary Florida state-law, non-FLSA claims and his highly disputed secondary claims for violation of the FLSA, which he valued,

15

under oath, at only $11,680." (Luck Decl., **Ex. 1**, ¶ 19.) Mr. Luck's declaration also gives insight on the opinions of Plaintiff's counsel at the time, who negotiated the settlement with full appreciation of the facts and advised their client to accept the settlement on the negotiated terms including a mutual general release in exchange for a payment of $50,000. (*Id.* ¶¶ 3-4, 8-9, 13-18.)

Plaintiff was represented in the settlement of the underlying case by counsel including the same attorney who now represents him in trying to avoid the effect of that settlement. (*Id.* ¶¶ 4, 13, 18.) Considering that Plaintiff's counsel negotiated the settlement and advised his client to accept the settlement, it is virtually impossible for him to credibly assert that the settlement agreement is somehow unfair or unreasonable. The Court should find that this factor strongly favors the approval of the parties' settlement agreement. *See Sides v. Advanced Disposal Servs. Nat'l Accounts*, No. 3:15-CV-153-J-32PDB, 2016 US Dist. LEXIS 45391, *9 (M.D. Fla. Mar. 15, 2016) (finding that a settlement of FLSA claims should be approved in part because "counsel, all experienced in litigating FLSA claims, presumably find the settlement fair given their representation that each 'was obligated to and did vigorously represent their clients' rights'").

If the Court does not summarily approve the settlement on the basis that it fully compensates Plaintiff's FLSA claims, it should approve the settlement in light of all relevant factors discussed above.

## Conclusion

If Court approval of the parties' FLSA settlement in the underlying action is required for enforcement of the release in the Settlement Agreement, the decision in *Hector v. Gulf Distributing Co. of Mobile, LLC*, No. 18-0065-WS-N, 2018 US Dist. LEXIS 137676 (S.D. Ala. Aug. 14, 2018), succinctly explains why approval should be given in this case:

> As a result of the parties' agreement, no uncontested wages will remain unpaid. In short, and with due regard for the strong presumption in favor of finding FLSA settlements reasonable when negotiated by competent counsel in an adversary context, the Court concludes that the proposed settlement represents a fair deal to resolve and settle Hector's FLSA claims.

*Id.* at *8.

Respectfully submitted,

**KRIGEL & KRIGEL, P.C.**

By: /s/ Stephen J. Moore
 Stephen J. Moore *admitted pro hac*
 4520 Main Street, Suite 700
 Kansas City, Missouri 64111
 Telephone: 816-756-5800
 Facsimile: 816-756-1999
 sjmoore@krigelandkrigel.com

 Nicholas J. Porto *admitted pro hac*
 THE PORTO LAW FIRM
 1616 West 45th Street
 Kansas City, Missouri 64111
 Telephone: 816.463.2311
 Facsimile: 816.463.9567
 nporto@portolaw.com

 Joel M. Aresty FL #197483
 JOEL M. ARESTY, P.A.
 309 1st Avenue S
 Tierra Verde, Florida 33715
 Telephone: 305.904.1903
 Facsimile: 800.559.1870
 aresty@icloud.com

*Attorneys for the Shaman Defendants*

**LOCAL RULE 3.01(g) CERTIFICATION**

 I have conferred in good faith with opposing counsel to attempt to resolve this motion by exchanging emails with opposing counsel regarding the expected substance of the motion and grounds for objection. Opposing counsel advises that the relief requested in this motion is opposed.

 /s/ Stephen J. Moore

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing document was filed this 25th day of January 2022 via the Court's CM/ECF system, which shall send electronic notice of the same to the following counsel of record:

**Counsel for Plaintiff Thomas O'Neal**
Kevin H. Graham
LAW OFFICES OF KEVIN H. GRAHAM
3159 Lake Ellen Drive
Tampa, Florida 33618

                                             */s/ Stephen J. Moore*