## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**THOMAS O'NEAL,**

      **Plaintiff,**

**v.**                                                   **Case No. 8:20-cv-936-KKM-AAS**

**AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,**

      **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa (collectively, the Shaman Defendants) move for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Doc. 184). Defendants Shaman Franchise, American Shaman and Shaman Botanicals, LLC (collectively, the Settled LLC Defendants) further move for retroactive judicial approval of their settlement agreement with Plaintiff Thomas O'Neal in the legal action preceding Mr. O'Neal's post-judgment efforts (hereafter referred to as the Prior Settlement Agreement). (Doc. 177). Mr. O'Neal

1

responds in opposition to both motions. (Docs. 179, 185). The Shaman Defendants and Settled LLC Defendants reply. (Docs. 197, 211). The undersigned **RECOMMENDS** that the two motions (Docs. 177, 184) be **DENIED**.

I.   **BACKGROUND**

  **A. Underlying Facts[1]**

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided

---

[1] This report pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[3] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

## B. Procedural History

In his amended complaint,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled. (Docs. 65, 72).

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

On September 7, 2020,[5] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58).[6] A July 30, 2021 order granted

---

[5] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

[6] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46).

Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146).

The Settled LLC Defendants in their motion for judicial approval of the Prior Settlement Agreement (Doc. 177) raise fundamentally similar arguments as the Shaman Defendants in their motion for judgment on the pleadings (Doc. 184). The Shaman Defendants' motion for judgment on the pleadings is rooted in a single thesis: that Mr. O'Neal's supplemental complaint in its entirety is "barred as a matter of law by the release included in [the Prior Settlement Agreement]." (Doc. 184, p. 1). The Prior Settlement Agreement resolved Mr. O'Neal's claims under the FLSA; thus, judicial approval is generally required for the terms of the agreement to be enforceable. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–1355 (11th Cir. 1982).

The Shaman Defendants in their motion for judgment on the pleadings argue the terms of the Prior Settlement Agreement can be enforced because prior judicial approval is unnecessary. (Doc. 184, pp. 10–13). In the alternative, if the court concludes judicial approval of the Prior Settlement Agreement is

---

Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

necessary to render the agreement's terms enforceable, the Settled LLC Defendants request the court grant their motion for judicial approval of the Prior Settlement Agreement. (Doc. 177). Upon concluding the Prior Settlement Agreement is enforceable, the Shaman Defendants argue the general releases contained within the Prior Settlement Agreement bar Mr. O'Neal from raising the claims in his supplemental complaint. (Doc. 184, pp. 7–10).

Mr. O'Neal raises three arguments in opposition: (1) that the court may not consider the Prior Settlement Agreement because "the document is not mentioned in the Supplemental Complaint and is not central to any of O'Neal's causes of action" (Doc. 185, pp. 5–6); (2) that the Rule 41 dismissal from the prior action also removed subject-matter jurisdiction for approving the Prior Settlement Agreement (Doc. 179, pp. 3–6; Doc. 185, pp. 5–9); (3) even if the court has jurisdiction to approve the Prior Settlement Agreement, the Prior Settlement Agreement is not ripe for approval because its terms are overly broad (Doc. 179, pp. 6–8; Doc. 185, pp. 9–11).

## II.    LEGAL STANDARD

A claim brought under the FLSA can be resolved in two ways. *See* 29 U.S.C. § 216; *Lynn's Food*, 679 F.2d at 1352–53. First, an employee may settle and waive claims under the FLSA if the payment of unpaid wages by the employer to the employee is supervised by the Secretary of Labor. *Id.* at 1353. Second, an employee may settle and waive claims under the FLSA if the parties

to a private action present to a district court a proposed settlement agreement, and the district court enters a judgment approving the settlement. *Id.* To approve the settlement, the district court must determine whether the settlement agreement constitutes a fair and reasonable resolution of a bona fide dispute regarding FLSA provisions. *Id.* at 1355.

In suits brought by employees under the FLSA for back wages, settlements may be permissible "because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In such adversarial cases, the Eleventh Circuit has determined that:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* (footnote omitted).

