**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**THOMAS O'NEAL,**

      **Plaintiff,**

**v.**                              **Case No. 8:20-cv-936-KKM-AAS**

**AMERICAN SHAMAN FRANCHISE SYSTEM,**
**LLC; CBD AMERICAN SHAMAN,**
**LLC; SHAMAN BOTANICALS, LLC;**
**SVS ENTERPRISES, LLC; STEPHEN**
**VINCENT SANDERS II; BRANDON CARNES;**
**and FRANCIS KALAIWAA,**

      **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas O'Neal moves to dismiss counterclaims and strike affirmative defenses in Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Defendants) First Amended Answer (Doc. 188).[1] (Doc. 195). The Shaman Defendants respond in opposition.

---

[1] Mr. O'Neal's motion to dismiss counterclaims and strike affirmative defenses does not include Defendants Francis Kalaiwaa and SVS Enterprises, LLC in the request for relief. (Doc. 195, p. 1). This report construes this exclusion as scrivener's error and analyzes Mr. O'Neal's motion as applied to each defendant included in the Shaman Defendants' First Amended Answer.

(Doc. 205). The undersigned **RECOMMENDS** that Mr. O'Neal's motion be **DENIED**.

## I.    BACKGROUND

### A. Underlying Facts[2]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[3] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

---

[2] This report pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[3] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[4] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which

---

[4] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B. Procedural History

In his amended complaint,[5] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act (FLSA) on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled.[6]

---

[5] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

[6] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC (collectively, the Settled LLC Defendants) and Mr. O'Neal in the legal action preceding Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Prior Settlement Agreement."

(Docs. 65, 72).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

On September 7, 2020,[7] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman,

---

[7] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

and Florida Shaman Properties, LLC. (Doc. 58).[8] A July 30, 2021 order granted Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146).

Mr. O'Neal now moves to strike each of the Shaman Defendants' affirmative defenses and dismiss both of the Shaman Defendants' two counterclaims. (Doc. 195). The Shaman Defendants respond that Mr. O'Neal "has not shown that any affirmative defenses should be stricken or that any counterclaims should be dismissed." (Doc. 205).

## II.   ANALYSIS

### A. Motion to Strike

Mr. O'Neal argues the Shaman Defendants' affirmative defenses are insufficiently pled under Federal Rule of Civil Procedure 12(f). (Doc. 195, p. 4). Mr. O'Neal contends "[the Shaman] Defendants' affirmative defenses consist of 'bare-bones conclusory allegations' without identifying which of the causes of action in O'Neal's Complaint the purported defense applied" and "fail to

---

[8] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46). Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

state a facially 'plausible' nexus between the facts of this case and any of their purported affirmative defenses." (*Id.*).

The Eleventh Circuit has not yet addressed "the central premise of [Mr. O'Neal's] motion—that Rule 12(f) permits striking affirmative defenses for noncompliance with the *Twombly-Iqbal* plausibility standard." *Lawton-Davis v. State Farm Mut. Auto. Ins. Co.*, No. 6:14-cv-1157-RBD-GJK, 2015 WL 12839263, at *1 (M.D. Fla. Aug. 19, 2015). "While district courts in this circuit are divided on the question of whether Rule 8(a)(2)'s factual pleading requirements apply to affirmative defenses, this Court has previously concluded that affirmative defenses need not meet Rule 8(a)(2)'s pleading requirements." *Kearney v. Valley National Bank*, No. 8:21-cv-64-KKM-TGW, 2022 WL 19754, at *3 (M. D. Fla. Jan. 3, 2022).

This report therefore only considers Mr. O'Neal's motion to strike as to whether each affirmative defense is "insufficient as a matter of law." *Id.* (*citing Blanc v. Safetouch, Inc.*, No. 3:07-cv-1200-HLA-TEM, 2008 WL 4059786, at *1 (M.D. Fla. Aug. 27, 2008)). This showing requires Mr. O'Neal to establish the Shaman Defendants' affirmative defenses have "no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party" such that the Shaman Defendants "cannot succeed under any set of facts which it could prove." *Reyher v. Trans World Airlines, Inc.*, 881 F.Supp. 574, 576 (M.D. Fla. 1995).

