# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**THOMAS O'NEAL,**

    **Plaintiff,**

**v.**                              **Case No. 8:20-cv-936-KKM-AAS**

**AMERICAN SHAMAN FRANCHISE SYSTEM, LLC; CBD AMERICAN SHAMAN, LLC; SHAMAN BOTANICALS, LLC; SVS ENTERPRISES, LLC; STEPHEN VINCENT SANDERS II; BRANDON CARNES; and FRANCIS KALAIWAA,**

    **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas O'Neal moves for partial summary judgment against Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa (collectively, the Shaman Defendants) and a preliminary injunction against Defendant Brandon Carnes and the Shaman Defendants. (Docs. 131, 139). The parties filed responses, replies, and sur-replies to the motion for preliminary injunction (Docs. 152, 172, 198) and motion for partial summary judgment (Doc. 155, 163, 167). The undersigned **RECOMMENDS** that Mr. O'Neal's motions be **DENIED**.

1

## I.  BACKGROUND

### A.  Underlying Facts[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal

---

[1] This report pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[3] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

## B. Procedural History

In his amended complaint,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled. (Docs. 65, 72).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

On September 7, 2020,[5] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58).[6] A July 30, 2021 order granted Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a

---

[5] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

[6] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46). Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

supplemental complaint. (Docs. 93, 127, 146).

Mr. O'Neal now moves to preliminarily enjoin the Shaman Defendants and Mr. Carnes through sequestering proceeds and income derived from certain "CBD American Shaman" store locations once allegedly owned and operated by Mr. Carnes (hereafter referred to as the Transferred Stores).[7] (Doc. 131). Mr. O'Neal also moves for partial summary judgment on Count II of his supplemental complaint, which alleges violation of Section 772.105(1)(a) of the Florida Uniform Fraudulent Transfer Act ("FUFTA"). (Doc. 139). The Shaman Defendants respond in opposition to both motions. (Docs. 152, 155, 156). Mr. Carnes did not respond.

## II.   ANALYSIS

### A. Preliminary Injunction

The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). To obtain a preliminary injunction, a plaintiff must prove (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury absent an injunction, (3) that the threatened injury

---

[7] At a March 9, 2022 status conference, the parties affirmed oral argument and an evidentiary hearing were unnecessary to adjudicate Mr. O'Neal's motions for preliminary injunction and partial summary judgment. *See* (Doc. 200). This report concludes no "bitterly disputed facts" or credibility issues demand holding an evidentiary hearing on this motion. *All Care Nursing Service, Inc. v. Bethesda Memorial Hosp., Inc.*, 887 F.2d 1535, 1538 (11th Cir. 1989).

outweighs whatever damage the injunction may cause the opposing party, and (4) that an injunction is not adverse to the public interest. *Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994). Because a "preliminary injunction is an extraordinary and drastic remedy, it is not to be granted until the movant clearly carries the burden of persuasion as to the four prerequisites." *Id.* (quotation omitted).

At the outset, this report notes Mr. O'Neal filed an amended supplemental complaint (Doc. 161) after filing the present motion for preliminary injunction and has not sought leave to amend the present motion. Mr. O'Neal's amended complaint does not introduce any new causes of action, but does appear to remove allegations referencing F&B, LLC (a corporation allegedly owned and operated by Mr. Carnes and Mr. Kalaiwaa), remove F&B as a defendant in this post-judgment action, and attach as an exhibit an agreement between Shaman Botanicals, American Shaman, Shaman Franchise, Mr. Sanders (collectively, the Transferee Defendants),[8] and Mr. O'Neal for the reacquisition of Mr. O'Neal's franchise interests in the Transferred Stores. (Doc. 161). This makes review of the present motion difficult, because (as detailed below) a substantial portion of Mr. O'Neal's

---

[8] The Shaman Defendants include all defendants in this post-judgment action except for Mr. Carnes. The Transferee Defendants include all Shaman Defendants except for SVS Enterprises and Mr. Kalaiwaa.

arguments in support of a preliminary injunction are predicated on actions allegedly conducted by F&B.

