IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS O'NEAL,
 *Judgment Creditor*

Case No. 8:20-cv-936-KKM-AAS

Vs.

BRANDON M. CARNES, et al.,
 *Judgment Debtors*
_____/

THOMAS O'NEAL,
 *Judgment Creditor / Plaintiff*

Vs.

CBD AMERICAN SHAMAN, LLC, et al.,
_____/

## DECLARATION OF DAVID R. MITCHELL

**I, David R. Mitchell, declare as follows:**

1. I am an attorney licensed by the State of Missouri and engaged in the private practice of law as "Mitchell & Associates," 1080 NW South Outer Road, Blue Springs, Missouri, 64015.

2. On or about July 28, 2022, I was served with a Subpoena *duces tecum* issued by the United States District Court for the Western District of Missouri, Case No. 4:21-09039 ("Subpoena"), requesting documents pertaining to a former client, Brandon M. Carnes. A true and correct copy of the Subpoena is attached to my Declaration as Attachment "1."

1

3.      Mr. Carnes first contacted me on or about September 23, 2020, regarding a commercial transaction between Mr. Carnes and Shaman Franchise Systems, LLC, CBD American Shaman, LLC, Shaman Botanicals, LLC, Steven Vincent Sanders, II., and Francis Kalaiwaa ("Shaman"). The last contact I had with Mr. Carnes was on or about December 14, 2020.

4.      I have attached to my Declaration the documents ("Documents") in my custody and control responsive to the Subpoena as Attachment "2."

5.      The Documents were maintained by me as part of my regularly conducted professional activities as an attorney, and the emails included in the Documents reflect the dates and times the Documents were generated.

6.      I have made redactions to two (2) emails:    "Mitchell to Carnes"—September  24,  2020  at  12:26  PM,  and  "Carnes  to Mitchell"—September 24, 2020 at 2:55 PM based on Mr. Carnes' attorney-client evidentiary privilege recognized in the State of Missouri. I will endeavor to promptly deliver unredacted versions of the privileged emails upon delivery of a written authorization from Mr. Carnes, or an order from a court of competent jurisdiction.

7.      I have executed this Declaration within the United States.

**Under penalties of perjury, I declare that I have read the foregoing Declaration and the facts stated in it are true and correct.**

Date: August 2, 2022

David R. Mitchell

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Missouri ▾

Thomas J. O'Neal

)
)

*Plaintiff*

)

V.

) Civil Action No. 4;21-090309-SRB

Florida Shaman Properties, et. al.

)
)

*Defendant*

)

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      David R. Mitchell, Esq.Mitchell & Associates, 1080 NW South Outer Rd, Blue Springs, MO 64015

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

Place: 104 9th Street, Suite 205B, Kansas City, MO 61406

Date and Time:
September 1,2022 @ 9:30A.m

❏ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Place:

Date and Time:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      07/26/2022

*CLERK OF COURT*

OR

*Signature of Clerk or Deputy Clerk*                              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*

, who issues or requests this subpoena, are:

#### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense. ,

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C) *Specifying Conditions as an Alternative.*** In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A) *Documents.*** A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B) *Form for Producing Electronically Stored Information Not Specified.*** If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C) *Electronically Stored Information Produced in Only One Form.*** The person responding need not produce the same electronically stored information in more than one form.
  **(D) *Inaccessible Electronically Stored Information.*** The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A) *Information Withheld.*** A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B) *Information Produced.*** If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 4;21-090309-SRB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____.

    ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

    ☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____.

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI**

**THOMAS O'NEAL,**                              Case No. 4:21-09039-SRB

      *Plaintiff*

**Vs.**

**FLORIDA SHAMAN PROPERTIES, LLC;
BRANDON CARNES, AND KATELYN SIGMAN**

      *Defendants.*
_____/

## REQUEST FOR PRODUCTION OF DOCUMENTS

TO:   David R. Mitchell, Esq.
       Mitchell & Associates
       1080 NW South Outer Road
       Blue Springs, MO. 64015

      **PLEASE TAKE NOTICE** that pursuant to Rules 69 and 34, Fed.R.Civ.P.,

David R. Mitchell, Esq., doing business as "Mitchell & Associates" (hereinafter

"Respondent"), is required to produce the materials designated for production described

in Attachment "A" on the date, at the time, and at the place indicated below:

      Date:        September 1, 2022

      Time:        8:30 a.m.

      Place:       104W. 9th Street, Suite 205B, Kansas City, MO 61406
                   c/o Kevin H. Graham

## DEFINITIONS

A. "Shaman Parties" shall collectively mean Shaman Franchise Systems, LLC, CBD American Shaman, LLC, Shaman Botanicals, LLC, SVS Enterprises, and Steven Vincent Sanders, II., an individual.

B. "Carnes" shall mean collectively, Brandon M. Carnes and any Carnes Entity.

C. "Carnes' Entity" shall mean any limited liability company, corporation, partnership, or other business entity owned in whole or in part by Carnes.

D. "Kalaiwaa" shall mean Francis Kalaiwaa.

E. "Mitchell" shall mean Attorney David R. Mitchell., d/b/a "Mitchell & Associates, and all attorneys and non-attorneys employed by Mitchell.

F. "Porto" shall mean Attorney Nicholas J. Porto, d/b/a "The Porto Law Firm," and all attorneys and non-attorneys employed by Porto.

G. References to "you," "yourself," "your," are references to Respondent.

H. "Document" or "Documents" shall mean and include every writing or record of every type and description that is in possession, custody or control of the Deponent, or any other person or entity controlled by Deponent, including but not limited to any past or present employee, principal, officer, director, investigator, independent contractor, agent or attorney of Deponent, 'and/or any other person acting for or on Deponent's behalf, and/or under Deponent's authority or control, or in the possession of the Deponent's attorneys, or known by the Deponent's attorneys to exist, including, without limitation, letters, correspondence, memoranda, minutes, stenographic or handwritten notes, drafts, work papers, studies, publications, books, pamphlets, every piece of paper with any mark on it, tape or video recordings, transcriptions, surveys, statistical data, computer printouts, computer e - mail, electronic mail and/or data whether on hard disk, or any other storage medium and to be produced as hard copies and on electric medium. The term "document" shall include data stored, maintained or organized electronically or magnetically through computer equipment, translated, if necessary, by you into comprehensible form, ledgers, forms, telegrams, pictures, data processing cards and tapes, tabulations, charts, records, interoffice communications, microfilm or microfiche, lists, bulletins, calendars, circulars, desk pads, journals, diaries, invoices, balance sheets, notices, summaries, reports, analyses, tele-typed or tele-faxed messages, computer programs, instructions or documentation that is necessary in order to use the data processing and

computer records, copies of such writings or records where the original is not in your possession, custody or control, and every copy of such writing or record where such copy contains any commentary or notations whatsoever that do not appear on the original.

I.  "Transfer Agreement" shall mean the written Agreement dated October 15, 2020, conveying the Transferred Stores to the Shaman Defendants.

J.  "Litigation" shall mean Case No. 8:20-cv-936 filed in the Middle District of Florida.

K.  "O'Neal" shall mean Thomas J. O'Neal, Judgment Creditor and Plaintiff in the Litigation.

L.  The following terms, any variations of those terms and the like are to be considered interchangeable and have the same meaning, which shall be interpreted broadly: "concern" "concerning," "relating to," "refer," "referring to," "pertain" or "pertaining to," "describing," "evidencing," and "constituting ".

M.  The conjunction "and" as well as the conjunction "or" shall each be interpreted in every instance as meaning and/or and shall not be interpreted so as to exclude any information otherwise within the scope of any discovery request.

N.  As used herein, the singular shall include the plural. The plural shall include the singular, the masculine, feminine and neuter shall include each of the other genders. "Any" shall include the word "all" and the word "all" shall include the word "any."

[Remainder of Page Left Intentionally Blank]

– 3 –

## ATTACHMENT "A"

### DOCUMENTS TO BE PRODUCED

*Transfer Agreement*

1.  All documents in Respondent's possession, custody, or control relating to Carnes retention of Respondent to perform legal services for Carnes or a Carnes Entity during the period January 1, 2018, to the present.

2.  All documents relating to the negotiation, drafting, and execution of the Transfer Agreement including, without limitation, all communications by and between Respondent and Porto.

3.  All documents in Respondent's possession, custody, or control relating to Carnes' business or interpersonal relationship with Shaman including, without limitation, all documents that evidence or refute that Carnes' was an insider as to one or more of the Shaman Parties under state fraudulent transfer laws.

4.  All documents in Respondent's possession, custody, or control relating to any disclosures made by Carnes or any Shaman Party to employees, trade creditors, customers, the franchise community, or the general public regarding Carnes' transfer of the franchised stores to Shaman as memorialized in the Transfer Agreement.

5.  All documents in Respondent's possession, custody, or control relating to any disclosures made by Carnes or any Shaman Party to O'Neal regarding Carnes' transfer of the franchised stores to Shaman as memorialized in the Transfer Agreement.

6.  All documents in Respondent's possession, custody, or control relating to any disclosures made by Carnes or any Shaman Party to landlords, utilities, and/or trade creditors regarding Carnes' transfer of the franchised stores to Shaman as memorialized in the Transfer Agreement.

7.  All documents in Respondent's possession, custody, or control relating to any

disclosures made by Carnes or any Shaman Party to any state agency charged with collecting sales taxes or administering employee unemployment and workers compensation programs regarding Carnes' cessation of business and Shaman's takeover of the franchised stores as memorialized in the Transfer Agreement.

8.   All documents that relate to any professional malpractice claims made against you arising from your failure to properly advise Carnes regarding the application of state fraudulent transfer laws to the transaction described in the Transfer Agreement.

9.   All documents that support or refute the fact that Carnes obtained your professional services to negotiate and draft the Transfer Agreement to enable or aid what Carnes knew was part of a conspiracy to commit fraud against his creditors.

10.   All documents that support or refute the fact that Carnes obtained your professional "services" to negotiate and draft the Transfer Agreement "to enable or aid" Carnes to commit fraud against his creditors.

11.   All documents that identify any of Carnes' residential addresses, business mailing addresses, and telephone numbers.

12.   All documents identify Carnes' assets, ownership interests in any limited liability companies, corporations, partnerships, bank accounts, brokerage accounts, and real or personal property.

13.   All documents relating to Carnes' federal or state tax returns.

Mitchell and Associates, LC Mail - Brandon Carnes          https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**

David Mitchell <david@bluespringslaw.com>

---

## Brandon Carnes

Nick Porto <nporto@portolaw.com>                                     Wed, Sep 23, 2020 at 2:50 PM
To: David Mitchell <david@bluespringslaw.com>, Sean Pickett <swp@kclawoffice.com>

Hello David: I understand that you are representing Brandon Carnes. Sean Pickett and I represent Shaman. I have attached a proposed management agreement for your review. Please let me know with questions.

Nick

--
Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.

 **Management Agreement (Carnes FINAL).docx**
28K

---

7/28/2022, 1:12 PM

## MANAGEMENT AGREEMENT

This MANAGEMENT AGREEMENT (this "**Agreement**") is made and entered into as of this _____ day of _____, 20___, (the "**Effective Date**") by and between Brandon Carnes, individually and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company (collectively "**Carnes**") and Shaman Botanicals, LLC a Missouri Limited Liability Company ("**Shaman Botanicals**").

