UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS O'NEAL,

    Plaintiff,

v.                                                                                      Case No. 8:20-cv-936-KKM-AAS

AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,

    Defendants.
_____/

## ORDER

Plaintiff Thomas O'Neal moves to amend his supplemental complaint and his affirmative defenses to Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Defendants) counterclaim (Doc. 272).

1

I.  **BACKGROUND**

   **A. Underlying Facts**[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal

---

[1] This order pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[3] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

3

surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B. Procedural History

In his amended complaint,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act (FLSA) on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled.[5] (Docs. 65, 72).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

[5] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC (collectively, the Settled LLC Defendants) and Mr. O'Neal in the legal action preceding Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Prior Settlement Agreement."

4

Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

On September 7, 2020,[6] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58).[7] A July 30, 2021 order granted

---

[6] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

[7] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46). Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

5

Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146).

On July 11, 2022, the court granted the Shaman Defendants' motion for judgment on the pleadings and dismissed Mr. O'Neal's supplemental complaint. (Doc. 230). Mr. O'Neal now moves to amend his supplemental complaint and his affirmative defenses to the Shaman Defendants' counterclaims. (Doc. 272).

## II.   ANALYSIS

Rule 15(a) provides a party "may amend its pleading once as a matter of course" either within twenty-one days after serving it or within twenty-one days after service of a required responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Once this time has passed, a party "may amend its pleading only with the opposing party's written consent or the court's leave," which the court "should freely give . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)).

6

"[C]onsistent with Rule 15(a)'s mandate that 'leave shall be freely given when justice so requires,' district courts should generously allow amendments even when the plaintiff[s] do[ ] not have the right to amend the complaint." *Williams v. Bd. of Regents of the Univ. Sys. of Ga.*, 477 F.3d 1282, 1292 n.6 (11th Cir. 2007) (citations omitted) (*quoting* Fed. R. Civ. P. 15(a)). "A district court should not deny leave to amend 'unless there is a substantial reason.'" *Whitby v. Chertoff*, No. 5:08-CV-242, 2010 WL 431974, at *1 (M.D. Ga. Feb. 2, 2010) (*quoting Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)). Substantial reasons justifying the denial of leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182.

Mr. O'Neal has not met this low threshold. Mr. O'Neal originally requested to amend his previously-dismissed supplemental complaint and "add an additional cause of action for rescission of the Settlement Agreement" on August 11, 2022. (Doc. 241, p. 1). Mr. O'Neal argued this cause of action was important because he "would have rejected the broad release and assumption of the risk covenants in the [Prior] Settlement Agreement" had the Shaman Defendants not allegedly fraudulently misrepresented Mr. Carnes's interests. (Doc. 241, Ex. 1, ¶ 101).

However, as detailed in the Shaman Defendants' response (Doc. 245) to Mr. O'Neal's original motion to amend and the Shaman Defendants' later Motion to Strike (Doc. 255),[8] Mr. O'Neal's rescission claim suffered from severe fatal factual flaws. In essence, Mr. O'Neal's claim of rescission was rooted in the claim that the Shaman Defendants misrepresented franchise interests in American Shaman stores on public Missouri state financial disclosure documents issued on April 30, 2021. (Doc. 241, Ex. 1, ¶¶ 93–98). Mr. O'Neal claimed he relied on those allegedly fraudulent misrepresentations in agreeing to settle his original claims against the Shaman Defendants. (*Id.* at ¶ 101).

However, the parties noticed the Prior Settlement Agreement with the court on April 21, 2021 (Doc. 65), nine days *before* the issuance of the financial disclosure documents Mr. O'Neal claims he relied upon in entering into the Prior Settlement Agreement. Nothing in Mr. O'Neal's motion or proposed amended supplemental complaint responded to this factual quandary.

More crucially, Mr. O'Neal failed to adequately plead the rescission claim in his amended supplemental complaint. *See* (Doc. 241, Ex. 1). "[A] party's right to rescind is subject to waiver if he retains the benefits of a contract after discovering the grounds for recission." *Mazzoni Farms, Inc. v. E.I. Dupont de*

---

[8] Mr. O'Neal failed to timely respond to the Shaman Defendants' motion to strike (Doc. 255). The court thus treats the Shaman Defendants' motion as unopposed. *See* Local Rule 3.01(c), M.D. Fla. ("If a party fails to timely respond, the motion is subject to treatment as unopposed.").

8

*Nemours & Co.*, 761 So.2d 306, 313 (Fla. 2000). "Florida law leaves no room for debate over when a party must disgorge the benefits of an agreement whose terms it seeks to avoid. The plaintiffs here seek to have it both ways: they wish to retain the benefits of their settlement agreement while simultaneously challenging its burdens. Florida law does not provide them with such a windfall. In order to avoid the burdensome aspects of the agreement, including its waiver of claims, the plaintiffs were required to renounce its benefits by disgorging the payments they received. The plaintiffs have not done so." *Jackson v. BellSouth Tele.*, 372 F.3d 1250, 1279 (11th Cir. 2004).

