UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS O'NEAL,

    Plaintiff,

v.                                              Case No. 8:20-cv-936-KKM-AAS

AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,

    Defendants.
_____/

## ORDER

Plaintiff Thomas O'Neal moves for a limited lifting of the court's prior discovery stay. (Doc. 247). Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Defendants) respond in opposition. (Doc. 257).

1

I.  **BACKGROUND**

   **A. Underlying Facts**[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal

---

[1] This report pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[3] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

3

surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B. Procedural History

In his amended complaint,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act (FLSA) on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled.[5] (Docs. 65, 72).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

[5] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC (collectively, the Settled LLC Defendants) and Mr. O'Neal in the legal action preceding Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Prior Settlement Agreement."

Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

On September 7, 2020,[6] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58).[7] A July 30, 2021 order granted

---

[6] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

[7] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46). Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146).

On July 11, 2022, the court granted the Shaman Defendants' motion for judgment on the pleadings and dismissed Mr. O'Neal's supplemental complaint. (Doc. 230). Mr. O'Neal now moves for a limited lifting of the court's discovery stay. (Doc. 247).

## II. ANALYSIS

The undersigned granted a stay of discovery in this postjudgment matter on January 20, 2022, pending the multiple dispositive motions filed at the time by both parties and in light of the "more than 1,100 requests for production" Mr. O'Neal represented he intended to serve upon the Shaman Defendants. (Doc. 158, p. 2). On March 10, 2022, the undersigned extended that stay of discovery "pending the entry of a case management order" because the multiple dispositive motions "coupled with the one-sided nature of existing discovery requests . . . present[ed] good cause and unusual circumstances justifying a stay of discovery." (Doc. 203, pp. 3–4).

Mr. O'Neal now requests a limited lifting of this discovery stay to deliver multiple exhibits from past motions filed in this postjudgment matter to a prior attorney for the Shaman Defendants, David Luck. (Doc. 247). Mr. O'Neal

alleges Attorney Luck committed perjury in providing a January 19, 2022 declaration (Doc. 177, Ex. 1) in support of a prior motion and Mr. O'Neal is entitled to a limited lift of the discovery stay to grant Attorney Luck an opportunity to recant his statements in that declaration. *See* (Doc. 247, p. 5) (quoting an August 12, 2022 email from Mr. O'Neal's counsel to the Shaman Defendants' present counsel and claiming Mr. O'Neal's counsel "fear[s] . . .the numerous false statements in Attorney Luck's Declaration violate Florida's perjury laws and will have further negative implications for the individuals involved").

Mr. O'Neal's allegations of perjury relate to Mr. O'Neal's present argument that the Shaman Defendants and Attorney Luck have consistently misrepresented the involvement of Mr. O'Neal's counsel, Kevin Graham, in negotiating the Prior Settlement Agreement. Mr. O'Neal's former counsel, Scott Terry, provided a declaration on August 22, 2022 stating Attorney Terry "negotiated the terms of the [Prior] Settlement Agreement on behalf of Mr. O'Neal with opposing counsel David L. Luck, Esq. and Nickolas Porto, Esq." while also stating Attorney Graham "did not participate in any negotiations with Attorneys Luck or Porto regarding the terms of the [Prior] Settlement Agreement." (Doc. 247, Ex. 2).

However, Mr. O'Neal's allegation appears to be rooted in Mr. O'Neal's misrepresentation of Attorney Terry's declaration. Mr. O'Neal's motion alleges

7

Attorney Terry stated "under oath that he alone negotiated the terms of the [Prior] Settlement Agreement with opposing counsel—without any participation by [Attorney Graham]." (Doc. 247, p. 6). Mr. O'Neal also argues Attorney Graham's privilege log states Attorney Graham "had no communications with any attorney involved in drafting and negotiating the [Prior] Settlement Agreement and did not receive or comment on any drafts." (*Id.* at 7).

As described, however, Attorney Terry merely stated Attorney Graham did not directly negotiate the terms of the Prior Settlement Agreement with Attorneys Luck and Porto. (Doc. 247, Ex. 2). The Shaman Defendants' response (Doc. 257) includes multiple exhibits showing Attorney Graham appears to have represented Mr. O'Neal in the underlying litigation since February 2019 and participated in mediating the underlying litigation on Mr. O'Neal's behalf. (Doc. 257, pp. 5–7). The Shaman Defendants' exhibits also provide emails from Attorney Terry indicating Attorney Graham, though not directly negotiating settlement terms with Attorneys Luck and Porto, collaborated with Attorney Terry on potential terms in the Prior Settlement Agreement. (*Id.* at Exs. 5, 6).

This comports with Attorney Luck's declaration, which merely relays Attorney Graham was involved in "the mediation, in subsequent settlement negotiations . . . in preparing the [Prior] Settlement Agreement . . . [and] made line edits to the draft Settlement Agreement." (Doc. 177, Ex. 1, p. 2). Thus,

8

Attorneys Terry and Luck's declarations (though differing in tone) appear to tell a common story: that Attorney Graham participated in settlement discussions and made suggestions to Attorney Terry as to the written terms of the Prior Settlement Agreement, but that Attorney Graham did not independently negotiate with Attorneys Luck and Porto about said terms. Mr. O'Neal fails to adequately establish why this defeats the court's prior finding of good cause for a discovery stay or otherwise argue why a limited lifting of the court's discovery stay is appropriate.

The Shaman Defendants also attach an exhibit showing, prior to Mr. O'Neal's filing of the present motion, Attorney Luck was notified via email of Mr. O'Neal's perjury allegations against Attorney Luck. (Doc. 257, Ex. 1). Thus, not only has Mr. O'Neal failed to establish a need for a limited lift of the discovery stay in this matter, whatever necessity Mr. O'Neal sees in notifying Attorney Luck of Mr. O'Neal's perjury allegations appears to be mooted.

### III. CONCLUSION

For the aforementioned reasons, Mr. O'Neal's Motion for a Limited Lifting of Discovery Stay is **DENIED**.

**ORDERED** in Tampa, Florida on January 30, 2023.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

9