UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS O'NEAL,

     **Plaintiff,**

v.                                          **Case No. 8:20-cv-936-KKM-AAS**

AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas O'Neal moves for summary judgment on Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Defendants) counterclaims (Doc. 188). (Doc. 233). The Shaman Defendants respond in opposition (Doc. 242) and Mr. O'Neal replies (Doc. 244).

1

## I.    BACKGROUND

### A. Underlying Facts[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal

---

[1] This report pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[3] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B. Procedural History

In his amended complaint,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act (FLSA) on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled.[5] (Docs. 65, 72).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

[5] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC (collectively, the Settled LLC Defendants) and Mr. O'Neal in the legal action preceding Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Prior Settlement Agreement."

Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

On September 7, 2020,[6] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58).[7] A July 30, 2021 order granted

---

[6] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

[7] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46). Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146).

On July 11, 2022, the court granted the Shaman Defendants' motion for judgment on the pleadings and dismissed Mr. O'Neal's supplemental complaint. (Doc. 230). Mr. O'Neal now moves for summary judgment on the Shaman Defendants' counterclaims. (Doc. 233).

## II.   ANALYSIS

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). The nonmoving party must "go beyond the pleadings and her own affidavits," and she must point to evidence in the record that demonstrates the existence of a genuine issue for trial.  *Id.*

If evidence requires credibility determinations or deciding factual

inferences in the moving party's favor, summary judgment is inappropriate because the duty to weigh credibility and evidence belongs to the jury when the judge is not the factfinder. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (quotation and citation omitted). Further, all record evidence is reviewed with inferences construed in the nonmoving party's favor. *Id.* at 1192–93 (citation omitted).

Mr. O'Neal raises three arguments in support of summary judgment on the Shaman Defendants' counterclaims: (1) Mr. O'Neal is immune from liability under Florida's litigation privilege; (2) The Shaman Defendants have identified no statute, rule, doctrine affording them attorneys' fees; and (3) Mr. O'Neal's filing of a supplemental complaint did not violate the Prior Settlement Agreement. (Doc. 233). This report will consider each argument in turn.

## I.      Litigation Privilege

Mr. O'Neal argues "Florida's litigation privilege bars both counterclaims as a matter of law" such that the Shaman Defendants are precluded from suing Mr. O'Neal for initiating this postjudgment action. (Doc. 233, p. 5).

"At its most basic level, Florida's litigation privilege 'provid[es] legal immunity for actions that occur in judicial proceedings.'" *Sun Life Assur. Co. of Canada v. Imperial Premium Fin.*, LLC, 904 F.3d 1197, 1219 (11th Cir. 2018). However, as Mr. O'Neal has conceded in prior motions, "[t]he privilege does not extend absolute immunity to the filing of a lawsuit where that specific

act breaches a contract." (Doc. 195, p. 23) (*citing Id.*).

Here, the Shaman Defendants allege Mr. O'Neal's filing of a supplemental complaint violated the Prior Settlement Agreement. (Doc. 188, pp. 19–33). On this issue, the court has already concluded the Shaman Defendants are correct. (Doc. 230, p. 8) ("[The Prior Settlement Agreement] binds O'Neal to his promise . . . [h]is attempt to reassert those claims violates that agreement"). Mr. O'Neal has thus not established he is entitled to judgment as a matter of law that the Shaman Defendants' counterclaims are barred by Florida's litigation privilege.

## II.   Attorneys' Fees

Mr. O'Neal argues the Shaman Defendants' counterclaims should be dismissed because the Shaman Defendants "failed to allege a basis under which they are entitled to be awarded attorney fees against O'Neal (or his undersigned attorney)." (Doc. 233, p. 6).

The undersigned in a prior report noted "that, as a general matter of Florida law, 'a court may only award attorney's fees when such fees are expressly provided for by statute, rule, or contract.'" (Doc. 214, pp. 16–17) (*citing Butler v. Wright*, No. 8:06-cv-165-EAK-TBM, 2010 WL 599387, at *4 (M.D. Fla. Feb. 16, 2010)) (internal citations omitted). However, the undersigned also noted "courts are also authorized to award fees based upon the inequitable conduct doctrine, which permits the award of attorney's fees

8

where one party (or attorney) has exhibited egregious conduct or acted in bad faith." (*Id.*). Though "this doctrine is rarely applicable," Florida state law has uniformly concluded "attorney's fees can be awarded in situations where one party has acted vexatiously or in bad faith." *Bitterman v. Bitterman*, 714 So.2d 356, 365 (Fla. 1998).

In reply, Mr. O'Neal further argues the Shaman Defendants' claims fail because attorneys' fees awarded due to bad faith may only be "presented to the court by motion; not as a cause of action." (Doc. 244, p. 2). However, a review of relevant case law appears to show the opposite is true. *See Cap. Asset Rsch. Corp. v. Finnegan*, 216 F.3d 1268, 1270 (11th Cir. 2000) (concluding "failure to make an explicit request for attorneys' fees in its pleadings is not a defect" for purposes of subject matter jurisdiction). Mr. O'Neal has thus not established as a matter of law that the Shaman Defendants are precluded under Florida law from pursuing attorneys' fees for bad faith conduct as part of their counterclaim.

More fundamentally, Mr. O'Neal argues he is entitled to judgment as a matter of law because his commencement of this postjudgment action was not done in bad faith "under the *Moakley* standard or [is] sanctionable as 'bad faith' conduct under any other judicial doctrine or court rule." (Doc. 244, p. 8). However, the Shaman Defendants provide credible evidence showing Mr. O'Neal and his counsel attempted to include in the Prior Settlement

9

Agreement carve-outs from the general release permitting Mr. O'Neal to pursue potential fraudulent transfer claims. (Doc. 242, Ex. 1, ¶ 8) (*citing* (Doc. 188, Ex. 1, ¶ 28)). These proposed carve-outs were not included in the Prior Settlement Agreement and, as the court has already concluded, the releases in the Prior Settlement Agreement barred Mr. O'Neal from raising his fraudulent transfer claims against the Shaman Defendants. (Doc. 230, p. 8). These issues of material fact heavily caution against concluding Mr. O'Neal is entitled to judgment as a matter of law that Mr. O'Neal and his counsel did not act in bad faith in filing the supplemental complaint in this action.

## III.   Settlement Agreement

Finally, Mr. O'Neal argues he is entitled to judgment as a matter of law because the filing of his supplemental complaint does not violate the releases and non-disparagement clause in the Prior Settlement Agreement. (Doc. 233, pp. 8–10).[8]

As mentioned previously, the issue of whether Mr. O'Neal violated the releases in the Prior Settlement Agreement was already decided in the court's prior order granting the Shaman Defendants' motion for judgment on the

---

[8] Mr. O'Neal copies this argument nearly word-for-word from his prior motion to dismiss the Shaman Defendants' counterclaims. *See* (Doc. 195, pp. 23–24). In doing so, Mr. O'Neal again misquotes a passage from *In re W.B. Care Ctr., LLC*, 419 B.R. 62, 73–74 (M.D. Fla. 2009), which the undersigned previously informed *In re W.B. Care* "at no point states a release 'does not restrict a party from filing future litigation.'" (Doc. 214, p. 20).

pleadings. *See* (Doc. 230, p. 7) (discussing how "the plain language of the contract captures . . . the claims [Mr. O'Neal] asserts here against the Shaman Defendants").

The non-disparagement clause in the Prior Settlement Agreement reads as follows:

> Mutual Non-Disparagement. All parties hereto agree that they shall not, in any communications whatsoever, no matter the medium, whether verbally, in writing, or online, with the press or other media or any customer, client or supplier, criticize, ridicule or make any statement which disparages or degrades the other party.

(Doc. 180, Ex. 1, p. 3). Mr. O'Neal argues because "[t]he filing of the Supplemental Complaint is not a 'written or oral communications' to 'the press or other media' or to 'any customer, client or supplier,'" Mr. O'Neal has not violated the non-disparagement clause of the Prior Settlement Agreement.

This argument relies upon too narrow a reading of the non-disparagement clause. The general language of the non-disparagement clause, stating the parties agree "they shall not, in any communications whatsoever, no matter the medium . . . criticize, ridicule, or make any statement which disparages or degrades the other party," covers Mr. O'Neal's conduct in this postjudgment action. Mr. O'Neal's supplemental complaint is replete with accusations that the Shaman Defendants collaborated with Mr. Carnes on a multistate scheme of fraud and deceit in an effort to shield Mr. Carnes and

11

protect him from paying the $608,400 default judgment Mr. O'Neal obtained against Mr. Carnes. *See generally* (Doc. 161). Further, raising these allegations in a public court filing is at least analogous to publishing statements "with the press *or other media* or any customer, client, or supplier." (Doc. 180, Ex. 1, p. 3) (emphasis added).

Mr. O'Neal has thus not established he is entitled to judgment as a matter of law on the Shaman Defendants' counterclaims.

## III.   CONCLUSION

For the aforementioned reasons, the undersigned **RECOMMENDS** Mr. O'Neal's motion for summary judgment on the Shaman Defendants' counterclaims (Doc. 233) be **DENIED**.

**ENTERED** in Tampa, Florida on January 30, 2023.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge

### NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right

to challenge on appeal the district court's order adopting this report's

unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.