A party may move for judgment on the pleadings after all parties submit their pleadings. Fed. R. Civ. P. 12(c). The standard for deciding motions for judgment on the pleadings under Rule 12(c) is the same for motions to dismiss under Rule 12(b)(6): "whether the count stated a claim for relief." *Sun Life*

*Assur. Co. of Can. v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207 (11th Cir. 2018) (citations omitted).

A complaint must include enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court must accept all factual allegations in the complaint as true and view the facts in the light most favorable to the nonmoving party. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citations omitted); *Cunningham v. Dist. Att'y's Off. for Escambia Cty.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (citation omitted). Judgment on the pleadings is proper when no issues of material fact exist, and the moving party is entitled to judgment as a matter of law based on the pleadings. *Cunningham*, 592 F.3d at 1255 (quotation and citation omitted).

## III.  ANALYSIS

This report will first consider the Settled LLC Defendants' motion for judicial approval of the Prior Settlement Agreement from the prior action, then turn to the Shaman Defendants' motion for judgment on the pleadings.

### A. Motion for Court Approval of FLSA Settlement

As noted in this court's prior order, "Mr. O'Neal's supplemental complaint is effectively an independent civil action." (Doc. 203, p. 2) (citing *Walton v. St. Paul Fire & Marine Ins. Co.*, No. 0:17-cv-61391-WPD, 2018 WL 5098965, at *4 (S.D. Fla. Aug. 10, 2018)). Though the Settled LLC Defendants argue this post-judgment action provides "an independent basis of federal

9

jurisdiction" over the terms of the Prior Settlement Agreement, the Settled LLC Defendants provide no case law supporting the contention that the court in this post-judgment action may adjudicate legal questions left untouched in the prior litigation[7] and the undersigned has not independently found any.

To the contrary, "the plain language of Rule 41(a)(1)(A)(ii) requires that a stipulation filed pursuant to that subsection is self-executing, . . . dismisses the case and divests the district court of jurisdiction." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277 (11th Cir. 2012) (*citing SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 464 (5th Cir. 2010)). "This Court has made abundantly clear that a Rule 41(a)(1) voluntary dismissal disposes of the entire action, not just some of the plaintiff's claims." *Absolute Activist Value Master Fund Limited v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021).

The rigidity of the *Lynn's Food* approval requirement presents a clear conflict with the plain language of Rule 41. Courts in this district reconciling *Lynn's Food* with Rule 41 have concluded "the text of the FLSA does not provide, and no Eleventh Circuit decision has ever held, that FLSA claims are

---

[7] The limited case law available on this issue dictates the court must possess "diversity or federal question jurisdiction *over the breach-of-settlement-agreement controversy.*" *Cernelle v. Graminex, LLC*, 437 F. Supp. 3d 574, 593 (E.D. Mich. 2020). *See also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("Enforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

exempt from Rule 41." *Almaraz v. Hometown Ventures, LLC*, No. 2:21-cv-551-NPM, 2022 WL 622729, at *1 (M.D. Fla. Mar. 3, 2022). *See also Dees v. Hydraday, Inc.*, 706 F. Supp. 2d. 1227, 1244 (M.D. Fla. 2010) ("The parties maintain the confidentiality of their compromise by submitting a stipulation for dismissal under Rule 41, Federal Rules of Civil Procedure. In an FLSA case, however, *Lynn's Food* requires the parties to obtain judicial approval of the compromise").

Thus, courts in this district have generally concluded "parties are not able to stipulate [under Rule 41] to the dismissal with prejudice of their [FLSA] claims without judicial approval." *Turner v. Interline Brands, Inc.*, No. 3:16-cv-646-BJD-PDB, 2016 WL 7973120, at *2 (M.D. Fla. Nov. 8, 2016). *See also Roman v. FSC Clearwater, LLC*, No. 6:16-cv-969-CEM-DCI, 2016 WL 11580672, at *1 (M.D. Fla. Dec. 13, 2016) (concluding the parties' Rule 41 stipulation of dismissal was "ineffective" because an FLSA action "may only be settled or compromised upon review of the settlement agreement, by the district court, for fairness" and "the parties cannot categorically avoid judicial review simply by stipulating that there was no compromise because Plaintiff received full compensation"); *Osorio v. G Security Services, LLC*, No. 6:17-cv-2138-JA-GJK, 2019 WL 2526538, at *1 (M.D. Fla. Jan. 22, 2019) ("an employee's FLSA claims are not subject to a voluntary dismissal with prejudice under Rule 41(a)(1)(a)(ii) without the requisite approval"); *Itzep v. Hibachi*

11

*Buffet No. 1, Inc.*, No. 6:19-cv-1138-WWB-GJK, 2019 WL 13154919, at *1 (M.D. Fla. Nov. 27, 2019) ("The Court's obligation to review an FLSA settlement cannot be purposely evaded by Plaintiff's reliance on a procedural mechanism [like Rule 41] for terminating the litigation"); *Flood v. First Family Insurance, Inc.*, 514 F. Supp. 3d 1384, 1392 (M.D. Fla. 2021) ("the Court concludes that the operation of Rule 41(a)(1)(A) is subject to the terms of the FLSA. The parties in this case may not stipulate to dismissal of the case").

Some courts in this district still allow parties to stipulate to dismissals under Rule 41 in FLSA cases. This allowance is not without its consequences. As previously discussed, "judicial review is automatically bypassed by the filing of a Rule 41(a)(1)(A)(ii) stipulation, even though . . . [an] FLSA settlement pursuant to *Lynn's Food* requires court approval." *Flood*, 514 F. Supp. 3d at 1391. Because the court never approves the terms of the settlement agreement before the parties dismiss the case, "if the resolution of the FLSA claim results in a compromise to the employee that was approved by neither the Department of Labor nor the district court, such resolution is unenforceable." *Id.* (*citing Marcucci v. Stefano's Trattoria, Inc.*, No. 6:12-cv-440-PCF-GJK, 2012 WL 13136903, at *2 (M.D. Fla. July 3, 2012). As explained by the court in *Casso-Lopez v. Beach Time Rental Suncoast, LLC*:

> by use of a Rule 41(a)(1)(A)(ii) dismissal with prejudice the parties can "settle" an FLSA action — or, more exactly, appear to settle. But the settlement, if unsupervised by the Department of Labor or

unapproved by the court, is ineffective and the employer still owes, and the employee can still sue for, any unpaid wages, liquidated damages, and an(other) attorney's fee. Also, any other concession by the employee, such as a release of some past, present, or future claim for relief or a non-disclosure agreement, is ineffective. *See, e.g., Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010). If, despite this illusory "settlement," the employee again sues the employer under the FLSA, the court by one of several available means must decline to credit, enforce, or otherwise grant preclusive effect to any device of resolution — including a dismissal with prejudice — procured without Department of Labor supervision of, or court approval of, the terms of the compromise and settlement; a procedural rule cannot defeat the FLSA. In short, the employer likely will receive nothing more from the dismissal than an offset in any later action for any money paid to the employee under the unapproved settlement.

335 F.R.D. 458, 462 (M.D. Fla. 2020). Thus, "an FLSA plaintiff can purport to compromise and settle an FLSA claim by the mechanism of a Rule 41(a)(1)(A)(ii) stipulated dismissal with prejudice, and the district court is immediately powerless to interfere, although the compromise and settlement is ineffective." *Id.*

In reply, the Settled LLC Defendants note courts occasionally address issues after an action is voluntarily dismissed under Rule 41. (Doc. 197, pp. 2–3). The Supreme Court in *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384 (1990) held even after parties voluntarily dismiss cases, courts "retain[] jurisdiction to decide 'collateral issues'—'independent proceeding[s] supplemental to the original proceeding and not request[s] for a modification of the original decree.'" *Devine*, 998 F.3d at 1265 (*citing Cooter & Gell*, 496 U.S. at 395). In

13

particular, "district courts retain jurisdiction to consider at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards." *Id*. at 1266.

The court in *Devine* concluded the common thread tying these collateral issues together was as follows:

> Rule 41(a)(1) was "designed to limit a plaintiff's ability to dismiss an action," and the collateral issues over which a district court retains jurisdiction are tethered to that purpose. *Cooter & Gell*, 496 U.S. at 397, 110 S. Ct. at 2456. Motions for costs, fees, and sanctions each implicate "the power to enforce compliance with the rules and standards that keep the judiciary running smoothly." *Hyde v. Irish*, 962 F.3d 1306, 1309 (11th Cir. 2020). If we divested the district court of jurisdiction over those motions, an enterprising plaintiff could abuse the judicial system but nevertheless get off scot free by voluntarily dismissing its case under Rule 41(a)(1)(A)(i). Likewise, if the district court did not have jurisdiction over a motion to confirm an arbitral award, a clever plaintiff could—after an unfavorable arbitral ruling— voluntarily dismiss its case, divest the district court of jurisdiction over the motion, and challenge the unconfirmed award in another court. *See* [*PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1309 (11th Cir. 2016)] ("ZTE USA merely sought confirmation of the arbitral award—exactly as it was issued by the arbitrator—so that the award would be finalized and protected against challenges in other courts.").

998 F.3d at 1266–1267.

The judicial approval of FLSA settlement agreements does not raise the same interests in limiting a plaintiff's ability to dismiss an action. Rather, the Eleventh Circuit requires judicial approval of FLSA settlement agreements to further the purpose of the FLSA: "protecting workers from substandard wages

and oppressive working hours." *Lynn's Food*, 679 F.2d at 1352. Judicial approval of FLSA settlement agreements is required not to keep plaintiffs from abusing the judicial process, but instead to ensure plaintiffs are protected from the "often great inequalities in bargaining power between employers and employees." *Id.*

The court does not have jurisdiction to approve the Prior Settlement Agreement. This report therefore **RECOMMENDS** the Settled LLC Defendants' Motion for Court Approval of FLSA Settlement (Doc. 184) be **DENIED**.

### B. Motion for Judgment on the Pleadings[8]

As addressed above, the court does not have jurisdiction to approve the Prior Settlement Agreement. Despite this, the Shaman Defendants argue the *Lynn's Food* approval requirement is not required in this case because Mr. O'Neal was "fully compensated" for his FLSA claims (Doc. 177, p. 8). The Shaman Defendants' argument appears to rely on Mr. O'Neal's interrogatory

---

[8] The Prior Settlement Agreement is not attached as an exhibit to either Mr. O'Neal's original or amended supplemental complaint. *See* (Docs. 135, 161). The parties dispute the extent to which this renders releases within the Prior Settlement Agreement unalleged in the complaint and thus unavailable for consideration in examining the Shaman Defendants' Motion for Judgment on the Pleadings. (Doc. 185, pp. 5–6; Doc. 211, pp. 1–8). This report declines to examine whether the releases within the Prior Settlement Agreement are considered unalleged in the complaint because this report recommends denying the Shaman Defendants' Motion for Judgment on the Pleadings even upon consideration of the releases within the Prior Settlement Agreement.

answers from the prior action, wherein he stated the damages on his FLSA claim totaled $11,680 (which is less than the $50,000 Mr. O'Neal received in settling his claims against the Settled LLC Defendants in the prior action). (Doc. 184, p. 10) (*citing* (Doc. 15, p. 3; Doc. 180, Ex. 3, ¶ 16–18)).

However, the Prior Settlement Agreement clearly states "[t]he Parties hereby acknowledge and agree that this is a compromise settlement." (Doc. 125, Ex. 2, p. 6). *See Mackenzie v. Kindred Hosps. E., LLC*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003) (noting *Lynn's Food* "addresses judicial oversight of 'compromises' of FLSA claims . . . There is no need for judicial scrutiny where, as here, the defendant represents that it has offered the plaintiff more than full relief, and the plaintiff has not disputed that representation"). Thus, the Shaman Defendants have not established Mr. O'Neal was fully compensated for his FLSA claims such that judicial approval of the Prior Settlement Agreement was unnecessary.

The Shaman Defendants further argue "the operative pleading in the underlying case shows that Plaintiff's FLSA claims were secondary to his contract-related claims against the Shaman entities and other defendants." (Doc. 177, p. 11). Courts in this district[9] addressing settlements of disputes

---

[9] *See Taroco v. M&M Chow, LLC*, 2021 WL 3191041, at *3 (S.D. Fla. July 28, 2021) (noting "[t]his separate settlement agreement practice appears to be largely limited to the Middle District of Florida").

including both FLSA and non-FLSA claims "will, in some circumstances, allow parties to enter into separate settlement agreements – one for the resolution of claims under the FLSA, which agreement is submitted to the Court, and another for resolution of non-FLSA claims, which need not be submitted." *Gavric v. Regal Automotive Group, Inc.*, No. 8:20-cv-2978-VMC-AAS, 2022 WL 971777, at *2 (M.D. Fla. Mar. 31, 2022) (collecting cases).

In doing so, those courts have adopted a general rule that, in cases involving both FLSA and non-FLSA claims, settlement agreements resolving the non-FLSA disputes do not require judicial review or approval beyond ensuring "its terms do not serve to contaminate the Agreement as to the FLSA claim." *Yost v. Wyndham Vacation Resorts, Inc.*, No. 6:10-cv-1583-CEH-GJK, 2012 WL 1165598, at *3 (M.D. Fla. Mar. 26, 2012). This is to ensure parties do not "circumvent the *Lynn's Food Stores* analysis by entering into undisclosed side agreements that are part of an overall settlement, even if the parties mutually agree that they are not pertinent to the Court's review of the FLSA settlement." *Garza v. St. Surin*, No. 2:20-cv-49-JLB-MRM, 2021 WL 7451889, at *6 (M.D. Fla. Sept. 15, 2021).

However, Mr. O'Neal and the Settled LLC Defendants in the prior action entered into a single settlement agreement resolving both Mr. O'Neal's FLSA and non-FLSA claims. Because the court never approved the terms of the Prior Settlement Agreement, the court never confirmed the agreement's terms do

not affect or contaminate the portions of the agreement pertaining to the settlement of Mr. O'Neal's FLSA claims. Case law since *Lynn's Food* has established:

> unless supervised by the Department of Labor or approved by a district court, any compromise, relinquishment, or other diminution of an employee's FLSA rights — by whatever mechanism undertaken or procured, even by a rule of procedure — is illusory, ineffective, and unenforceable, and the employee can ignore the entire episode, including an executed settlement agreement (exactly what happened in *Lynn's Food*) and immediately sue the employer to obtain whatever FLSA rights the employee earlier purported to compromise, relinquish, or otherwise diminish. Also, any release, confidentiality or non-disclosure agreement, or any other covenant or agreement granting the employer anything else of value in exchange for the FLSA wage is unenforceable.

*Casso-Lopez*, 335 F.R.D. at 461. This conclusion holds even when the settlement agreement resolves non-FLSA claims. *Dumas v. 1 ABLE REALTY, LLC*, No. 6:17-cv-765-RBD-KRS, 2018 WL 5020134, at *2 (M.D. Fla. 2018) (*citing Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 530 (E.D. Pa. 2016)). Thus, because the court has not approved the terms of the Prior Settlement Agreement, the Shaman Defendants have not established any releases within the agreement are enforceable.

## IV.   CONCLUSION

The Rule 41 stipulation of dismissal in the prior action divested this court of jurisdiction over approving Mr. O'Neal and The Settled LLC Defendants' settlement agreement. Because judicial approval of the Prior

Settlement Agreement was not then and cannot now be obtained, the Shaman Defendants have not demonstrated the releases in the agreement are enforceable. For these reasons, it is **RECOMMENDED** that the Settled LLC Defendants' Motion for Court Approval of FLSA Settlement (Doc. 177) and the Shaman Defendants' Motion for Judgment on the Pleadings (Doc. 184) be **DENIED**.

    **ENTERED** in Tampa, Florida on May 23, 2022.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

    The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.