Mr. O'Neal does not argue the Shaman Defendants' affirmative defenses of lack of personal jurisdiction, good faith, failure to mitigate damages, judicial estoppel, equitable estoppel, accord and satisfaction, or unclean hands are insufficient as a matter of law, and instead argues each is insufficiently factually supported. (Doc. 195, pp. 5–16). Thus, this report recommends denying Mr. O'Neal's motion to strike as to those affirmative defenses. This report will address each remaining affirmative defense in turn.

### 1. Insufficient Service of Process

The Shaman Defendants' third affirmative defense states "[Mr. O'Neal's] claims fail, in whole or part, for insufficient process and/or insufficient service of process." (Doc. 188, p. 14). Mr. O'Neal argues this affirmative defense is legally insufficient because the limited nature of supplemental proceedings brought under § 56.29, FLA. STAT. (2022), do not necessitate service of process. (Doc. 195, pp. 6–7).

A March 10, 2022 order rejected a similar procedural argument from Mr. O'Neal. *See* (Doc. 203, p. 2) (citing cases and concluding Mr. O'Neal's claims of fraudulent transfer rendered this matter "effectively an independent civil action"). Other courts have similarly concluded Florida fraudulent transfer claims must be brought "via a 'supplemental complaint . . . served as provided by the rules of civil procedure.'" *Kearney Constr. Co. LLC v. Travelers Cas. & Sur. Co. of Am.*, No. 8:09-cv-1850-JSM-CPT, 2019 WL 6910154, at *3 (M.D.

Fla. Dec. 19, 2019). Mr. O'Neal has not established the Shaman Defendants'
third affirmative defense is patently frivolous or legally insufficient.

## 2. Release

The Shaman Defendants' fifth affirmative defense states "[Mr. O'Neal's]
claims fail, in whole or part, because they are barred by the release contained
in the [Prior Settlement Agreement]." (Doc. 188, p. 15). Mr. O'Neal argues this
affirmative defense should be stricken because the terms of the Prior
Settlement Agreement are unenforceable. (Doc. 195, pp. 7–8). Mr. O'Neal
further argues this affirmative defense should be stricken because the general
release in the Prior Settlement Agreement should be considered overbroad and
therefore unenforceable. (*Id.*).

A May 23, 2022 report details why the court no longer possess
jurisdiction to approve the Prior Settlement Agreement under the FLSA. (Doc.
213). That same report concluded "the Shaman Defendants have not
demonstrated the releases in the [Prior Settlement Agreement] are enforceable
[under the FLSA]." (*Id.* at 18). However, except for a single sentence claiming
the general releases in the Prior Settlement Agreement are overbroad,[9] Mr.
O'Neal raises no argument on the enforceability of the Prior Settlement

---

[9] Mr. O'Neal's motion also does not address that "Florida law recognizes the
enforceability of a general release . . . [a] broadly worded release may extinguish even
a claim unknown to either party at the execution of the release." *Moreno v. Regions
Bank*, 729 F. Supp. 2d 1346, 1348 n. 1 (M.D. Fla. 2010) (citations omitted).

Agreement as a matter of contract law outside the scope of settlements under the FLSA. *See Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013) ("[n]either party has raised the enforceability of the agreement under state law as an issue on appeal, and we therefore express no opinion on what effect, if any, state law principles have on the enforceability of a settlement of a FLSA claim"). Mr. O'Neal therefore fails to establish the Shaman Defendants' affirmative defense of release is patently frivolous or legally sufficient.

### 3. Comparative Fault and Contributory Negligence

The Shaman Defendants' seventh affirmative defense argues Mr. O'Neal should be liable for any comparative fault or contributory negligence. (Doc. 188, p. 15). Mr. O'Neal argues this affirmative defense is legally insufficient because none of his claims against the Shaman Defendants are based on a theory of negligence. (Doc. 195, pp. 9–10). As the Shaman Defendants note, however, "fraudulent transfer claims do not automatically imply intentional wrongdoing" by the recipient of the transfers. (Doc. 205, p. 7). "Without presentation of any binding precedent holding a defendant cannot seek to lessen damage from [a fraudulent transfer claim] by showing the plaintiff contributed to the damage that might demonstrate the defense is patently frivolous, clearly invalid as a matter of law, or with no possible connection to the controversy, and with no suggestion that leaving the defense in the

pleading will prejudice the plaintiff, striking the defense is unwarranted." *Ability Housing of Northeast Florida, Inc. v. City of Jacksonville*, No. 3:15-cv-1380-TJC-PDB, 2016 WL 816586, at *3 (M.D. Fla. Mar. 2, 2016). Thus, Mr. O'Neal has not established the Shaman Defendants' seventh affirmative defense is patently frivolous or legally insufficient.

### 4. Waiver

The Shaman Defendants' eleventh affirmative defense argues Mr. O'Neal "knowingly and voluntarily waived and relinquished any ability to bring [his] claims, and is equitably barred from asserting those claims because he failed to raise them before making the [Prior Settlement Agreement] or otherwise preserve them in conjunction with the settlement." (Doc. 188, p. 17). Mr. O'Neal argues his "right under FLSA to have the Court review and approve the release and other covenants in the [Prior Settlement Agreement] is clearly not a right that 'may be waived.'" (Doc. 195, p. 13). This allegation alone does not establish the Shaman Defendants' eleventh affirmative defense as to the doctrine of waiver is patently frivolous or legally insufficient.[10]

---

[10] Mr. O'Neal also argues the Shaman Defendants' affirmative defense of waiver is barred by a merger clause in the Prior Settlement Agreement. (Doc. 195, p. 14). This report declines to entertain this argument because Mr. O'Neal fails to reconcile this contention with the litany of arguments Mr. O'Neal has raised in this and other filings during these post-judgment proceedings arguing the totality of the Prior Settlement Agreement is unenforceable. *See generally* (Doc. 131, pp. 24–25; Doc. 139, pp. 19–20; Doc. 163, p. 6; Doc. 179, pp. 3–6; Doc. 185, pp. 4–9; Doc. 195, pp. 7, 11–12, 17–19, 21).

### 5. Superseding Legal Cause and Adequate Remedy at Law

The Shaman Defendants' twelfth affirmative defense argues Mr. O'Neal's equitable claims are barred in whole on in part by the existence of superseding legal claims and an adequate remedy at law. Mr. O'Neal argues "the affirmative defense of 'superseding cause' [only] applies in negligence and product liability actions" and "[t]he affirmative defense of 'adequate remedy at law' does not apply to claims for unjust enrichment." (Doc. 195, pp. 15–16).

Mr. O'Neal cites case law from the Middle District of Florida concluding "the general rule [] that if the complaint alleges that an adequate legal remedy exists, equitable remedies are unavailable . . . does not apply to claims for unjust enrichment. It is only upon a showing that an express contract exists that an unjust enrichment count fails." *Cadence Bank, N.A. v. 6503 U.S. Highway 301, LLC*, No. 8:13-cv-840-VMC-TGW, 2014 WL 12620844, at *5 (M.D. Fla. Mar. 17, 2014) (*citing Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997)). While broadly true as a matter of Florida law, as addressed above regarding Mr. O'Neal's argument in support of striking the Shaman Defendants' affirmative defense of release, "this Court has not made a conclusive determination on whether a contract existed." *Id*. Striking the Shaman Defendants' affirmative defense of adequate legal remedy on this basis is therefore not appropriate. *Id*.

Further, Mr. O'Neal effectively reraises his arguments against the

Shaman Defendants' affirmative defense of comparative negligence in arguing an affirmative defense of superseding legal cause only applies to negligence and products liability actions. (Doc. 195, p. 15). As addressed above regarding Mr. O'Neal's argument in support of striking the Shaman Defendants' affirmative defense of comparative negligence, Mr. O'Neal fails to show the Shaman Defendants' twelfth affirmative defense is patently frivolous or legally insufficient.

### B. Motion to Dismiss Counterclaims

The Shaman Defendants' amended answer (Doc. 188) to Mr. O'Neal's amended supplemental complaint (Doc. 166) includes two counterclaims: a request for declaratory judgment stating "the [Prior Settlement Agreement] is fair, reasonable and enforceable [and] the mutual general release in the [Prior Settlement Agreement] bars all claims O'Neal asserts in this [post-judgment] proceeding against the Shaman Defendants" and Mr. O'Neal's bad-faith representation to the contrary entitles the Shaman Defendants to attorneys' fees (Count I); and a breach of contract claim arguing Mr. O'Neal's commencement of post-judgment proceedings against the Shaman Defendants violates releases contained within the Prior Settlement Agreement (Count II). (Doc. 188, pp. 19–33).

Mr. O'Neal requests the court dismiss the Shaman Defendants' counterclaims pursuant to Rule 12, Fed. R. Civ. P., and raises seven arguments

in support: (1) the declaratory judgment should not be entertained because its merits are "already the subject of multiple motions that are currently pending before the Court" (*Id.* at 16–17); (2) the court lacks jurisdiction to enforce the releases contained within the Prior Settlement Agreement (*Id.* at 17–19); (3) the Shaman Defendants' claim for attorneys' fees on account of their declaratory judgment has no "contractual or statutory basis" (*Id.* at 19–20); (4) the unenforceability of the releases in the Prior Settlement Agreement moots the Shaman Defendants' claim for breach of contract (*Id.* at 20–21); (5) the Shaman Defendants' claim for breach of contract fails to comply with the pleading requirements of § 542.335, FLA. STAT. (2022) (*Id.* at 21–22); (6) the Prior Settlement Agreement's lack of a "covenant not to sue" grants Mr. O'Neal absolute immunity from "liability arising from the filing of the [post-judgment] proceedings" (*Id.* at 22–23); and (7) even if the releases contained within the Prior Settlement Agreement are enforceable, Mr. O'Neal's "filing of [post-judgment] proceedings is clearly not a breach of the release or the non-disparagement clause of the [Prior Settlement Agreement] as a matter of law." (*Id.* at 23–24).

This report will address each argument in turn.

## 1. Court Should Decline to Entertain Counterclaim

Mr. O'Neal argues the court should "exercise its discretion expressly granted it under the [Declaratory Judgment Act] and decline to entertain [the

Shaman] Defendants' counterclaim to interpret the terms of the release included in the [Prior Settlement Agreement]." (*Id*. at 17). "A motion to dismiss a complaint for declaratory judgment is not a motion on the merits." *Norring v. Priv. Escapes, LLC*, No. 6:09-cv-2081-GJK, 2010 WL 963293, at *7 (M.D. Fla. Mar. 12, 2010). "A request for declaratory judgment is properly pled where it is alleged that: (1) there is a bona fide dispute between the parties; (2) the plaintiff has a justiciable question as to the existence or non-existence of some right, status, immunity, power or privilege, or as to some fact upon which the existence of such right, status, immunity, power or privilege does or may depend; (3) the plaintiff is in doubt as to the right, status, immunity, power or privilege; and (4) there is a bona fide, actual, present need for the declaration." *Id*. (*citing Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 648 (Fla. 3rd Dist. Ct. App. 2006)).

Mr. O'Neal appears to refer the court to multiple previous filings discussing the adjudication and enforcement of releases within the Prior Settlement Agreement in lieu of raising argument in support of dismissing the Shaman Defendants' request for declaratory judgment. (Doc. 195, p. 17) (*citing* (Docs. 131, 139, 171)). The filings Mr. O'Neal references do not discuss the Shaman Defendants' request for declaratory judgment in any manner. (*Id*.). Without a substantive argument in support of Mr. O'Neal's claim that the Shaman Defendants' request for declaratory judgment is improperly pled, this

report concludes Mr. O'Neal's request that the court dismiss the Shaman Defendants' request for declaratory judgment should be rejected.

### 2. Court Lacks Jurisdiction to Adjudicate Enforceability of Release

Mr. O'Neal argues the Shaman Defendants' request for declaratory judgment should be dismissed because the court lacks subject matter jurisdiction to review the terms of the Prior Settlement Agreement. (Doc. 195, p. 17). As addressed in the May 23, 2022 report on the Shaman Defendants' motion for judicial approval of the Prior Settlement Agreement, Mr. O'Neal is correct that the Rule 41 dismissal of the prior action divested the court of jurisdiction to judicially approve the terms of the Prior Settlement Agreement under the FLSA. (Doc. 213). However, as with Mr. O'Neal's argument in support of striking the Shaman Defendants' affirmative defense of release, Mr. O'Neal fails to argue or otherwise establish the releases contained within the Prior Settlement Agreement are unenforceable as a matter of contract law. This report therefore concludes Mr. O'Neal's request that the court dismiss the Shaman Defendants' request for declaratory judgment because the court no longer possesses subject matter jurisdiction over the terms of the Prior Settlement Agreement should be rejected.

### 3. The Shaman Defendants Have Failed to State a Claim for Attorney Fees

Mr. O'Neal argues the Shaman Defendants "failed to plead a contractual

or statutory basis for an award of attorney fees" in their request for declaratory judgment. (Doc. 195, p. 19). Mr. O'Neal is correct that, as a general matter of Florida law, "a court may only award attorney's fees when such fees are 'expressly provided for by statute, rule, or contract.'" *Butler v. Wright*, No. 8:06-cv-165-EAK-TBM, 2010 WL 599387, at \*4 (M.D. Fla. Feb. 16, 2010) (*citing Hubbel v. Aetna Cas. & Sur. Co.*, 758 So. 2d 94, 97 (Fla. 2000)). However, "[i]n extremely limited circumstances, . . . courts are also authorized to award fees based upon the inequitable conduct doctrine, which permits the award of attorney's fees where one party (or attorney) has exhibited egregious conduct or acted in bad faith." *Id.* (*citing Moakley v. Smallwood*, 826 So. 2d 221, 226–227 (Fla. 2002); *Bitterman v. Bitterman*, 714 So. 2d 356, 365 (Fla. 1998)). The Shaman Defendants' claim of attorneys' fees within their request for declaratory judgment argues attorneys' fees are justified because "[Mr.] O'Neal and his counsel have acted in bad faith in this case." (Doc. 188, p. 30). This report therefore concludes Mr. O'Neal's request that the court dismiss the Shaman Defendants' claim of attorneys' fees within their request for declaratory judgment should be rejected.

### 4. The Shaman Defendants Have Failed to State a Claim for Breach of Contract

Mr. O'Neal argues the Shaman Defendants' counterclaim of breach of contract should be dismissed because the releases contained within the Prior

Settlement Agreement "are unenforceable as a matter of law" because the terms of the Prior Settlement Agreement "were not reviewed and approved by the Court as required by FLSA." (Doc. 195, p. 21). However, as with Mr. O'Neal's argument in support of striking the Shaman Defendants' affirmative defense of release, Mr. O'Neal fails to argue or otherwise establish the releases contained within the Prior Settlement Agreement are unenforceable as a matter of contract law. This report therefore concludes Mr. O'Neal's request that the court dismiss Shaman Defendants' counterclaim for breach of contract because the court did not judicially approve the terms of the Prior Settlement Agreement should be rejected.

### 5. Counterclaim Fails to Comply With § 542.335, FLA. STAT. (2022)

Mr. O'Neal argues the Shaman Defendants' counterclaim of breach of contract fails to comply with § 542.335, FLA. STAT. (2022). (Doc. 195, p. 22). Though Mr. O'Neal does not say so explicitly, Mr. O'Neal appears to claim a non-disparagement clause contained within the Prior Settlement Agreement in the prior action is a "restrictive covenant" under Florida law and the Shaman Defendants failed to comply with Section 542.335 by failing to plead "the existence of one or more legitimate business interests justifying" the non-disparagement clause's placement in the Prior Settlement Agreement. (*Id.*) (*citing Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1231 (11th Cir.

2009); § 542.335(c), FLA. STAT. (2022)). Assuming without deciding the non-disparagement clause constitutes a restrictive covenant under Florida law, the Shaman Defendants' counterclaim for breach of contract states the non-disparagement clause "served the legitimate business interest of avoiding further airing of the acrimonious relationship between O'Neal and the Shaman Defendants." (Doc. 188, p. 31). This report therefore concludes Mr. O'Neal's request that the court dismiss Shaman Defendants' counterclaim for breach of contract because the counterclaim does comply with the pleading requirements of Section 542.335 should be rejected.

### 6. Counterclaim is Barred By Florida's Absolute Litigation Privilege/ Filing of Supplemental Proceedings Did Not Breach Settlement Agreement

Mr. O'Neal argues "Florida's litigation privilege affords absolute immunity for acts occurring during the course of judicial proceedings" and Mr. O'Neal is therefore "entitled to absolute immunity for any alleged liability arising from the filing of the [post-judgment] proceedings." (Doc. 195, p. 23) (*citing Adams Arms, LLC v. Unified Weapon Systems, Inc.*, No. 8:16-cv-1503-VMC-AEP, 2016 WL 5391394, at *9 (M.D. Fla. 2016)). However, Mr. O'Neal also appears to concede "[t]he privilege does not extend absolute immunity to the filing of a lawsuit where that specific act breaches a contract," as is alleged in the Shaman Defendants' counterclaims. (*Id.*) (*citing Sun Life Assur. Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1219 (11th Cir. 2018)).

Thus, Mr. O'Neal also argues his filing of post-judgment proceedings did not violate any release or non-disparagement clause contained within the Prior Settlement Agreement. (*Id.* at 23–24).

In doing so, Mr. O'Neal purports to quote from *In re W.B. Care Ctr., LLC*, 419 B.R. 62 (M.D. Fla. 2019), in stating "[a] release does terminate the enforceability of a claim, but does not restrict a party from filing future litigation." (Doc. 195, pp. 24–25) (*citing In re W.B. Care Ctr., LLC*, 419 B.R. at 73–74). It is unclear what authority Mr. O'Neal means to associate with this statement, as the court in *In re W.B. Care Ctr., LLC* at no point states a release "does not restrict a party from filing future litigation." To the contrary, the court in *In re W.B. Care Ctr., LLC* concludes the affirmative defense of release "is generally complete absent fraud, failure of consideration, and the like." *In re W.B. Care Ctr., LLC*, 419 B.R. at 74. Mr. O'Neal cites no further case law supporting his contention that a general release akin to the parties' general release in the Prior Settlement Agreement does not preclude future litigation and the undersigned has not independently found any.

Further, the non-disparagement clause from the Prior Settlement Agreement states "[a]ll parties hereto agree that they shall not, in any communications whatsoever, no matter the medium, whether verbally, in writing, or online, with the press or other media or any customer, client or supplier, criticize, ridicule or make any statement which disparages or

degrades the other party." (Doc. 180, Ex. 1, p. 4). Beyond selectively quoting portions of the non-disparagement clause in a single sentence, Mr. O'Neal raises no further argument that the non-disparagement clause in the Prior Settlement Agreement cannot be read to cover his filing of a lawsuit alleging fraudulent transfer against the Shaman Defendants. (Doc. 195, p. 24). This allegation alone does not establish Florida's litigation privilege or clauses within the Prior Settlement Agreement necessitate Rule 12 dismissal of the Shaman Defendants' counterclaims.

## III.   CONCLUSION

It is **RECOMMENDED** that Mr. O'Neal's Motion to Dismiss Counterclaims and Strike Affirmative Defenses (Doc. 195) be **DENIED**.

**ENTERED** in Tampa, Florida on May 23, 2022.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.