Courts in other jurisdictions have concluded amended complaints filed after motions for preliminary injunctions render said motions for preliminary injunctions moot. *See Gentry v. Tennessee Bd. of Judicial Conduct*, No. 3:17-20, 2017 WL 2417829, at *2 (M.D. Tenn. June 5, 2017), *objections overruled sub nom. Gentry v. Tennessee*, No. 3:17-cv-20, 2017 WL 3034695 (M.D. Tenn. July 18, 2017); *OnX USA LLC v. Sciacchetano*, No. 1:11-cv-2523-CAB, 2013 WL 950512, at *1 (N.D. Ohio Mar. 7, 2013). Other courts rule on the merits of the motion for preliminary injunction while noting the amended complaint was the legally operative complaint at the time of ruling. *Vita-Mix Corp. v. Tristar Prod., Inc.*, No. 1:07-cv-275-SO, 2008 WL 11383504, at *1 n.1 (N.D. Ohio Sept. 30, 2008); *3M Co. v. Christian Investments LLC*, No. 1:11-cv-627-TSE-JFA, 2011 WL 3678144, at *2 (E.D. Va. Aug. 19, 2011).

Given the procedural posture of this report, and because this report concludes the motion for preliminary injunction should be denied for other reasons, this report will proceed by evaluating the merits of Mr. O'Neal's motion.

## 1.    Substantial Likelihood of Success on the Merits

Mr. O'Neal argues he has a substantial likelihood of success on the merits. (Doc. 131, pp. 12–20). Mr. O'Neal alleges Mr. Carnes fraudulently

transferred his franchise interests in the Transferred Stores to the Transferee Defendants. (*Id*. at 5–10). Mr. O'Neal argues the manner in which Mr. Carnes transferred his franchise interests to the Transferee Defendants violated Section 726.105(1)(a) of FUFTA. (*Id*. at 13). Mr. O'Neal further argues his claim for equitable lien is warranted in this matter because the Shaman Defendants should "not be allowed to continue to benefit from the fruits of their malign behavior and be unjustly enriched." (*Id*. at 19). The Shaman Defendants respond that "the reacquisition of [the Transferred Stores] was not a *fraudulent* transfer and was not done with intent to hinder [Mr. O'Neal] or any other creditor" but was instead necessary to remedy the "financial and reputational injury" Mr. Carnes allegedly caused to the Shaman Defendants' business entities. (Doc. 152, p. 16).

To adequately plead a cause of action under FUFTA, Mr. O'Neal must show: (1) he was a creditor of Mr. Carnes and the Shaman Defendants that was later defrauded; (2) that Mr. Carnes and the Shaman Defendants intended to commit the fraud; and (3) "that the fraud involved a conveyance of property that could have been applicable to the payment of the debt due." *Dillon v. Axxsys Int'l, Inc.*, 185 Fed. App'x. 823, 828–829 (11th Cir. 2006). For purposes of Mr. O'Neal's motion for summary judgment, the Shaman Defendants only dispute that fraud occurred in the Transferee Defendants' reacquisition of Mr. Carnes' franchise interests in the Transferred Stores. (Doc. 152, pp. 16–19).

"In determining whether a transfer was made with actual intent to defraud a creditor, courts look to the statutory 'badges of fraud.'" *Wiand v. Lee*, 753 F.3d 1194, 1200 (11th Cir. 2014) (*citing* § 726.105(1), FLA. STAT. (2022)). These "badges of fraud" are statutory factors that may be given consideration in determining whether some financial transfer was made with actual fraudulent intent.

These factors are as follows:

(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor's assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 726. 105(2), FLA. STAT. (2022). "The existence of badges of fraud creates a prima facie case and raises a rebuttable presumption that the transaction is void." *Gen. Elec. Co. v. Chuly Int'l, LLC*, 118 So. 3d 325, 327 (Fla. 3d DCA 2013) (citation and internal quotation omitted). Consideration may be given to

factors not listed in Section 726.105 and a single badge of fraud itself does not necessarily establish an inference of fraud. *Wiand*, 753 F.3d at 1200.

Most relevant to the substance of the present motion, Mr. O'Neal claims the defendants concealed the transfer of franchise interests from Mr. Carnes to the Transferee Defendants because the Transferee Defendants conducted the transfers "without informing [Mr.] O'Neal" despite having "actual knowledge that [Mr.] O'Neal was actively investigating [Mr.] Carnes' whereabouts to both serve him and to monitor any transfers of his non-exempt assets." (Doc. 131, p. 16). In doing so, Mr. O'Neal claims the Transferee Defendants "intentionally sought to deceive and mislead [Mr.] O'Neal by affirmative misstatements, omissions, and obfuscation into falsely believing that not only had [Mr.] Carnes absconded, but so had his non-exempt assets, specifically the Transferred Stores." (*Id.*).

The Shaman Defendants argue the reacquisition of Mr. Carnes' franchise interests was not done to conceal Mr. Carnes' assets from passing to Mr. O'Neal as compensation for the judgment against Mr. Carnes. (Doc. 152, p. 2). To the contrary, the Shaman Defendants provide an affidavit from Leigh Geither, CFO for several of the Shaman Defendants, who attests the Transferee Defendants' reacquisition was conducted to remedy "substantial financial liability" the Transferee Defendants began facing on account of Mr. Carnes' "erratic and irresponsible behavior" and that the reacquisition of Mr.

Carnes' franchise interests by the Transferee Defendants "effectively ended [Mr.] Carnes' relationship and affiliation" with them. (Doc. 152, Ex. 1).

Here, Mr. O'Neal does not establish a substantial likelihood of success in showing a sufficient number of factors weigh in favor of an inference of fraud against the Shaman Defendants. Mr. O'Neal provides virtually no direct evidence substantiating his claims of concealment. Instead, Mr. O'Neal conflates a failure to affirmatively relay information to him regarding Mr. Carnes' assets with an intent by the Shaman Defendants to conceal Mr. Carnes' location. Mr. O'Neal readily concedes that the evidence he relies upon to substantiate the factual foundation for this motion is three years of state financial disclosure documents filed by some of the Shaman Defendants, as well as information displayed on a consumer website operated by some of the Shaman Defendants and a declaration the Shaman Defendants attached as an exhibit to an earlier filing. (Doc. 131, p. 7). That the bulk of Mr. O'Neal's evidence of fraud is publicly available cuts directly against the notion that the Shaman Defendants or Mr. Carnes intentionally concealed any transfers of franchise interests from Mr. Carnes to the Transferee Defendants.

Mr. O'Neal further claims the Shaman Defendants concealed their relationship with Mr. Carnes in their prior interrogatory answer by referring to Mr. Carnes as "a Defendant in this lawsuit who is not affiliated with the Shaman Companies and who was mentioned in the allegation of Plaintiff's

12

operative Complaint." (Doc. 131, Ex. 7, p. 4). However, Mr. O'Neal admits this interrogatory was answered five months *after* the Transferee Defendants reacquired Mr. Carnes' franchise interests and fully severed their affiliation with Mr. Carnes. (Doc. 131, p. 16).

Finally, Mr. O'Neal appears to argue the Shaman Defendants concealed the reacquisition of franchise interest from Mr. Carnes and misled Mr. O'Neal about Mr. Carnes' whereabouts by failing to inform Mr. O'Neal that a CBD American Shaman store in Kansas listed on 2021 franchise disclosure documents as owned and operated by Mr. Carnes was no longer owned and operated by Mr. Carnes. (Doc. 131, p. 17). However, the Shaman Defendants provide an affidavit from American Shaman's Director of Franchise Development, Kathi Miley, who alleges Mr. Carnes was listed as the franchisee of the store by mistake. (Doc. 131, Ex. 6, p. 5). The Shaman Defendants provide credible allegations sufficient to rebut Mr. O'Neal's argument that the Shaman Defendants concealed the reacquisition of Mr. Carnes' LLC interests.

Many of the other factors Mr. O'Neal argues fare no better. Mr. O'Neal in a single sentence claims the reacquisition of Mr. Carnes' franchise interests "constituted all of [Mr.] Carnes' *known* non-exempt assets," but Mr. O'Neal provides no further argument to support the conclusion that the reacquisition of the franchise interest constituted "substantially *all* the debtor's assets." (Doc. 131, p. 17) (emphasis added); § 726.105(e), Fla. Stat. (2022) (emphasis

added).

Mr. O'Neal also claims Mr. Kalaiwaa is the "functional equivalent" of a general partner in F&B and is thus an "insider" as it relates to Mr. Carnes. (Doc. 131, p. 15). For purposes of fraudulent transfers under Florida law, individuals are considered insiders to debtors if they are: (1) a relative of the debtor or of a general partner of the debtor; (2) a partnership in which the debtor is a general partner; (3) a general partner in a partnership described in subparagraph 2; or (4) corporation of which the debtor is a director, officer, or person in control. § 726.102(8)(a), FLA. STAT (2022). The case Mr. O'Neal relies upon involved a husband and wife transferring mortgage interests to a company formed by the husband and the couple's children. *Equity Inv. Partners, LP v. Lenz*, No. 0:08-cv-60630-CMA, 2010 WL 3008831, at *13 (S.D. Fla. 2010). The court concluded this close familial relationship between the couple and the company the couple transferred these financial interests to, while not strictly qualifying as an insider as defined in Section 726.105(2), created a functionally equivalent relationship to that of an insider. *Id*.

Here, no such familial relationship between Mr. Carnes, Mr. Kaliawaa, or F&B is alleged to exist. Mr. O'Neal's argument in support of finding Mr. Kalaiwaa is an insider appears to start and end with the unsubstantiated allegation that Mr. Kalaiwaa "owns a membership interest in F&B" and that the name "F&B" is an amalgamation of Mr. Kalaiwaa's and Mr. Carnes' first

names. (Doc. 131, p. 7). However, Mr. Kalaiwaa attests in an affidavit that he has "never owned any interest in [F&B]" and has "never participated in the management or operation of the company." (Doc. 152, Ex. 5). To the contrary, Mr. Kaliawaa alleges he was merely an employee of the CBD American Shaman store Mr. Carnes owned and operated in Liberty, Missouri. (*Id.*). Mr. Kalaiwaa claims he is now the franchisee of this CBD American Shaman location, but only became franchisee and "assumed the lease on the store and all other operating expenses" after Mr. Carnes' interest in the store was reacquired by the Shaman Defendants. (*Id.*). Further, the articles of organization for F&B list only Mr. Carnes as agent and organizer. (Doc. 131, Ex. 2). Mr. O'Neal provides no further evidence establishing Mr. Kalaiwaa was an insider and does not argue any of the other Shaman Defendants are insiders in relation to Mr. Carnes.

Even assuming without deciding Mr. O'Neal's assertions that Mr. O'Neal incurred substantial liability before the initiation of the prior action and subsequently absconded (Doc. 131, pp. 17–18), the Shaman Defendants provide a credible explanation for the Transferee Defendants' reacquisition of Mr. Carnes' franchise interests and Mr. O'Neal has not established a prima facie case of fraudulent transfer. Mr. O'Neal has therefore not demonstrated a substantial likelihood of success on the merits of his FUFTA claim.

Finally, regarding Mr. O'Neal's claim of equitable lien, Mr. O'Neal in

reply argues he "is not seeking to secure the future collection of money damages, but seeks the relief as an integral part of his cause of action for an equitable lien to prevent the dissipation of identifiable funds derived from the fraudulently conveyed Transferred Stores." (Doc. 172, p. 2). Mr. O'Neal frames his request for equitable lien as "seeking to preserve specific assets [he] contends remain [his] property before they were acquired by Defendants as a result of fraud." (Doc. 172, p. 2) (citing *In TemPay, Inc. v. Biltres Staffing of Tampa Bay, LLC*, 929 F. Supp. 2d 1255, 1260–1261 (M.D. Fla. 2013)). However, Mr. O'Neal raises this post-judgment action strictly to enforce his monetary judgment against Mr. Carnes. *See, e.g.,* (Doc. 131, p. 2; Doc. 161, p. 2) (wherein Mr. O'Neal states the purpose of the post-judgment proceeding is to "recover the *value of*" the transfers from Mr. Carnes to the Shaman Defendants). "[A]n equitable lien cannot exist when the party claiming it has an adequate remedy at law." *Cont'l 332 Fund, LLC v. Albertelli*, No. 2:17-cv-41-SPC-MRM, 2019 WL 2009369, at *4 (M.D. Fla. May 7, 2019). Thus, Mr. O'Neal has not established a likelihood of success on his claim for equitable lien.

*    *    *    *

Because Mr. O'Neal failed to establish a substantial likelihood of success on the merits of his claims, a preliminary injunction is not appropriate. Mr. O'Neal's failure to demonstrate a substantial likelihood of success on the

merits may defeat his claim regardless of his ability to establish the other elements. *Church*, 30 F.3d at 1342; *see also Siegel v. Lepore*, 234 F.3d 1163, 1176 (11th Cir. 2000) ("the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper"). Although the analysis could stop here, this report will address the other requisites for a preliminary injunction.

### 2.    Threat of Irreparable Injury

Mr. O'Neal claims he will suffer from irreparable harm because of "a well-founded fear that unless immediately enjoined, [the Shaman] Defendants will continue to appropriate the net income derived from the fraudulently transferred retail stores notwithstanding O'Neal's superior equitable lien in those funds." (Doc. 131, p. 20). The Shaman Defendants respond that Mr. O'Neal "fails to meet his heavy burden on this critical element." (Doc. 152, p. 6).

Mr. O'Neal's conclusory assertion fails to establish how and to what extent he will be irreparably injured absent the requested relief. *See Wilbesan Charter School, Inc. v. School Board of Hillsborough County*, 447 F. Supp. 2d 1292, 1307 (M.D. Fla. 2006) ("Plaintiffs' other generalized allegations of irreparable harm, namely, that the school's reputation and that of [charter school operator] will be irreparably harmed and that students will be denied a free, appropriate public education absent an injunction, are not well

demonstrated and are speculative at best"). While Mr. O'Neal correctly notes that FUFTA allows for the imposition of injunctions on the transfer of certain assets when necessary to execute the interests of justice in a certain matter,[9] Mr. O'Neal has not established that the "only assets ostensibly available to satisfy his judgment" against Mr. Carnes are the proceeds from the sale of the reacquired stores or the net income derived from the reacquired stores. (Doc. 131, p. 20).

Mr. O'Neal in reply avers that his requested injunction is "not an improper asset freeze." (Doc. 162, p. 1). But the fundamental purpose for Mr. O'Neal's request for injunction appears to be sequestering assets from the Shaman Defendants "in the cumulative amount not to exceed the amount of [Mr.] O'Neal's unsatisfied judgment [against Mr. Carnes]" so Mr. O'Neal may swiftly acquire his monetary damages upon prevailing in this post-judgment proceeding.  (Doc. 131, pp. 1, 11). "[A]n 'irreparable injury' means an injury that a monetary judgment cannot remedy." *Regions Bank v. Kaplan*, No. 8:16-cv-2867-SDM-AAS, 2017 WL 3446914, at *3 (M.D. Fla. Aug. 11, 2017) (*citing Northeastern Fl. Chapter of Ass'n of Gen. Contractors of Am. v. City of*

---

[9] "In an action for relief against a transfer or obligation under ss. 726.101-726.112, a creditor, subject to the limitations in s. 726.109 may obtain . . . An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property." § 726.108(1)(c)(1), FLA. STAT. (2022).

*Jacksonville, Fl.*, 896 F.2d 1283, 1285 (11th Cir. 1990)). "Section 726.109(2) affords [Mr. O'Neal] a legal remedy that gravitates strongly against the prospect of an irreparable injury . . . [as Mr. O'Neal can] obtain a money judgment against [the Shaman Defendants] for the amount of the fraudulent transfers." *Id*. Mr. O'Neal has not established any of his concerns about the Shaman Defendants potentially hindering Mr. O'Neal's ability to collect on his judgment against Mr. Carnes constitute an irreparable harm. Therefore, Mr. O'Neal cannot meet his burden of establishing a irreparable harm.

### C.     Balance of Harms and Public Policy

Mr. O'Neal claims the balance of harms in imposing this injunction weighs in his favor. (Doc. 131, p. 20). Mr. O'Neal claims the Shaman Defendants cannot be harmed by the imposition of this injunction "because they have no right to make any additional fraudulent transfers of the Transferred Stores, nor do they have a right to continue to appropriate the net income derived from the fraudulently transferred non-exempt assets." (*Id*. at 21). Mr. O'Neal claims his interests outweigh any harm caused by the "sequestering of the net proceeds of any future conveyances of the Transferred Stores and the net income derived from those fraudulently transferred retail locations" because "the requested injunction is not a general asset freeze; it only limits the transfer of the Transferred Stores without adequate prior notice to O'Neal's attorney." (*Id*.). Mr. O'Neal also claims the imposition of this

19

injunction is in the best interests of public policy because "enforcement of [FUFTA] serves the public interest." (*Id.* at 22).

While Mr. O'Neal does not request a total freeze of all the Shaman Defendants' assets, the sequestration of proceeds and profits from the reacquired stores still may "risk operational viability" for the Shaman Defendants. (Doc. 152, p. 19). This risk, coupled with the adequate remedy at law available to Mr. O'Neal, tip the balance of equities away from granting Mr. O'Neal's injunction.

Because Mr. O'Neal fails to establish a likelihood of success on the merits of his claims, an irreparable harm, or that the balance of harms and public policy weigh in his favor, the sequestration of proceeds and profits from the sale and operation of stores formerly owned by Mr. Carnes is not warranted. This report therefore recommends Mr. O'Neal's Motion for Preliminary Injunction (Doc. 131) be **DENIED**.

### B. Motion for Partial Summary Judgment

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might affect the outcome of the suit under governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving

party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). The nonmoving party must "go beyond the pleadings and her own affidavits," and she must point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Id.*

If evidence requires credibility determinations or deciding factual inferences in the moving party's favor, summary judgment is inappropriate because the duty to weigh credibility and evidence belongs to the jury when the judge is not the factfinder. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (quotation and citation omitted). Further, all record evidence is reviewed with inferences construed in the nonmoving party's favor. *Id.* at 1192–93 (citation omitted).

Here, Mr. O'Neal raises virtually identical arguments in his Motion for Preliminary Injunction and his Motion for Partial Summary Judgment. *Compare* (Doc. 131, pp. 12–20) (arguing Mr. O'Neal holds a substantial likelihood of success on the merits of his FUFTA claim), *with* (Doc. 139, pp. 12–19) (arguing no genuine dispute of material fact exists as to Mr. O'Neal's FUFTA claim and Mr. O'Neal is therefore entitled to summary judgment). In a Notice of Supplemental Authority (Doc. 210), Mr. O'Neal points to a recent Middle District of Florida decision stating "summary judgment in a supplemental proceeding involving actual fraudulent transfers is required

21

where multiple, uncontested badges of fraud exist and the transferees fails to present, as in the instant case, 'any plausible or legitimate explanation for the transfers.'" *Plus 352, S.A. v. Giraud*, No. 8:19-cv-2164, 2022 WL 911574, at *4 (M.D. Fla. Mar. 29, 2022).

"Generally, the issue of fraud is not properly the subject of summary judgment, because a resolution of the issues involved requires an exploration of the relevant facts and circumstances, and thus a court can seldom determine the presence of fraud absent a trial or evidentiary hearing." *State Farm Mut. Auto. Ins. Co. v. Weiss*, 410 F. Supp. 2d 1146, 1159 (M.D. Fla. 2006). This is equally true "in the context of fraudulent transfer actions based upon actual fraudulent intent because the questions are inherently fact based." *U.S. v. Faulkner*, No. 2:18-cv-14122-KAM, 2020 WL 1492995, at *8 (S.D. Fla. Mar. 27, 2020) (*citing In re Bankest Capital Corp.*, 374 B.R. 333, 346 (Bankr. S.D. Fla. 2007)).

As addressed above, the Shaman Defendants have provided a plausible and legitimate explanation for the reacquisition of the Transferred Stores. A genuine issue of material fact exists as to whether Mr. Carnes *fraudulently* conveyed his franchise interests in the Transferred Stores to the Transferee Defendants. Summary judgment on Mr. O'Neal's FUFTA claim is thus inappropriate at this time.

## III.   CONCLUSION

It is **RECOMMENDED** that Mr. O'Neal's Motion for Preliminary Injunction (Doc. 131) and Motion for Partial Summary Judgment (Doc. 139) be **DENIED**.

**ENTERED** in Tampa, Florida on May 23, 2022.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

**<u>NOTICE TO PARTIES</u>**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.