### WITNESSETH:

1.     THAT, WHEREAS, Carnes, and the aforementioned entities, have leases for the following locations:

a.     6933 W. 75th Street, Overland Park, Kansas 66204;

b.     10069 West 87th Street, Overland Park, Kansas 66212;

c.     1275 E. Bell Road, Suite 110, Phoenix, Arizona 85022;

d.     4016 Cattlemen Road, Sarasota, Florida 34233;

e.     189 Henslee, Suite 8, Dickson, Tennessee 37055;

f.     123 Northcreek Boulevard, Suite 3, Goodlettsville, Tennessee 37072;

g.     1050 Glenbrook Way, Suite 440, Hendersonville, Tennessee 37075;

h.     3703 Main Street, Kansas City, Missouri 64111;

i.     6302 N. Chatham Avenue, Kansas City, Missouri 64151;

j.     9438 East 350 Highway, Raytown, Missouri 64133;

k.     13213 Shawnee Mission Parkway, Shawnee, Kansas 66216;

l.     139 North Belt Highway, Suite S, St. Joseph, Missouri 64056;

m.     22354 W. 66th Street, Shawnee, Kansas 66226;

n.     307 "A" NE Englewood Road, Kansas City, Missouri 64118;

o.     5501 Truman's Marketplace Drive, Suite 104, Grandview, Missouri 646030;

p.     1036 W. 103rd Street, Kansas City, Missouri 64114;

q.     11709 Roe Avenue, Leawood, Kansas 66212;

(hereinafter a "Property" or collectively the "Properties").

2.     NOW, Carnes seeks to retain Shaman to manage said Properties and to operate, in Shaman's sole discretion, a "CBD American Shaman" location at such Properties.

3.     AFTER the **Effective Date** of this **Agreement**, neither Carnes, nor the foregoing entities, shall have any right to operate at such Properties and each agree that Shaman shall have the exclusive right to occupy such Properties.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

### PROPERTIES

Carnes hereby grants to Shaman and Shaman hereby accepts the exclusive right and obligation of administering, managing and operating the business operations at the Properties, including, but not limited to, operating a CBD American Shaman location at such Property.

### TERM

The term of this Agreement shall commence on the date of the execution of this Agreement and shall continue until the earlier of (1) the expiration of Carnes' lease(s) at such Property; (2) Shaman's assumption of Carnes' lease(s) at such Property; or (3) Shaman's termination of this Agreement with respect to the Properties or any individual Property.

### SHAMAN'S OBLIGATIONS

If, in Shaman's sole discretion, it shall be economically advantageous to do so, Shaman shall operate a CBD American Shaman at each individual Property.  If such store is profitable, Shaman shall:

a.     Pay all rent for such Property;

b.     Pay all operating expenses for such Property; and

c.     Employ individuals to staff such Property.

**1.  RENUMERATION TO SHAMAN.**  Shaman shall retain all proceeds from the sales of any products at the Properties as its sole renumeration.

### INDEMNIFICATION BY SHAMAN

Shaman shall indemnify, defend, protect and hold harmless Carnes from any and all loss, cost, claims, damages, demands or liabilities arising out of any activity performed at the Properties after the Effective Date of this Agreement.  The foregoing indemnity shall survive the termination of this Agreement.

## 2.      INDEMNIFICATION BY CARNES

Carnes shall indemnify, defend, protect and hold harmless Shaman from any and all loss, cost, claims, damages, demands or liabilities arising out of any activity performed at the Properties prior to the Effective Date of this Agreement. Carnes shall further indemnify Shaman from any claims made against Shaman by Carnes' landlords, regardless of when such claims accrued. The foregoing indemnity shall survive the termination of this Agreement.

## RELATIONSHIP OF THE PARTIES

No partnership or joint venture between the parties is created by this Agreement.

## GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri.

## APPROVALS

Whenever the approval of either party is required herein, except as otherwise provided in this Agreement, such approval shall not be unreasonably withheld or delayed.

## WAIVERS

No waiver of default by either party of any term, covenant or condition hereof to be performed or observed by the other party shall be construed as, or operate as, a waiver of any subsequent default of the same or any other term, covenant or condition hereof.

## SEVERABILITY

. If any provision hereof is held to be invalid by a court of competent jurisdiction, such invalidity shall not affect any other provision hereof, provided such invalidity does not materially prejudice either party in its rights and obligations contained in the valid provisions of this Agreement.

## TERMINATION

In addition to all other termination rights hereunder, either party may terminate this Agreement at any time without any further recourse to the other party.

## ASSIGNMENT

Neither party shall not assign, encumber or transfer this Agreement or its right, title or interest herein without the prior written consent of the other.

**ENTIRE AGREEMENT**

This Agreement, together with all exhibits hereto, constitutes the entire agreement between the parties, and supercedes all representations, statements or prior agreements and understandings both written and oral with respect to the matters contained in this Agreement and exhibits hereto.   No person has been authorized to give any information or make any representation not contained in this Agreement.   This Agreement may be amended only by written agreement of the parties.

**PARTIES BOUND**

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, successors, executors, administrators, legal representatives and permitted assigns.

**3.   CONTINGENCY**

This Agreement is contingent on Carnes, individually, executing an assignment of his lease at 1005 Middlebrook Drive, Suite C, Liberty, Missouri 64068 to Francis Kalaiwaa.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.


_____          _____
Brandon Carnes                                              Dated



_____          _____
Francis Kalaiwaa ("Kalaiwaa")                      Dated



_____          _____
Stephen Vincent Sanders, II                          Dated

Mitchell and Associates, LC Mail - Brandon Carnes                    https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**                                    David Mitchell <david@bluespringslaw.com>

## Brandon Carnes

**Nick Porto** <nporto@portolaw.com>                           Thu, Sep 24, 2020 at 3:26 PM
To: David Mitchell <david@bluespringslaw.com>, Sean Pickett <swp@kclawoffice.com>

David are you available tomorrow or Monday for a brief conference call?

Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

> On Sep 23, 2020, at 2:50 PM, Nick Porto <nporto@portolaw.com> wrote:

> [Quoted text hidden]
> <Management Agreement (Carnes FINAL).docx>

Mitchell and Associates, LC Mail - Brandon Carnes      https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**         **David Mitchell <david@bluespringslaw.com>**

## Brandon Carnes

**David Mitchell <david@bluespringslaw.com>**       Thu, Sep 24, 2020 at 4:15 PM
To: Nick Porto <nporto@portolaw.com>
Cc: Sean Pickett <swp@kclawoffice.com>

How about 11am either tomorrow or Monday.  I'll be on my cell:

816-721-3450

David R. Mitchell, Esq.
Mitchell & Associates., LC
1080 NW South Outer Road
Blue Springs, MO 64015
816-224-1100
816-224-1101 [Fax]
David@BlueSpringslaw.com

=======================================================
For required attorney e-mail disclaimer: https://www.mitchellandassociateslc.com/communications-confidentiality  If
you have received this communication in error, please notify us immediately by e-mail or (816) 224-1100, and delete
the original message.  Thank you.

[Quoted text hidden]

Mitchell and Associates, LC Mail - Brandon Carnes                    https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**                                      David Mitchell <david@bluespringslaw.com>

## Brandon Carnes

**Nick Porto** <nporto@portolaw.com>                                Thu, Sep 24, 2020 at 7:26 PM
To: David Mitchell <david@bluespringslaw.com>
Cc: Sean Pickett <swp@kclawoffice.com>

11 AM tomorrow would be great.

Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

> On Sep 24, 2020, at 4:15 PM, David Mitchell <david@bluespringslaw.com> wrote:
>
> [Quoted text hidden]

Mitchell and Associates, LC Mail - Brandon Carnes                    https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**                                            **David Mitchell <david@bluespringslaw.com>**

---

## Brandon Carnes

---

**Nick Porto <nporto@portolaw.com>**                          Fri, Sep 25, 2020 at 11:15 AM
To: David Mitchell <david@bluespringslaw.com>, Sean Pickett <swp@kclawoffice.com>

David: my client's offer for the attached management agreement is hereby retracted.  Basically, Mr. Carnes unlawfully removed all of the inventory at the location at 3703 Main Street, Kansas City, Missouri 64111 and this has eliminated any remaining good faith between the parties.  My client is however willing to entertain future negotiations.  Specifically, it is our understanding that Mr. Carnes now also desires Shaman to manage the locations in Olathe and Lee's Summit pursuant to the terms in the attached.  My client is willing to discuss this but any discussions would be contingent on Mr. Carnes immediately returning the inventory from the location at 3703 Main Street.

Please confirm your client's intentions in this regard.
[Quoted text hidden]

Mitchell and Associates, LC Mail - Brandon Carnes                    https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**                                                    David Mitchell <david@bluespringslaw.com>

## Brandon Carnes

**David Mitchell** <david@bluespringslaw.com>                          Wed, Sep 30, 2020 at 7:05 PM
To: Nick Porto <nporto@portolaw.com>

Hello Nick:

I have tried to reach Brandon, with no success for today.  I'll try again tomorrow and will be in touch.  I should
generally be available tomorrow.

David


David R. Mitchell, Esq.
Mitchell & Associates., LC
1080 NW South Outer Road
Blue Springs, MO 64015
816-224-1100
816-224-1101 [Fax]
David@BlueSpringslaw.com


============================================================
For required attorney e-mail disclaimer: https://www.mitchellandassociateslc.com/communications-confidentiality  If
you have received this communication in error, please notify us immediately by e-mail or (816) 224-1100, and delete
the original message.  Thank you.


  Virus-free. www.avg.com

[Quoted text hidden]

Mitchell and Associates, LC Mail - Brandon Carnes

https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**

David Mitchell <david@bluespringslaw.com>

---

## Brandon Carnes

---

**Nick Porto** <nporto@portolaw.com>                          Wed, Sep 30, 2020 at 5:57 PM
To: David Mitchell <david@bluespringslaw.com>
Cc: Sean Pickett <swp@kclawoffice.com>

David: can you confirm if you are still representing Mr. Carnes?   Mr. Carnes Hs reached out to my client directly and made a settlement proposal.

Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com


On Sep 24, 2020, at 4:15 PM, David Mitchell <david@bluespringslaw.com> wrote:


[Quoted text hidden]

Mitchell and Associates, LC Mail - Carnes Agreement                    https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**                                           **David Mitchell <david@bluespringslaw.com>**

## Carnes Agreement
1 message

**Nick Porto** <nporto@portolaw.com>                                    Fri, Oct 2, 2020 at 12:23 PM
To: Brandon Carnes <brandon.carnes1@gmail.com>, David Mitchell <david@bluespringslaw.com>

See attached and please review and comment.

Nick

--
Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.



Management Agreement (Carnes FINAL).docx
36K

## AGREEMENT

This AGREEMENT (this "**Agreement**") is made and entered into as of this
_____ day of _____, 20__, (the "**Effective Date**") by and between Brandon Carnes,
individually and for Missouri AS Properties, LLC, a Missouri Limited Liability Company,
Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties,
LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American
Shaman, LLC, a Florida Limited Liability Company (collectively "**Carnes**") and Shaman
Botanicals, LLC a Missouri Limited Liability Company, CBD American Shaman, LLC, a
Missouri limited liability company, American Shaman Franchise System, LLC, and Stephen
Vincent Sanders, II, individually (collectively "**Shaman**").

### WITNESSETH:

1.  THAT, WHEREAS, Carnes agrees that he is the sole member and shareholder of
    the following entities: Missouri AS Properties, LLC, a Missouri Limited Liability
    Company, Nashville AS Properties, LLC, a Tennessee Limited Liability
    Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company,
    Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited
    Liability Company.

2.  THAT, WHEREAS, Shaman has invested significant capital in such entities and
    Carnes has pledged to repay such investment

3.  THAT, WHEREAS, Carnes, and the aforementioned entities, have leases for the
    following locations:

a.  6933 W. 75th Street, Overland Park, Kansas 66204;

b.  10069 West 87th Street, Overland Park, Kansas 66212;

c.  1275 E. Bell Road, Suite 110, Phoenix, Arizona 85022;

d.  4016 Cattlemen Road, Sarasota, Florida 34233;

e.  189 Henslee, Suite 8, Dickson, Tennessee 37055;

f.  123 Northcreek Boulevard, Suite 3, Goodlettsville, Tennessee 37072;

g.  1050 Glenbrook Way, Suite 440, Hendersonville, Tennessee 37075;

h.  6302 N. Chatham Avenue, Kansas City, Missouri 64151;

i.  9438 East 350 Highway, Raytown, Missouri 64133;

j.  13213 Shawnee Mission Parkway, Shawnee, Kansas 66216;

k.  139 North Belt Highway, Suite S, St. Joseph, Missouri 64056;

l.    22354 W. 66th Street, Shawnee, Kansas 66226;

m.    307 "A" NE Englewood Road, Kansas City, Missouri 64118;

n.    5501 Truman's Marketplace Drive, Suite 104, Grandview, Missouri 646030;

o.    1036 W. 103rd Street, Kansas City, Missouri 64114;

q.    15165 W. 119th Street, Olathe, Kansas 66062;

r.    3428 Clark Road, Sarasota, Florida, 34231; and

s.    6027 Metcalf Avenue, Suite B, Mission, Kansas 66202

(hereinafter a "Managed Property" or collectively the "Managed Properties").

4.    NOW, Carnes seeks to retain Shaman to manage said Properties and to operate, in Shaman's sole discretion, a "CBD American Shaman" location at such Properties.

5.    THAT, WHEREAS, Carnes further operates stores at the following locations:

a.    13624 South Blackbob Road, Olathe, Kansas 66062;

b.    1638 SE Blue Parkway, Lee's Summit, Missouri 64063;

c.    3703 Main Street, Kansas City, Missouri 64111; and

d.    11709 Roe Avenue, Leawood, Kansas 66212.

(hereinafter a "Assigned Property" or collectively the "Assigned Properties").

6.    NOW, Carnes seeks to assign any leases to the Assigned Properties, along with any assets associated with such Assigned Properties, to Shaman, and shall execute an assignment of each lease for an assigned property in the form attached hereto.

7.    NOW, FURTHER, Carnes agrees to execute an assignment of the lease at 1005 Middlebrook Drive, Suite C, Liberty, Missouri 64068 to Francis Kalaiwaa in the form attached hereto.

8.    AFTER the Effective Date of this Agreement, neither Carnes, nor the foregoing entities, shall have any right to operate at either the Managed Properties of Assigned Properties and agree that Shaman shall have the exclusive right to occupy such Properties.

9.    THAT, WHEREAS, in exchange for Carnes entering into this Agreement, Shaman is willing to release Carnes from any debt owed by Carnes to Shaman.

10.    THAT, WHEREAS, in further exchange for Carnes entering into this Agreement, Shaman agrees to continue to pay Carnes the affiliate income described herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## I.   MANAGED PROPERTIES

### AGREEMENT FOR MANAGED PROPERTIES

Carnes hereby grants to Shaman and Shaman hereby accepts the exclusive right and obligation of administering, managing and operating the business operations at the Managed Properties, including, but not limited to, operating a CBD American Shaman location or other lawful business at such properties.

### TERM OF MANAGED PROPERTIES

The term of this Agreement shall commence on the date of the execution of this Agreement and shall continue until the earlier of (1) the expiration of Carnes' lease(s) at such Property; (2) Shaman's assumption of Carnes' lease(s) at such Property; or (3) Shaman's termination of this Agreement with respect to the Properties or any individual Property, all parties recognizing that Shaman may terminate the management of any property at any time, with or without cause.  At all times during the Term, Carnes shall refrain from visiting the Managed Properties or contacting any employee of the Managed Properties without the express written consent of Shaman.

### SHAMAN'S OBLIGATIONS WITH RESPECT TO MANAGED PROPERTIES

If, in Shaman's sole discretion, it shall be economically advantageous to do so, Shaman shall operate a CBD American Shaman, or another lawful business, at each individual Managed Property.  If such store is profitable, Shaman shall:

a.   Pay all rent for each Managed Property.

b.   Pay all operating expenses for such Managed Property; and

c.   Employ individuals to staff such Managed Property.

Conversely, if a Managed Property is not profitable, Shaman shall have no obligation to pay of the aforementioned expenses at a Managed Property.

**1.  RENUMERATION TO SHAMAN FOR MANAGED PROPERTIES.**  Shaman shall solely retain all proceeds from the sales of any products at the Managed Properties as its sole renumeration for managing such properties.

## 2.  INDEMNIFICATION BY CARNES FOR MANAGED PROPERTIES

Carnes shall indemnify, defend, protect and hold harmless Shaman from any and all loss, cost, claims, damages, demands or liabilities, including unpaid sales tax, arising out of any activity performed at the Properties prior to or after the Effective Date of this Agreement.  The foregoing indemnity shall survive the termination of this Agreement.

## II.   ASSIGNED PROPERTIES

### 1.   AGREEMENT FOR ASSIGNED PROPERTIES

Carnes hereby assigns to Shaman, free from any liabilities, the following assets for each of the Assigned Properties:

a.   All of Carnes' rights in any lease for the Assigned Properties;
b.   All of the rights of Carnes with respect to any telephone number and facsimile number currently used by Carnes at the Assigned Properties.
c.   All of the Carnes inventory at the Assigned Properties.
d.   All of the Seller's rights in any service contracts for the Assigned Properties.

### 2.   PURCHASE PRICE FOR ASSIGNED PROPERTIES

a.   The Purchase Price for the Assigned Properties is the sum of NINETY THOUSAND DOLLARS NO CENTS ($90,000.00), payable as follows:

i.   SIX THOUSAND DOLLARS AND NO CENTS ($6,000.00) payable upon all parties' execution of this Agreement, confirmation by Shaman of the return of all inventory associated with the Assigned Property located at 3703 Main Street, Kansas City, Missouri 64111 as all parties hereto recognize that Shaman conducted an audit of such inventory one business day before Carnes removed the same, and all parties and third party landlords executing the assignments of leases attached hereto.  If Carnes fails to return the inventory associated with the Assigned Property located at 3703 Main Street, Kansas City, Missouri 64111 to Shaman, in Shaman's sole determination, on or before 5:00 pm on Monday, October 5, 2020, this Agreement shall be null and void.

ii.   Assuming the activities specified in Paragraph II(2)(a) have occurred, Shaman shall pay Carnes an additional SIX THOUSAND DOLLARS AND NO CENTS ($6,000.00) on or before the 5th Day of November, December, 2020, and January, February, March, April, May, June, and July, 2021.

iii.   The remaining THIRTY THOUSAND DOLLARS AND NO CENTS ($30,000.00) (hereinafter the "Escrow Amount") shall be maintained by Shaman

in Escrow and disbursed by Shaman in accordance with the Escrow Agreement specified in Paragraph II(3).

**3.    ESCROW AGREEMENT**

a.    If any claims are made against Shaman on or before August 5, 2021 to which Shaman is entitled to indemnity from Carnes pursuant to the terms of this Agreement, or if Shaman reasonably believes monies are owed by Carnes for obligations incurred by Carnes prior to the execution of this Agreement, or if Carnes otherwise violates this Agreement, Shaman has the absolute right to offset and reduce the Escrow Amount in order to satisfy any such claims or obligations.  Furthermore, if Shaman, in Shaman's sole discretion, reasonably believes that the value of the aforementioned claims or obligations asserted exceeds the Escrow Amount, Shaman may hold any future payments owed to Carnes in escrow.   Conversely, if no such claims are made against Shaman on or before November 5, 2021, Shaman shall pay the Escrow Amount in its entirety to Carnes on or before August 5, 2021.

**III.    NO RIGHT TO USE SHAMAN'S NAME OR TRADEMARKS**

1.    All parties hereto acknowledge that no right, express or implied, is granted by this Agreement for Carnes to use in any manner the name "Shaman" or any other trade name or trademark of the Shaman.

2.    After the execution of this Agreement, Carnes agrees that he shall not, in any way, hold himself out or in any represent to third parties that he is any way associated with Shaman or its affiliates.  Carnes further agrees to promptly remove from social media any indicia that he is employed by or associated with Shaman in any capacity.

**IV.    NON-COMPETE AND NON-SOLICITATION BY CARNES**

1.    During the term of this Agreement and for a period of five (5) years thereafter, Carnes shall not, directly or indirectly, (i) in any manner whatsoever engage in any capacity with any business competitive with Shaman, any of its subsidiaries or any of its affiliates for the Carnes' own benefit or (ii) have any interest as owner, sole proprietor, stockholder, partner, lender, director, officer, manager, employee, consultant, agent or otherwise in any business competitive with Shaman's Business.

2.    During the term of this Agreement and for a period of five (5) years thereafter, Carnes shall not, without Shaman's written consent, directly or indirectly; (i) solicit or encourage any person to leave the employment or other service of Shaman or its Affiliates; or (ii) hire, on behalf of Carnes or any other person or entity, any person who has left the employment of the Shaman for any reason; or (iii) solicit any current or former customer or other individual affiliated with Shaman in any capacity whatsoever for any reason.

**V.    RELEASE BY CARNES**

In consideration for the payments set forth in, and intending to be legally bound, Carnes, individually and for and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company, promises, agrees and generally releases , remises, acquits and forever discharges Shaman (except as to such rights or claims as may be created by this Agreement and the payments specified herein), its officers, directors, employees, agents, attorneys, servants and/or former employees, individually and in their representative capacities, and their respective successors and assigns, heirs, executors, administrators and personal representatives, from all manner of actions and causes of actions, suits, debts, dues, accounts, bonds, controversies, sums of money, covenants, reckonings, contracts, torts, promises, agreements, judgments, claims, demands and liabilities of any kind or nature whatsoever at law or in equity, whether known or unknown, asserted or unasserted, especially including, but not limited to any and all claims for compensation, commission, benefits, damages, expenses, wages, severance pay, vacation pay, fringe benefits, reinstatement, reemployment, emotional distress or other monies or accountings, including punitive damages, liquidated damages, exemplary damages or compensatory damages, physical, mental or emotional distress, pain and suffering, back pay, front pay, severance pay, pension and/or health or medical benefits for herself, expert witness costs, costs and attorneys' fees, and any other legal or equitable relief of or relating to Carnes' business relationship with Shaman or termination thereof, or which could be asserted in the future or any other cause, reason, matter or thing whatsoever from the beginning of the world to the date of this Agreement.

## VI.   RELEASE BY SHAMAN

In Consideration of this Agreement and the obligations of each party identified therein, Shaman hereby releases Carnes from that Franchise Agreement entered into by Shaman Franchise and Carnes on April 10, 2018.  In further consideration of this Agreement and the obligations of each party identified therein, Shaman agrees to release Carnes from any debt owed by Carnes to Shaman

## VII.   MISCELLANEOUS

1.   **AFFILIATE INCOME**  Shaman agrees to continue to distribute affiliate income to Carnes for the following affiliates: XXXXXXXXX in accordance with Shaman's usual practices until July 31st, 2021.  However, Carnes shall not be allowed any future affiliate income after July 31st, 2021 and for any affiliates for individuals not described herein.

2.   REPAYMENT OF SUPPLIES FOR OKLAHOMA LOCATION  In the event Carnes provides receipt to Shaman evidencing Carnes' purchase of supplies for the Oklahoma location and Shaman, in Shaman's sole discretion, approves such receipts, Shaman shall repay Carnes the same within five (5) business days of Carnes providing the receipts.

### GOVERNING LAW

This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri.

## APPROVALS

Whenever the approval of either party is required herein, except as otherwise provided in this Agreement, such approval shall not be unreasonably withheld or delayed.

## WAIVERS

No waiver of default by either party of any term, covenant or condition hereof to be performed or observed by the other party shall be construed as, or operate as, a waiver of any subsequent default of the same or any other term, covenant or condition hereof.

## SEVERABILITY

If any provision hereof is held to be invalid by a court of competent jurisdiction, such invalidity shall not affect any other provision hereof, provided such invalidity does not materially prejudice either party in its rights and obligations contained in the valid provisions of this Agreement.

## ASSIGNMENT

Neither party shall not assign, encumber or transfer this Agreement or its right, title or interest herein without the prior written consent of the other.

## ENTIRE AGREEMENT

This Agreement, together with all exhibits hereto, constitutes the entire agreement between the parties, and supersedes all representations, statements or prior agreements and understandings both written and oral with respect to the matters contained in this Agreement and exhibits hereto.   No person has been authorized to give any information or make any representation not contained in this Agreement.   This Agreement may be amended only by written agreement of the parties.

## PARTIES BOUND

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, successors, executors, administrators, legal representatives and permitted assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

| | |
|---|---|
| Brandon Carnes, individually and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company (collectively "Carnes") | Dated |
| Stephen Vincent Sanders, II, individually, and for Shaman Botanicals, LLC a Missouri Limited Liability Company, CBD American Shaman, LLC, a Missouri limited liability company, American Shaman Franchise System, LLC | Dated |

## FORM OF ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT is made and entered into effective as of _____, 2020, by and between _____(collectively "Assignor") and Shaman Botanicals, Inc., ("Assignee").

In consideration of the mutual covenants contained herein and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1. Assignor hereby assigns and transfers to Assignee all of its right, title and interest as lessee in and to that certain Lease Agreement dated _____by and between _____ ("Landlord"), and Assignor as Tenant. Assignee hereby accepts the foregoing assignment and assumes the obligations of tenant under the Lease arising from and after the date hereof.

2. Assignor covenants and agrees to indemnify, defend, and hold harmless Assignee from and against any actions, suites, proceedings or claims, and all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred in connection therewith, based upon or arising out of any breach or alleged breach of the Lease by Assignor or arising in connection with the Lease occurring or alleged to have occurred before the date of this Assignment.

3. Assignee covenants and agrees to indemnify, defend, and hold harmless Assignor from and against any actions, suites, proceedings or claims, and all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred in connection therewith, based upon or arising out of any breach or alleged breach of the Lease by Assignee or arising in connection with the Lease occurring or alleged to have occurred from and after the date of this Assignment.

4. This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption of Lease effective as of the date first written above.

ASSIGNOR

_____
Dated

ASSIGNEE
Shaman Botanicals, Inc.
By:

_____

Stephen Vincent Sanders, II                    Dated


AGREED AND CONSENTED TO:
LANDLORD


_____

By:                                            Dated

_____

Mitchell and Associates, LC Mail - Revised Agreement                     https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 Gmail                                          **David Mitchell <david@bluespringslaw.com>**

## Revised Agreement
2 messages

**Nick Porto** <nporto@portolaw.com>                                        Fri, Oct 2, 2020 at 6:53 PM
To: Brandon Carnes <brandon.carnes1@gmail.com>, David Mitchell <david@bluespringslaw.com>

See attached.

--
Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.

🗒 **Management Agreement (Carnes FINAL).docx**
    37K

**Nick Porto** <nporto@portolaw.com>                                       Mon, Oct 5, 2020 at 8:35 AM
To: Brandon Carnes <brandon.carnes1@gmail.com>, David Mitchell <david@bluespringslaw.com>

Brandon: Vince indicated that you informed that you had not received the finalized agreement with the revised payment provision you requested. I sent this to you on Friday evening. It is attached again now for your reference. Please confirm receipt and let us know with comments or questions.

Nick
[Quoted text hidden]

🗒 **Management Agreement (Carnes FINAL).docx**
    37K

1 of 1                                                                            7/27/2022, 4:11 PM

## AGREEMENT

This AGREEMENT (this **"Agreement"**) is made and entered into as of this _____ day of _____, 20___, (the **"Effective Date"**) by and between Brandon Carnes, individually and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company (collectively **"Carnes"**) and Shaman Botanicals, LLC a Missouri Limited Liability Company, CBD American Shaman, LLC, a Missouri limited liability company, American Shaman Franchise System, LLC, and Stephen Vincent Sanders, II, individually (collectively **"Shaman"**).

## WITNESSETH:

1.      THAT, WHEREAS, Carnes agrees that he is the sole member and shareholder of the following entities: Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company.

2.      THAT, WHEREAS, Shaman has invested significant capital in such entities and Carnes has pledged to repay such investment

3.      THAT, WHEREAS, Carnes, and the aforementioned entities, have leases for the following locations and desires Shaman to manage said properties:

   a.      4016 Cattlemen Road, Sarasota, Florida 34233; and

   b.      123 Northcreek Boulevard, Suite 3, Goodlettsville, Tennessee 37072;

(hereinafter a "Managed Property" or collectively the "Managed Properties").

4.      NOW, Shaman is willing to manage the Managed Properties pursuant to the terms and conditions herein.

5.      THAT, WHEREAS, Carnes has leases at the following locations:

   a.      13624 South Blackbob Road, Olathe, Kansas 66062;

   b.      6933 W. 75th Street, Overland Park, Kansas 66204

   c.      1638 SE Blue Parkway, Lee's Summit, Missouri 64063;

   d.      3703 Main Street, Kansas City, Missouri 64111;

   e.      11709 Roe Avenue, Leawood, Kansas 66212;

f.      10069 West 87th Street, Overland Park, Kansas 66212;

g.      3428 Clark Road, Sarasota, Florida, 34231;

h.      189 Henslee, Suite 8, Dickson, Tennessee 37055;

i.      1050 Glenbrook Way, Suite 440, Hendersonville, Tennessee 37075;

j.      15165 W. 119th Street, Olathe, Kansas 66062

k.      6302 N. Chatham Avenue, Kansas City, Missouri 64151

l.      13213 Shawnee Mission Parkway, Shawnee, Kansas 66216;

m.      10025-10235 N. Dale Mabry Highway, Tampa, Florida 33626

n.      139 North Belt Highway, Suite S, St. Joseph, Missouri 64056;

o.      1275 E. Bell Road, Suite 110, Phoenix, Arizona 85022;

p.      1020-1236 West 103rd Street, Kansas City, Missouri 64114;

q.      22354 W. 66th Street, Shawnee, Kansas 66226; and

r.      6027 Metcalf Avenue, Suite B, Mission, Kansas 66202

(hereinafter a "Assigned Property" or collectively the "Assigned Properties").

6.      NOW, Carnes seeks to assign any leases to the Assigned Properties, along with any assets associated with such Assigned Properties, to Shaman, and shall execute an assignment of each lease for an assigned property in the form attached hereto as Exhibit B.

7.      NOW, FURTHER, Carnes agrees to execute an assignment of the lease at 1005 Middlebrook Drive, Suite C, Liberty, Missouri 64068 to Francis Kalaiwaa in the form attached hereto as Exhibit C.

8.      NOW, FURTHER, Carnes affirms and states that he has previously paid any and all sales taxes, and any other taxes, due for both the Managed and Assigned Properties and is current on all such payments.

9.      AFTER the Effective Date of this Agreement, neither Carnes, nor the foregoing entities, shall have any right to operate at either the Managed Properties or Assigned Properties and agree that Shaman shall have the exclusive right to occupy such Properties.

10.      THAT, WHEREAS, in exchange for Carnes entering into this Agreement, Shaman is willing to release Carnes from any debt owed by Carnes to Shaman and pay Carnes the monies identified herein.

11.    THAT, WHEREAS, in further exchange for Carnes entering into this Agreement, Shaman agrees to continue to pay Carnes the affiliate income described herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## I.    MANAGED PROPERTIES

### AGREEMENT FOR MANAGED PROPERTIES

Carnes hereby grants to Shaman and Shaman hereby accepts the exclusive right and obligation of administering, managing and operating the business operations at the Managed Properties, including, but not limited to, operating a CBD American Shaman location or other lawful business, at such properties.

### TERM OF AGREEMENT FOR MANAGED PROPERTIES

The term of this Agreement shall commence on the date of the execution of this Agreement and shall continue until the earlier of (1) the expiration of Carnes' lease(s) at such Property; (2) Shaman's assumption of Carnes' lease(s) at such Property; or (3) Shaman's termination of this Agreement with respect to the Managed Properties or any individual Managed Property, all parties recognizing that Shaman may terminate the management of any Managed Property at any time, with or without cause. At all times during the Term, Carnes shall refrain from visiting the Managed or Assigned Properties or contacting any employee of the Managed or Assigned Properties without the express written consent of Shaman.

### SHAMAN'S OBLIGATIONS WITH RESPECT TO MANAGED PROPERTIES

If, in Shaman's sole discretion, it shall be economically advantageous to do so, Shaman shall operate a CBD American Shaman, or another lawful business, at each individual Managed Property. If Shaman operates a store at such location, Shaman shall:

a.    Pay all rent for each Managed Property; and

b.    Pay all operating expenses for such Managed Property.

Conversely, if Shaman chooses not to not operate a store at such location, Shaman shall have no obligation to pay any of the aforementioned expenses at a Managed Property.

### 1.  RENUMERATION TO SHAMAN FOR MANAGED PROPERTIES.

2.    Shaman shall solely retain all proceeds from the sales of any products at the Managed Properties as its sole renumeration for managing such properties.

## II.  ASSIGNED PROPERTIES

### 1.  AGREEMENT FOR ASSIGNED PROPERTIES

Carnes hereby assigns to Shaman, free from any liabilities, the following assets for each of the Assigned Properties:

a.  All of Carnes' rights in any lease for the Assigned Properties;

b.  All of the rights of Carnes with respect to any telephone number and facsimile number currently used by Carnes at the Assigned Properties;

c.  All of the Carnes inventory at the Assigned Properties; and

d.  All of the Carnes' rights in any service contracts for the Assigned Properties.

### 2.  PURCHASE PRICE FOR ASSIGNED PROPERTIES[1]

a.  The Purchase Price for the Assigned Properties is the sum of NINETY THOUSAND DOLLARS NO CENTS ($90,000.00), payable as follows:

    i.  TEN THOUSAND DOLLARS AND NO CENTS ($10,000.00) payable upon all parties' execution of this Agreement, confirmation by Shaman of the return of all inventory associated with the Assigned Property located at 3703 Main Street, Kansas City, Missouri 64111 as all parties hereto recognize that Shaman conducted an audit of such inventory one business day before Carnes removed the same.  If Carnes fails to return the inventory associated with the Assigned Property located at 3703 Main Street, Kansas City, Missouri 64111 to Shaman, in Shaman's sole determination, on or before 5:00 pm on Wednesday, October 14th, 2020, this Agreement shall be null and void.

    ii.  Subject to Paragraph No. 3 below and assuming all parties and third party landlords have executed the assignments of leases attached hereto as Exhibit B, Shaman shall pay Carnes an additional TEN THOUSAND DOLLARS AND NO CENTS ($10,000.00) on or before the 14th Day of November and December, 2020, and SIX THOUSAND DOLLARS AND NO CENTS ($6,000.00) on or before the 14th day of January, February, March, April, and May, 2021.

    iii.  The remaining THIRTY THOUSAND DOLLARS AND NO CENTS ($30,000.00) (hereinafter the "Escrow Amount") shall be maintained by Shaman in Escrow and disbursed by Shaman to Carnes in accordance with the Escrow Agreement specified in Paragraph II(3).

---

[1] **Provided Carnes complies with this Agreement, a schedule showing all payments and due dates contemplated by this Agreement is attached hereto as Exhibit A.**

**3.      ESCROW AGREEMENT**

a.      If any claims are made against Shaman on or before June 14th, 2021 to which Shaman is entitled to indemnity from Carnes pursuant to the terms of this Agreement, or if Shaman reasonably believes monies are owed by Carnes for obligations incurred by Carnes prior to the execution of this Agreement, or if Carnes otherwise violates this Agreement, or if Shaman, in Shaman's sole discretion, determines that any representation made by Carnes herein is false, Shaman has the absolute right to apply any portion or all of the Escrow Amount in order to satisfy any such claims or obligations.  Furthermore, if Shaman, in Shaman's sole discretion, reasonably believes that Shaman's exposure from the items described in the immediately preceding sentence exceeds the Escrow Amount, Shaman may hold any future payments owed to Carnes in Escrow and use any monies so withheld to satisfy any such claims or obligations pursuant to the terms of this Agreement.   Conversely, if no such claims are made against Shaman on or before June 14th, 2021, or if no other exception is applicable, Shaman shall pay the Escrow Amount in its entirety to Carnes on or before June 14th, 2021.

**III.   INDEMNIFICATION BY CARNES**

Carnes hereby agrees to indemnify, defend and hold Shaman and its shareholders, officers, employees, directors, agents and affiliates harmless from and against any and all claims, liabilities, losses, damages or injuries together with costs and expenses, including reasonable legal fees, arising out of, related to or resulting from (i) any incorrectness or incompleteness in the representations and warranties made by Carnes in this Agreement, (ii) any breach in any material respect by Carnes of any covenant or agreement of Carnes contained in or arising out of this Agreement, and (iii) any liability or obligation relating to, resulting from or arising out of any other activity performed at the Assigned and Managed Properties by any party prior to Carnes' execution of this Agreement.

**IV.    NO RIGHT TO USE SHAMAN'S NAME OR TRADEMARKS**

1.      All parties hereto acknowledge that no right, express or implied, is granted by this Agreement for Carnes to use in any manner the name "Shaman" or any other trade name or trademark of the Shaman.

2.      After the execution of this Agreement, Carnes agrees that he shall not, in any way, hold himself out or in any represent to third parties that he is any way associated with Shaman or its affiliates.  Carnes further agrees to promptly remove from social media any indicia that he is employed by or associated with Shaman in any capacity.

**V.     NON-COMPETE AND NON-SOLICITATION BY CARNES**

1.      During the term of this Agreement and for a period of five (5) years thereafter, Carnes shall not, directly or indirectly, (i) in any manner whatsoever engage in any capacity with any business competitive with Shaman, any of its subsidiaries or any of its affiliates for the Carnes' own benefit or (ii) have any interest as owner, sole proprietor, stockholder, partner,

c.       1638 SE Blue Parkway, Lee's Summit, Missouri 64063;

d.       3703 Main Street, Kansas City, Missouri 64111;

e.       11709 Roe Avenue, Leawood, Kansas 66212;

f.       10069 West 87th Street, Overland Park, Kansas 66212;

g.       3428 Clark Road, Sarasota, Florida, 34231;

h.       189 Henslee, Suite 8, Dickson, Tennessee 37055;

i.       1050 Glenbrook Way, Suite 440, Hendersonville, Tennessee 37075;

j.       15165 W. 119th Street, Olathe, Kansas 66062

k.       6302 N. Chatham Avenue, Kansas City, Missouri 64151

l.       13213 Shawnee Mission Parkway, Shawnee, Kansas 66216;

m.       10025-10235 N. Dale Mabry Highway, Tampa, Florida 33626

n.       139 North Belt Highway, Suite S, St. Joseph, Missouri 64056;

o.       1275 E. Bell Road, Suite 110, Phoenix, Arizona 85022;

p.       1020-1236 West 103rd Street, Kansas City, Missouri 64114;

q.       22354 W. 66th Street, Shawnee, Kansas 66226;

r.       6027 Metcalf Avenue, Suite B, Mission, Kansas 66202;

(hereinafter a "Assigned Property" or collectively the "Assigned Properties").

6.       NOW, Carnes seeks to assign any leases to the Assigned Properties, along with any assets associated with such Assigned Properties, to Shaman, and shall execute an assignment of each lease for an assigned property in the form attached hereto as Exhibit B.

7.       NOW, FURTHER, Carnes agrees to execute an assignment of the lease at 1005 Middlebrook Drive, Suite C, Liberty, Missouri 64068 to Francis Kalaiwaa in the form attached hereto as Exhibit C.

8.       NOW, FURTHER, Carnes affirms and states that he has previously paid any and all sales taxes, and any other taxes, due for both the Managed and Assigned Properties and is current on all such payments.

9.       AFTER the Effective Date of this Agreement, neither Carnes, nor the foregoing entities, shall have any right to operate at either the Managed Properties or Assigned Properties and agree that Shaman shall have the exclusive right to occupy such Properties.

10.    THAT, WHEREAS, in exchange for Carnes entering into this Agreement, Shaman is willing to release Carnes from any debt owed by Carnes to Shaman and pay Carnes the monies identified herein.

11.    THAT, WHEREAS, in further exchange for Carnes entering into this Agreement, Shaman agrees to continue to pay Carnes the affiliate income described herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, the parties hereto agree as follows:

## I.    MANAGED PROPERTIES

**1.    AGREEMENT FOR MANAGED PROPERTIES** Carnes hereby grants to Shaman and Shaman hereby accepts the exclusive right and obligation of administering, managing and operating the business operations at the Managed Properties, including, but not limited to, operating a CBD American Shaman location or other lawful business, at such properties.

**2.    TERM OF AGREEMENT FOR MANAGED PROPERTIES** The term of this Agreement shall commence on the date of the execution of this Agreement and shall continue until the earlier of (1) the expiration of Carnes' lease(s) at such Property; (2) Shaman's assumption of Carnes' lease(s) at such Property; or (3) Shaman's termination of this Agreement with respect to the Managed Properties or any individual Managed Property, all parties recognizing that Shaman may terminate the management of any Managed Property at any time, with or without cause. At all times during the Term, Carnes shall refrain from visiting the Managed or Assigned Properties or contacting any employee of the Managed or Assigned Properties without the express written consent of Shaman.

**3.    SHAMAN'S OBLIGATIONS WITH RESPECT TO MANAGED PROPERTIES** Shaman shall operate a CBD American Shaman, or another lawful business, at each individual Managed Property, and further shall:

a.    Pay all rent for each Managed Property; and

b.    Pay all operating expenses for such Managed Property.

**4.    RENUMERATION TO SHAMAN FOR MANAGED PROPERTIES.**

Shaman shall solely retain all proceeds from the sales of any products at the Managed Properties as its sole renumeration for managing such properties.

## II.    ASSIGNED PROPERTIES

### 1.    AGREEMENT FOR ASSIGNED PROPERTIES

Carnes hereby assigns to Shaman, free from any liabilities, the following assets for each of the Assigned Properties:

a.    All of Carnes' rights in any lease for the Assigned Properties;

b.    All of the rights of Carnes with respect to any telephone number and facsimile number currently used by Carnes at the Assigned Properties;

c.    All of the Carnes inventory at the Assigned Properties; and

d.    All of the Carnes' rights in any service contracts for the Assigned Properties.

### 2.    PURCHASE PRICE FOR ASSIGNED PROPERTIES[1]

a.    The Purchase Price for the Assigned Properties is the sum of NINETY THOUSAND DOLLARS NO CENTS ($90,000.00), payable as follows:

i.    TEN THOUSAND DOLLARS AND NO CENTS ($10,000.00) payable upon all parties' execution of this Agreement, confirmation by Shaman of the return of all inventory associated with the Assigned Property located at 3703 Main Street, Kansas City, Missouri 64111 as all parties hereto recognize that Shaman conducted an audit of such inventory one business day before Carnes removed the same. If Carnes fails to return the inventory associated with the Assigned Property located at 3703 Main Street, Kansas City, Missouri 64111 to Shaman, in Shaman's sole determination, on or before 5:00 pm on Wednesday, October 14th, 2020, this Agreement shall be null and void.

ii.    Subject to Paragraph No. 3 below and assuming all parties and third party landlords have executed the assignments of leases attached hereto as Exhibit B, Shaman shall pay Carnes an additional TEN THOUSAND DOLLARS AND NO CENTS ($10,000.00) on or before the 14th Day of November and December, 2020, and SIX THOUSAND DOLLARS AND NO CENTS ($6,000.00) on or before the 14th day of January, February, March, April, and May, 2021.

iii.    The remaining THIRTY THOUSAND DOLLARS AND NO CENTS ($30,000.00) (hereinafter the "Escrow Amount") shall be maintained by Shaman in Escrow and disbursed by Shaman to Carnes in accordance with the Escrow Agreement specified in Paragraph II(3).

---

[1] If applicable, a schedule showing all payments and due dates contemplated by this Agreement is attached hereto as Exhibit A.

**3.**     **ESCROW AGREEMENT**

a.     If any claims are made against Shaman on or before June 14th, 2021 to which Shaman is entitled to indemnity from Carnes pursuant to the terms of this Agreement, or if Shaman reasonably believes monies are owed by Carnes for obligations incurred by Carnes prior to the execution of this Agreement, or if Carnes otherwise violates this Agreement, or if Shaman, in Shaman's sole discretion, determines that any representation made by Carnes herein is false, Shaman has the absolute right to apply any portion or all of the Escrow Amount in order to satisfy any such claims or obligations. Furthermore, if Shaman, in Shaman's sole discretion, reasonably believes that Shaman's exposure from the items described in the immediately preceding sentence exceeds the Escrow Amount, Shaman may hold any future payments owed to Carnes in Escrow and use any monies so withheld to satisfy any such claims or obligations pursuant to the terms of this Agreement. Conversely, if no such claims are made against Shaman on or before June 14th, 2021, or if no other exception is applicable, Shaman shall pay the Escrow Amount in its entirety to Carnes on or before June 14th, 2021.

**III.     INDEMNIFICATION**

a.   Carnes hereby agrees to indemnify, defend and hold Shaman and its shareholders, officers, employees, directors, agents and affiliates harmless from and against any and all claims, liabilities, losses, damages or injuries together with costs and expenses, including reasonable legal fees, arising out of, related to or resulting from (i) any incorrectness or incompleteness in the representations and warranties made by Carnes in this Agreement, (ii) any breach in any material respect by Carnes of any covenant or agreement of Carnes contained in or arising out of this Agreement, and (iii) any liability or obligation relating to, resulting from or arising out of any other activity performed at the Assigned and Managed Properties by any party prior to the Effective Date of this Agreement.

b.   Shaman hereby agrees to indemnify, defend and hold Carnes and its shareholders, officers, employees, directors, agents and affiliates harmless from and against any and all claims, liabilities, losses, damages or injuries together with costs and expenses, including reasonable legal fees, arising out of, related to or resulting from (i) any incorrectness or incompleteness in the representations and warranties made by Carnes in this Agreement, (ii) any breach in any material respect by Shaman of any covenant or agreement of Shaman contained in or arising out of this Agreement, and (iii) any liability or obligation relating to, resulting from or arising out of any other activity performed at the Assigned and Managed Properties by any party after the Effective Date of this Agreement.

**IV.     NO RIGHT TO USE SHAMAN'S NAME OR TRADEMARKS**

1.     All parties hereto acknowledge that no right, express or implied, is granted by this Agreement for Carnes to use in any manner the name "Shaman" or any other trade name or trademark of the Shaman.

2.    After the execution of this Agreement, Carnes agrees that he shall not, in any way, hold himself out or in any represent to third parties that he is any way associated with Shaman or its affiliates.  Carnes further agrees to promptly remove from social media any indicia that he is employed by or associated with Shaman in any capacity.

## V.    NON-COMPETE AND NON-SOLICITATION BY CARNES

1.    During the term of this Agreement and for a period of five (5) years thereafter, Carnes shall not, directly or indirectly, (i) in any manner whatsoever engage in any capacity with any business competitive with Shaman, any of its subsidiaries or any of its affiliates for the Carnes' own benefit or (ii) have any interest as owner, sole proprietor, stockholder, partner, lender, director, officer, manager, employee, consultant, agent or otherwise in any business that sells cannabidiol (CBD) products containing no more than .3% tetrahydrocannabinol (THC).

2.    During the term of this Agreement and for a period of five (5) years thereafter, Carnes shall not, without Shaman's written consent, directly or indirectly; (i) solicit or encourage any person to leave the employment or other service of Shaman or its Affiliates; or (ii) hire, on behalf of Carnes or any other person or entity, any person who has left the employment of the Shaman for any reason; or (iii) solicit any current or former customer or other individual affiliated with Shaman in any capacity whatsoever for any reason.

## VI.    RELEASE BY CARNES

In consideration for the payments and other consideration set forth in, and intending to be legally bound, Carnes, individually and for and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company, promises, agrees and generally releases , remises, acquits and forever discharges Shaman, its officers, directors, employees, agents, attorneys, servants and/or former employees, individually and in their representative capacities, and their respective successors and assigns, heirs, executors, administrators and personal representatives, from all manner of actions and causes of actions, suits, debts, dues, accounts, bonds, controversies, sums of money, covenants, reckonings, contracts, torts, promises, agreements, judgments, claims, demands and liabilities of any kind or nature whatsoever at law or in equity, whether known or unknown, asserted or unasserted; especially including, but not limited to any and all claims for compensation, commission, benefits, damages, expenses, wages, severance pay, vacation pay, fringe benefits, reinstatement, reemployment, emotional distress or other monies or accountings, including punitive damages, liquidated damages, exemplary damages or compensatory damages, physical, mental or emotional distress, pain and suffering, back pay, front pay, severance pay, pension and/or health or medical benefits for herself, expert witness costs, costs and attorneys' fees, and any other legal or equitable relief of or relating to Carnes' business relationship with Shaman, or which could be asserted in the future or any other cause, reason, matter or thing whatsoever from the beginning of the world to the date of this Agreement.

## VII.   RELEASE BY SHAMAN

In Consideration of this Agreement and the obligations of each party identified therein, Shaman hereby releases Carnes from that Franchise Agreement entered into by Shaman Franchise and Carnes on April 10, 2018.  In further consideration of this Agreement and the obligations of each party identified therein, Shaman agrees to release Carnes from any debt owed by Carnes to Shaman.

## VIII.  MISCELLANEOUS

**1.**     **AFFILIATE INCOME**  Shaman agrees to continue to distribute affiliate income to Carnes for the affiliates identified in the attached Exhibit D in accordance with Shaman's usual practices until June 14th, 2021.  However, Carnes shall not be allowed any future affiliate income after June 14th, 2021.

**2.**     **REPAYMENT OF SUPPLIES FOR OKLAHOMA LOCATION**  Carnes alleges that he has invested the sum of SEVENTEEN THOUSAND THREE HUNDRED AND EIGHT DOLLARS AND TWENTY NINE CENTS ($17,308.29) (hereinafter "Carnes' Oklahoma Investment") in Shaman's Oklahoma operations. Shaman agrees to repay Carnes Oklahoma Investment pursuant to the following schedule:

a.   FIVE THOUSAND SEVEN HUNDRED SIXTY-NINE DOLLARS AND FORTY-THREE CENTS ($5,769.43) concurrent with all parties' execution of this Agreement, assuming the activities in Paragraph II(2)(a)(i) have occurred.

b.   FIVE THOUSAND SEVEN HUNDRED SIXTY-NINE DOLLARS AND FORTY-THREE CENTS ($5,769.43) on or before January 14th, 2021.

c.   FIVE THOUSAND SEVEN HUNDRED SIXTY-NINE DOLLARS AND FORTY-THREE CENTS ($5,769.43) on or before May 14th, 2021.

**3.**     **GOVERNING LAW**This Agreement shall be governed by and construed in accordance with the laws of the State of Missouri.

**4.**     **APPROVALS**Whenever the approval of either party is required herein, except as otherwise provided in this Agreement, such approval shall not be unreasonably withheld or delayed.

**5.**     **WAIVERS**No waiver of default by either party of any term, covenant or condition hereof to be performed or observed by the other party shall be construed as, or operate as, a waiver of any subsequent default of the same or any other term, covenant or condition hereof.

**6.**     **SEVERABILITY**If any provision hereof is held to be invalid by a court of competent jurisdiction, such invalidity shall not affect any other provision hereof, provided such invalidity does not materially prejudice either party in its rights and obligations contained in the valid provisions of this Agreement.

7.    **NO RIGHT TO ASSIGN THIS AGREEMENT**Neither party shall not assign, encumber or transfer this Agreement or its right, title or interest herein without the prior written consent of the other.

8.    **ENTIRE AGREEMENT**This Agreement, together with all exhibits hereto, constitutes the entire agreement between the parties, and supersedes all representations, statements or prior agreements and understandings both written and oral with respect to the matters contained in this Agreement and exhibits hereto.  No person has been authorized to give any information or make any representation not contained in this Agreement.  This Agreement may be amended only by written agreement of the parties.

9.    **PARTIES BOUND**This Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, successors, executors, administrators, legal representatives and permitted assigns.

10.    **MUTUALLY NEGOTIATED AGREEMENT**

The parties mutually warrant that they: (a) have negotiated the terms of this Agreement, (b) have consulted with counsel with respect to the terms hereof, (c) have read this Agreement, (d) understand all the terms and conditions hereof, (e) have had sufficient time in which to read and consider this Agreement, (f) are not incompetent or had a guardian, conservator, receiver or trustee appointed, and (g) enter into this Agreement of their own free will and volition.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

---

Brandon Carnes, individually and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company (collectively "Carnes")

Dated _____

---

Stephen Vincent Sanders, II, individually, and for Shaman Botanicals, LLC a Missouri Limited Liability Company, CBD American Shaman, LLC, a Missouri limited liability company, American Shaman Franchise System, LLC

Dated _____

Carnes Agreement

## SCHEDULE OF EXHIBITS

| | |
|---|---|
| EXHIBIT A | SCHEDULE OF PAYMENTS |
| EXHIBIT B | ASSIGNMENTS AND ASSUMPTIONS OF LEASES |
| EXHIBIT C | ASSIGNMENT AND ASSUMPTION OF LEASE REGARDING 1005 MIDDLEBROOK DRIVE, SUITE C, LIBERTY, MISSOURI 64068 TO FRANCIS KALAIWAA |
| EXHIBIT D | CARNES' AFFILIATE SCHEDULE |

## EXHIBIT A
## PAYMENT SCHEDULE

| Date | Regular Payment | Oklahoma Payment | Total Payment |
|------|-----------------|------------------|---------------|
| October 14, 2020 | $10,000.00 | $5,769.43 | $15,769.43 |
| November 14, 2020 | $10,000.00 | $0.00 | $10,000.00 |
| December 14, 2020 | $10,000.00 | $0.00 | $10,000.00 |
| January 14, 2021 | $6,000.00 | $5,769.43 | $11,769.43 |
| February 14, 2021 | $6,000.00 | $0.00 | $6,000.00 |
| March 14, 2021 | $6,000.00 | $0.00 | $6,000.00 |
| April 14, 2021 | $6,000.00 | $0.00 | $6,000.00 |
| May 14, 2021 | $6,000.00 | $5,769.43 | $11,769.43 |
| June 14, 2021 | $30,000.00 | $0.00 | $0.00 |
| **TOTALS** | **$90,000.00** | **$17,308.29** | **$107,308.29** |

BY SIGNING BELOW, ALL PARTIES HERETO RECOGNIZE THAT CARNES' RIGHT TO ANY PAYMENT(S) IDENTIFIED HEREIN IS EXPRESSLY CONTINGENT ON CARNES SATISFYING HIS OBLIGATIONS PURUSANT TO THIS AGREEMENT.

_____    Dated _____

Brandon Carnes, individually and for Missouri AS Properties, LLC, a Missouri Limited Liability Company, Nashville AS Properties, LLC, a Tennessee Limited Liability Company, Arizona AS Properties, LLC, a Arizona Limited Liability Company, Midtown Botanicals, LLC, and CBD American Shaman, LLC, a Florida Limited Liability Company (collectively "Carnes")

_____    Dated _____

Stephen Vincent Sanders, II, individually, and for Shaman Botanicals, LLC a Missouri Limited Liability Company, CBD American Shaman, LLC, a Missouri limited liability company, American Shaman Franchise System, LLC

## EXHIBIT B
## FORM OF ASSIGNMENT AND ASSUMPTION OF LEASE

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT is made and entered into effective as of _____, 2020, by and between _____(collectively "Assignor") and Shaman Botanicals, Inc., ("Assignee").

In consideration of the mutual covenants contained herein and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1. Assignor hereby assigns and transfers to Assignee all of its right, title and interest as lessee in and to that certain Lease Agreement dated _____by and between _____ ("Landlord"), and Assignor as Tenant for the property located at _____ (the "Property"). Assignee hereby accepts the foregoing assignment and assumes the obligations of tenant under the Lease arising from and after the date hereof.

2. Assignor covenants and agrees to indemnify, defend, and hold harmless Assignee from and against any actions, suites, proceedings or claims, and all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred in connection therewith, based upon or arising out of any breach or alleged breach of the Lease by Assignor or arising in connection with the Lease occurring or alleged to have occurred before the date of this Assignment.

3. Assignee covenants and agrees to indemnify, defend, and hold harmless Assignor from and against any actions, suites, proceedings or claims, and all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred in connection therewith, based upon or arising out of any breach or alleged breach of the Lease by Assignee or arising in connection with the Lease occurring or alleged to have occurred from and after the date of this Assignment.

4. This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption of Lease effective as of the date first written above.

ASSIGNOR

_____          Dated _____
NAME OF ASSIGNOR

ASSIGNEE
Shaman Botanicals, Inc.
By:

_____          Dated _____
Stephen Vincent Sanders, II

AGREED AND CONSENTED TO:
LANDLORD

_____          Dated _____
By:

Carnes Agreement

**EXHIBIT C**
**FORM OF ASSIGNMENT AND ASSUMPTION OF LEASE**

THIS ASSIGNMENT AND ASSUMPTION AGREEMENT is made and entered into effective as of October 14th, 2020, by and between Brandon M. Carnes (collectively "Assignor") and ("Assignee").

In consideration of the mutual covenants contained herein and other good and valuable consideration the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1. Assignor hereby assigns and transfers to Assignee all of its right, title and interest as lessee in and to that certain Lease Agreement dated October 27, 2017, by and between Carr Investments, LLC ("Landlord"), and Assignor as Tenant for the property located at 1005 Middlebrook Drive, Suite C, Liberty, Missouri 64068 (the "Property"). Assignee hereby accepts the foregoing assignment and assumes the obligations of tenant under the Lease arising from and after the date hereof.

2. Assignor covenants and agrees to indemnify, defend, and hold harmless Assignee from and against any actions, suites, proceedings or claims, and all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred in connection therewith, based upon or arising out of any breach or alleged breach of the Lease by Assignor or arising in connection with the Lease occurring or alleged to have occurred before the date of this Assignment.

3. Assignee covenants and agrees to indemnify, defend, and hold harmless Assignor from and against any actions, suites, proceedings or claims, and all costs and expenses (including without limitation reasonable attorneys' fees and costs) incurred in connection therewith, based upon or arising out of any breach or alleged breach of the Lease by Assignee or arising in connection with the Lease occurring or alleged to have occurred from and after the date of this Assignment.

4. This Assignment shall be binding on and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors in interest and assigns.

IN WITNESS WHEREOF, the parties have executed this Assignment and Assumption of Lease effective as of the date first written above.

ASSIGNOR

_____                    _____
Brandon M. Carnes                            Dated

ASSIGNEE
PONO BOTANICALS, LLC
By:

_____                    _____
Francis Kalaiwaa                             Dated

AGREED AND CONSENTED TO:
LANDLORD
CARR INVESTMENTS, LLC

_____                    _____
By:                                          Dated

## EXHIBIT D
## CARNES' AFFILIATE SCHEDULE

| User ID | Name | Email |
|---|---|---|
| 11009 | Ranaga Farbiarz | nagasan@sbcglobal.net |
| 4533 | Leavenworth Ric Almack | shamanbotanicalslvn@gmail.com |
| 6680 | Joplin Ric Almack | americanshamanjoplin@gmail.com |
| 15890 | Devon Shouse | freedomlifestylescbd@yahoo.com |
| 2918 | Cynthia (Loudy) Bousman | cb@eveningshadefarms.com |
| 7085 | Katharine Olson | katharine@cbdamericanshaman.com |
| 22155 | Tab Martin | sydax@yahoo.com |
| 21685 | Melinda Reyes | melinda_reyes72@yahoo.com |
| 27405 | Liz Tomc | americanshamanplattecity@gmail.com |
| 28668 | KRISTEN KING | kristen@livingwellnesslife.com |
| 13105 | Russell Werts | rw556@aol.com |
| 25983 | Springfield American Shaman Ric Almack | cbdspringfieldmo@gmail.com |
| 27069 | American Shaman St Joseph Ric Almack | cresentmoonbotanicals@gmail.com |
| 41327 | Lisa & Mark Freidel | cbdamericanshamanchouteau@gmail.com |
| 40809 | Beth Shaver | 4everwellnesscbd@gmail.com |
| 39754 | Loudy Bousman | hello@ascbdkava.com |
| 60334 | Mitchell Dittman | mrdittman@gmail.com |
| 65757 | Tab Martin | tab@cbdspringtx.com |
| 77704 | Merri Mann | merri_mann@yahoo.com |
| 90075 | Tim Hunt | timrhunt@gmail.com |
| 191893 | Steve Gasperi | steve@gasperigroup.com |
| 11283 | Brandon Carnes | katelyn.sigman@yahoo.com |
| 32570 | Mark Mills | mbmills@sunflower.com |
| 35227 | Paula Wood | p_cosmo99@yahoo.com |
| 35230 | Kara Roberts | karalynne21@yahoo.com |
| 35541 | Suzanne Freese | suzannefreese@gmail.com |
| 35731 | Roger Price | rprice1948@yahoo.com |
| 37660 | Wayne Sharp | waynec.sharp@gmail.com |
| 39915 | Lauren Redington | laurentredington@gmail.com |
| 40115 | Cyndi Gilmour | cyndilapinski@yahoo.com |
| 40216 | Patricia Smith | patti_smith40@hotmail.com |
| 40733 | DEBBI MITCHELL | sammitch6316@yahoo.com |
| 40833 | Alvin Ross | bigal1966@gmail.com |
| 41005 | Gloria Nutt | glorianutt@gmail.com |
| 41400 | Greg Boland | jgboland@comcast.net |
| 42287 | Devon McCunn | devonmccunn@gmail.com |
| 42889 | Beverly Sharp | beverlysharp51@yahoo.com |
| 42923 | Mckenna Doherty | doherty.mckenna@att.net |
| 43823 | Lisa Norton | lisawaitnorton@yahoo.com |
| 45101 | Darwin Epps | darwin513@comcast.net |
| 45392 | Kayci Fultz | kaycifultz@yahoo.com |
| 49187 | Charlie Mye | char8146@yahoo.com |

| 56467  | William Schoffstall  | wschoffstall@icloud.com        |
| 58372  | Jo Anne Haynes       | jhaynes555@hotmail.com         |
| 59774  | Demika Hugley        | hugleyc55@gmail.com            |
| 65967  | HEATHER FOSTER       | hlfoster69@yahoo.com           |
| 67787  | Damion Strickland    | damestrick@gmail.com           |
| 70044  | Robert Tooley        | r.tooley@godsmovers.com        |
| 71571  | Alexandria Davis     | alexandriadavis1992@gmail.com  |
| 72780  | Garrett Carnes       | garrett.carnes19@icloud.com    |
| 74583  | Nicole Abel          | abelnicole96@gmail.com         |
| 75026  | MELISSA READ         | melissaaread@hotmail.com       |
| 75773  | James Dabney         | jdabney@tampabay.rr.com        |
| 75977  | Jacob Hobson         | jhobson1296@gmail.com          |
| 76952  | Lynn Davidson        | ladavidso@yahoo.com            |
| 77464  | Ashley Eyrich        | ashley.ehlers5@gmail.com       |
| 78487  | Diego Duran          | dad102695@icloud.com           |
| 80802  | Amy Farmer           | amy_sue_91@yahoo.com           |
| 82034  | James Nodwell        | james.nodwell@yahoo.com        |
| 83684  | Alison Smith         | alleykat921@gmail.com          |
| 89725  | Bart Donelson        | bartmandonelson@gmail.com      |
| 92914  | Lynda Jaramillo      | lyndajaramillo55@gmail.com     |
| 93004  | M L CANSLER          | mcansler4@kc.rr.com            |
| 100915 | Sandra Owen          | eowen1@att.net                 |
| 104095 | Shannon Sullivan     | shannonicole85@live.com        |
| 108141 | James Wilkinson      | notyme58@yahoo.com             |
| 112589 | KIM PETERS           | kim.smithers1980@gmail.com     |
| 113907 | Donald Winder        | donrw63@yahoo.com              |
| 115125 | Eric Hull            | e_hull@hotmail.com             |
| 122463 | Rebecca Clyma        | rebecca.clyma.rc@gmail.com     |
| 123030 | Samuel Igo           | saltforkangus@hotmail.com      |
| 123323 | Linda Pluta          | wearecool@comcast.net          |
| 126021 | Travis Jones         | tjones072000@gmail.com         |
| 131342 | James True           | truekc2@hotmail.com            |
| 131688 | Andrea Bonner        | asbonner@aim.com               |
| 133588 | Patti Swenson        | sfswenson@yahoo.com            |
| 133643 | Kailey Hargis        | kailey.hargis@gmail.com        |
| 133937 | Victoria Peterson    | vdiehls@gmail.com              |
| 134020 | Patricia Comer       | patricia64138@yahoo.com        |
| 135919 | Jessica Sharts       | jessica.sharts02@gmail.com     |
| 138139 | Sarah Bredeman       | sbredeman.sb@gmail.com         |
| 138398 | Mitchell Carson      | smokedgoodness@yahoo.com       |
| 139132 | Katherine Davis      | kedavis2009@hotmail.com        |
| 139735 | Shellee Cates        | floraqueensc@gmail.com         |
| 140426 | Lynn Garwood         | lynniegarwood@gmail.com        |
| 140441 | Joe Winkler          | 6927923@gmail.com              |
| 141050 | Jeffrey Kueser       | jkueser70@gmail.com            |
| 141079 | Carrie Nigro         | carrieannnigro@gmail.com       |

| | | |
|---|---|---|
| 141117 | Marisa Avalos-Viets | reeceev13@yahoo.com |
| 141226 | LaJae Jackson | lajaejackson16@gmail.com |
| 141230 | Dennis Fithen | dfithen@gmail.com |
| 141247 | Veronica Anwuri | veronicaanwuri@gmail.com |
| 141980 | Aerial Griffith | aerialgriffith@gmail.com |
| 143835 | Kriata Cassity | kcassity0320@att.net |
| 144277 | Ellen Ingram | elevatingellen@gmail.com |
| 146128 | Laurie Wood | lauriehullwood@hotmail.com |
| 146337 | Sam Womack | samwomack@centurytel.net |
| 146640 | Mark Zonnefeld | mzonnefeld@gmail.com |
| 147224 | Elizabeth Minnick | kyhillbilly40@gmail.com |
| 159061 | Davis Mullany | davis.c.mullany@gmail.com |
| 162402 | Amy Rice | amy.oriley@hotmail.com |
| 170857 | Amanda Birdsley | abirdsle@stumail.jccc.edu |
| 172855 | Mackenzie Davis | kenziedavis22@yahoo.com |
| 172876 | Amy Garrett | amygarrett1974@gmail.com |
| 173700 | Anthony Topete | atopete6169@gmail.com |
| 173893 | Michael Hensley | michael@hensleyelectric.com |
| 174379 | Macy Hoffmann | macy_hoffmann@ku.edu |
| 175443 | Angela Westerfield | angela.westerfield@yahoo.com |
| 175854 | William Mark Christophene | wmc4mo@gmail.com |
| 176564 | Antonio Becker | feldrance@gmail.com |
| 176584 | Jordan Gardner | xxjjofferxx@gmail.com |
| 177075 | Brandon  Stagner | rebeccaferg2@gmail.com |
| 183866 | Shawna Dalaq | sdalaq@hotmail.com |
| 184328 | Karina Solis | karinasolis14@yahoo.com |
| 184392 | Derrius Burks | seriousleeburks@gmail.com |
| 187452 | Robin Boyer | r2white4@hotmail.com |
| 187606 | Katasha Kumar | kkumar1017@hotmail.com |
| 188063 | Trey Anderson | tanderson0119@gmail.com |
| 188814 | Nancy Dixon | nancydixonusa@gmail.com |
| 190153 | Staci  Adams | erelakashmir@aol.com |
| 191515 | Brian Piech | bjpiech80@gmail.com |
| 192047 | Ruth Hornaday | rehjfh2655@gmail.com |
| 192048 | Ruth Hornaday | ruthmarsar@aol.com |
| 192121 | Deena Holt | deenaholt@gmail.com |
| 192719 | Sergio Martinez | semartinez816@gmail.com |
| 193505 | Beth Barnett | mchabarne8@gmail.com |
| 194626 | April Hawk | ahawk476@gmail.com |
| 194627 | Edward Pickett | elonna.milburn@aol.com |
| 194818 | Megan Lillis | meganlillis@hotmail.com |
| 197800 | Tyler Holland | tylerholland1989@gmail.com |
| 198088 | Don Walkup | don.bea-w@sbcglobal.net |
| 200694 | Geovani Niehaus | cartoonanalysis@gmail.com |
| 203704 | Kathy Shanks | shankskathy@hotmail.com |
| 204251 | Jenny Knight | jlknight13@hotmail.com |

| 204566 | Bailey Hurford | baileyhurford@gmail.com |
| 102857 | Steve Gardner | stevgard6@gmail.com |
| 102916 | Kara Brown | karabrown3387@comcast.net |
| 102934 | Scott Alessi | salessi@twoscompany.com |
| 103004 | Joselito | ajdelosreyes2@gmail.com |
| 103012 | Shelby Brockert | sbrockert23@gmail.com |
| 103128 | Will Kahler | wvkahler@gmail.com |
| 103273 | Jaimi Heckadon | jheckadon1@yahoo.com |
| 109023 | Lisa Hill | miknlsa@swbell.net |
| 120983 | Ronald Dunaway | rnkdunaway@hotmail.com |
| 165662 | Bethany Knovs | wildskywoman@gmail.com |
| 165663 | Kristine Rivotto | krivotto@gmail.com |
| 165925 | Robyu Jones | wolfecrafts62@yahoo.com |
| 174061 | Loruren Weber | louvena@gmail.com |
| 174063 | Mindy Strecker | mindystrecken@gmail.com |
| 118418 | Kay Wing | kwing57@yahoo.com |
| 97676 | | cbdstaff@gmail.com |
| 122415 | Marise | marisemarrs@gmail.com |
| 121660 | Vera | veraborum10@gmail.com |

Mitchell and Associates, LC Mail - Shaman Agreement                    https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**                                         **David Mitchell <david@bluespringslaw.com>**

## Shaman Agreement
1 message

**Nick Porto <nporto@portolaw.com>**                                  Fri, Oct 23, 2020 at 12:51 PM
To: Brandon Carnes <brandon.carnes1@gmail.com>, David Mitchell <david@bluespringslaw.com>

Brandon: I understand you have not returned all of the grow room inventory. This is a violation of this Agreement. Please return the inventory, in whole, by Monday at 5:00 pm or we will proceed with our rights under the Agreement.

Thank you.

Nick

--
Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.

Mitchell and Associates, LC Mail - Letter to Brandon Carnes                 https://mail.google.com/mail/u/0/?ik=d84cddefeb&view=pt&search...

 **Gmail**

David Mitchell <david@bluespringslaw.com>

## Letter to Brandon Carnes
1 message

Nick Porto <nporto@portolaw.com>                                    Wed, Dec 23, 2020 at 2:33 PM
To: David Mitchell <david@bluespringslaw.com>, Brandon Carnes <brandon.carnes1@gmail.com>

Dear Brandon:

See attached.

Nick

--
Nicholas Porto
THE PORTO LAW FIRM
1600 Baltimore, Suite 200A
Kansas City, Missouri 64108
(816)-463-2311 (office)
(913)-302-7945 (mobile)
(816)-463-9567 (fax)
www.portolaw.com

CONFIDENTIAL NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

The Missouri Bar Chief Disciplinary Counsel requires all Missouri lawyers to notify all recipients of email that (1) email communication is not a secure method of communication; (2) any e-mail that is sent to you or by you may be copied and held by various computers it passes through as it goes from me to you or vice versa; and (3) persons not participating in our communication may intercept our communications by improperly accessing your computer or my computer or even some computer unconnected to either of us which the email passed through. I am communicating to you via email because you have consented to receive communications via this medium. If you change your mind and want future communications to be sent in a different fashion, please let me know at once.

📄 **December 23, 2020 Letter to Brandon Carnes.pdf**
2997K



**PORTO**
**L A W   F I R M**

www.portolaw.com | p: 816.463.2311 | f: 816.463.9567 | 1600 Baltimore | Suite 200A Kansas City, MO | 64108

December 23, 2020

Brandon Carnes
23611 W 51st Terrace
Shawnee, KS 66226

Re:    Notice of CBD American Shaman's Exercise of Rights pursuant to Section II(3)
of October 15, 2020 Agreement with Brandon Carnes

Dear Mr. Carnes:

Please accept this letter as Notice of CBD American Shaman's ("Shaman") Exercise of Rights pursuant to Section II(3)(a) of October 15, 2020 Agreement with Brandon Carnes. Specifically, Section II(3)(a) states that:

> If any claims are made against Shaman on or before June 14th, 2021 to which Shaman is entitled to indemnity from Carnes pursuant to the terms of this Agreement, or if Shaman reasonably believes monies are owed by Carnes for obligations incurred by Carnes prior to the execution of this Agreement, or if Carnes otherwise violates this Agreement, or if Shaman, in Shaman's sole discretion, determines that any representation made by Carnes herein is false, Shaman has the absolute right to apply any portion or all of the Escrow Amount in order to satisfy any such claims or obligations. Furthermore, if Shaman, in Shaman's sole discretion, reasonably believes that Shaman's exposure from the items described in the immediately preceding sentence exceeds the Escrow Amount, Shaman may hold any future payments owed to Carnes in Escrow and use any monies so withheld to satisfy any such claims or obligations pursuant to the terms of this Agreement. Conversely, if no such claims are made against Shaman on or before June 14th, 2021, or if no other exception is applicable, Shaman shall pay the Escrow Amount in its entirety to Carnes on or before June 14th, 2021.

Shaman presently believes that its exposure from monies owed by you for your obligations incurred prior to the Agreement is at least $222,818.31, to wit:

Brandon Carnes
Page 2

- $20,335.35 back rent is owed at 4016 Cattlemen Road, Sarasota, Florida 34233;
- $18,395.09 back rent is owed at 3438 Clark Road, Sarasota, Florida 34231;
- $20,640.19 back rent is owed at 10025-10235 N. Dale Mabry Highway, Tampa, Florida 33626;
- $32,094.40 back rent is owed at 6027 Metcalf Avenue, Suite B, Mission, Kansas 66202;
- $14,770.00 back rent is owed at 15165 W. 119th Street, Olathe, Kansas 66062;
- $9,780.84 back rent is owed at 6933 W. 75th Street, Overland Park, Kansas 66204;
- $7,734.48 back rent is owed at 10069 W. 87th Street, Overland Park, Kansas 66212;
- $19,163.52 back rent is owed at 22354 W. 66th Street, Shawnee, Kansas 66226;
- $21,747.18 back rent is owed at 13213 Shawnee Mission Parkway, Shawnee, Kansas 66216;
- $14,327.21 back rent is owed at 5501 Truman's Marketplace, Grandview, Missouri 64040;
- $15,883.97 back rent is owed at 1020-1236 West 103rd Street, Kansas City, Missouri 64114;
- $4,940.93 back rent is owed at 1638 SE Blue Parkway, Lee's Summit, Missouri 64063;
- $12,419.35 back rent is owed at 6302 N. Chatham Avenue, Kansas City, Missouri 64151;
- $10,585.80 back rent is owed at 123 Northcreek Boulevard, Suite 3, Goodlettsville, Tennessee 37072;

Furthermore, Shaman has, to date, expended $130,711.10 to satisfy your obligations incurred prior to the Agreement, to wit:

**1275 E. Bell Road, Suite 110, Phoenix, Arizona 85022**

June 2020 Rent $3,451.44

July 2020 Rent $3,451.44

August 2020 Rent $3,451.44

CenturyLink-August 2020 $101.92

**3073 Main Street, Kansas City, Missouri 64111**

Gate City Glass Company $1,170.00

The Evolution $625.00

The Evolution $625.00

The Pitch $1,571.00

Brandon Carnes
Page 3

The Evolution $625.00

The Pitch $1,571.00

The Pitch $1,571.00

The Evolution $625.00

The Pitch $2,500.00

The Evolution $625.00

The Evolution $625.00

The Pitch $1,571.00

July 2020 Rent $1,260.00

August 2020 Rent $1,260.00

September 2020 Rent $1,200.00

CB Downtown-September 2020 $1,035.00

October 2020 Rent $1,260.00

ADT August 2020 $97.28

**189 Henslee, Suite 8, Dickson, Tennessee**

William Adams-Redo Bathroom $2,531.70

August 2020 Rent $2,269.97

Electric August 2020 $172.92

Water August 2020 $27.64

Trash August 2020 $10.00

**4016 Cattlemen Road, Sarasota, Florida 34233**

August 2020 Rent $4,067.07;

3428 Clark Road, Sarasota, Florida 34231

August 2020 Rent $3,573.98

Fee for August Rent $177.09

Fish Window Cleaning $26.00

Brandon Carnes
Page 4

ADT-January 2020 thru August $823.74

Trash 2020 $432.50

Electric July 2020 $157.06

**15165 W. 119th Street, Olathe Kansas 66062**

Cleaning $15.00

August Comcast $138.13

July 2020-Olathe Station 18.66

Rent Deferment $11,885.60

**13624 South Blackbob Road, Olathe, Kansas 66062**

Back Rent $18,548.36

**6933 W. 75th Street, Overland Park, Kansas 66204**

August Cleaning $15.00

August 2020-Comcast $138.13

July 2020-Olathe Station $18.66

Rent Deferment Due $11,713.81

**10069 W. 87th Street, Overland Park, Kansas 66212**

Deferred Rent $1,735.08

August Cleaning $15.00

**307 "A" NE Englewood Road, Gladstone, Missouri 64118**

July/August Rent $5,027.45

August 2020 Time Warner $138.18

Brandon Carnes
Page 5

### 5501 Truman's Marketplace, Grandview, Missouri 64030

August Cleaning $15.00

July Water $8.50

August 2020 Spire $40.36

August Oasis $8.50

### 1020-1236 West 103rd Street, Kansas City, Missouri 64114

August Cleaning $15.00

March Water $8.50

August Spire $41.60

### 1638 SE Blue Parkway, Lee's Summit, Missouri 64063

Rent Deferment $1,940.44

### 6302 N. Chatham Avenue, Kansas City, Missouri 64151

August Rent $15.00

August Spire $41.60

August Oasis $15.99

### 9438 E. 350 Highway, Raytown, Missouri 64133

August Cleaning $15.00

August Comcast $142.41

Back Rent $16,782.00

### 139 North Belt Highway, Suite S, St. Joseph, Missouri 64056

July Water 54.27

Brandon Carnes
Page 6


August City 85.25

August Water $16.31

August AT&T $167.13


**123 Northcreek Boulevard, Suite 3, Goodlettsville, Tennessee 37072**

August Rent $2,913.60

August Electric $335.00


**1050 Glenbrook Way, Suite 440, Hendersonville, Tennessee 37075**

Past Due Rent $11,010.01

August Rent $4,457.71

Rent Catch Up $888.88

Rent Catch Up $888.88

Rent Catch Up $888.88

Rent Catch Up $7,111.04


Lastly, on December 22, 2020, the Kansas Department of Revenue contacted Shaman and informed us that there is outstanding sales tax owed by you for your location at 13624 South Blackbob Road, Olathe, Kansas 66062 and additional undisclosed locations in the State of Kansas.

As a result of the aforementioned items, Shaman, in Shaman's sole discretion, reasonably believes that Shaman's exposure from the items described in the immediately preceding paragraphs exceed the $30,000.00 currently maintained in Escrow. As such, pursuant to Section II(3)(a) of the Agreement, Shaman intends to withhold any future payments owed to you in Escrow and use such monies to satisfy the aforementioned obligations.

If you have questions, please direct them to the undersigned.

Brandon Carnes
Page 7

Very truly yours,

THE PORTO LAW FIRM

Nicholas J. Porto

Copy to:

David R. Mitchell, Esq.
Mitchell & Associates., LC
1080 NW South Outer Road
Blue Springs, MO 64015