Some courts have held, absent actually returning the benefits of the contract a plaintiff wishes to rescind, the plaintiff may instead "allege an offer to restore these benefits to the party furnishing them, if restoration is possible." *Longo v. Campus Advantage, Inc.*, No. 8:20-cv-2651-KKM-TGW, F. Supp. 3d 1286, 1292 (M.D. Fla. 2022) (*citing Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1206 (M.D. Fla. 2002)). In doing so, the plaintiff must have "plead that they actually did or are willing to return the defendant to the status quo." *Barber v. America's Wholesale Lender*, 542 Fed. App'x 832, 836–837 (11th Cir. 2013).

Mr. O'Neal did neither in his original motion to amend. Nothing in Mr. O'Neal's motion or attached proposed amended supplemental complaint indicated Mr. O'Neal actually returned or made a legible offer to return the

9

$50,000 he received as part of the Prior Settlement Agreement. Mr. O'Neal thus did not adequately plead his claim of rescission. *See Perna v. American Campus Communities, Inc.*, 2022 WL 1689083, at *5 (M.D. Fla. May 26, 2022). ("Plaintiffs have failed to provide any factual allegations that they made any such offer to [the defendant]. In the absence of such an allegation, Plaintiffs have failed to assert a plausible claim for rescission").

Seemingly recognizing the inconsistencies in his proposed amended supplemental complaint, Mr. O'Neal attempted to remedy this issue by attaching yet another revised amended supplemental complaint to a reply (Doc. 255) and requesting the court instead consider the merits of his motion based on that new complaint. *See* (Doc. 255, p. 2) (describing the new complaint as "a revised pleading which provides the Court with an expanded and more detailed description of the facts underlying [Mr.] O'Neal's equitable claim of rescission [sic]"). This new complaint not only included substantial new allegations against the Shaman Defendants, but also included a new cause of action of "an award of treble damages in accordance with Florida's civil theft statute." (Doc. 255, p. 3).[9]

---

[9] Attaching a new amended supplemental complaint raising new causes of action far exceeds the scope of relief requested by Mr. O'Neal in requesting leave to reply as well as the narrow scope of replies generally under Local Rule 3.01(e), M.D. Fla. *See Perrigo Co. v. Merial Ltd.*, 2018 WL 11350564, at *7 (N.D. Ga. Mar. 7, 2018) ("arguments raised for the first time in a reply brief are not properly before the Court for consideration") (*citing United States v. Oakley*, 744 F.2d 1553, 1556 (11th Cir. 1984)).

10

Now, over four months after filing his original motion to amend his supplemental complaint, Mr. O'Neal yet again moves to amend his supplemental complaint. (Doc. 272). This new proposed amended supplemental complaint not only raises a new cause of action of an alleged violation of Florida's civil theft statute, but also "violation of Florida's criminal theft statu[t]e [sic]" and "violation of Florida's RICO Act." (Doc. 272, Ex. 2, p. 2). Mr. O'Neal also moves to amend his answer (Doc. 231) to the Shaman Defendants' counterclaim (Doc. 188) and (in relevant part) add five new affirmative defenses in support of his claim that the Prior Settlement Agreement is unenforceable. (*Id.* at Ex. 1, pp. 7–15).

Mr. O'Neal's new causes of action and affirmative defenses appear to be an attempt at maneuvering around the court's order granting the Shaman Defendants' motion for judgment on the pleadings. (Doc. 230). In that order, the court concluded the Prior Settlement Agreement is enforceable and Mr. O'Neal's supplemental complaint violated the Prior Settlement Agreement that bound Mr. O'Neal "to his promise to release his non-FLSA claims." (Doc. 230, p. 8). In doing so, the court terminated the claims in Mr. O'Neal's supplemental complaint and concluded Mr. O'Neal "[did] not identify a reason in contract law that the [Prior Settlement Agreement] is ineffectual." (*Id.* at 6).

Mr. O'Neal at no point explains why he raises these new causes of action and affirmative defenses now, over a year and a half after entering into the

11

Prior Settlement Agreement (Doc. 65) and nearly a year after filing a supplemental complaint challenging the Prior Settlement Agreement on other grounds (Doc. 135). This unexplained delay in waiting to raise the new causes of action and affirmative defenses only after the dismissal of his supplemental complaint raises at least the specter of undue delay, bad faith, and dilatory motive. *See Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of motion to amend in part because there were "no matters that appellant proposed to add which could not have been raised initially");[10] *Pines Properties, Inc. v. American Marine Bank*, 156 Fed. App'x 237, 241 (11th Cir. 2005) ("there is no abuse of discretion in denying an amendment where a party is aware of facts supporting an alternative theory, but delays until after the original theory is rejected before seeking to amend").

---

[10] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

12


### III. CONCLUSION

For the aforementioned reasons, Mr. O'Neal's motion to amend his supplemental complaint and answer (Doc. 272) is **DENIED**. Because Mr. O'Neal's motion renders moot Mr. O'Neal's prior motions to amend (Docs. 241, 243) and the Shaman Defendants' later motion to strike (Doc. 256), these motions are also **DENIED**.

**ORDERED** in Tampa, Florida on January 30, 2023.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge