UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS O'NEAL,

    Plaintiff,

v.                           Case No. 8:20-cv-936-KKM-AAS

AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,

    Defendants.
_____/

## ORDER

Plaintiff Thomas O'Neal moves for reconsideration of this court's order denying his motions to amend (Doc. 241, 243, 272). (Doc. 279). Defendants American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Defendants) respond in opposition. (Doc. 283).

1

I.  BACKGROUND

   A. Underlying Facts[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores that American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and would receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal

---

[1] This order pulls the facts from Mr. O'Neal's amended complaint in the prior action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

met Joe Griffith, who was supposed to help build out the Tampa store, but Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to be open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Mr. Carnes and Ms. Sigman would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman.[3] (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notices of

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

3

surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B. Procedural History

In his amended complaint,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act (FLSA) on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled.[5] (Docs. 65, 72).

On May 1, 2020, Mr. O'Neal served Florida Shaman. (Doc. 22). Because

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the prior action. (Doc. 6).

[5] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC (collectively, the Settled LLC Defendants) and Mr. O'Neal in the legal action preceding Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Prior Settlement Agreement."

4

Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26).

On September 7, 2020,[6] Mr. O'Neal served Mr. Carnes and Ms. Sigman. (Docs. 31, 32). After several attempts to personally serve Mr. Carnes and Ms. Sigman, Mr. O'Neal served Attorney Shawn Pickett as an agent for Mr. Carnes and Ms. Sigman based on Mr. O'Neal's process server's telephone conversation with Mr. Carnes. (*See* Doc. 39, Ex. 1). Attorney Pickett later claimed that he lacked the authority to accept service on behalf of Mr. Carnes and Ms. Sigman. (*See* Doc. 39). Thus, Mr. O'Neal moved the court to determine the validity of the service. (*See id.*). A February 26, 2021 order found the service on Mr. Carnes and Ms. Sigman through serving Attorney Pickett was valid. (Doc. 42). Mr. O'Neal then successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51).

Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58).[7] A July 30, 2021 order granted

---

[6] Because of issues in serving Mr. Carnes and Ms. Sigman, Mr. O'Neal successfully moved for extensions to serve them. (*See* Docs. 23, 24, 28, 29).

[7] Before Mr. O'Neal moved for default judgment against Florida Shaman, Mr. Carnes, and Ms. Sigman, Shaman Franchise, American Shaman, and Shaman Botanicals moved to defer the entry of default judgment under the *Frow* doctrine. (Doc. 46). Shaman Franchise, American Shaman, and Shaman Botanicals also opposed Mr. O'Neal's motion for default judgment. (Doc. 61). Those parties settled.

5

Mr. O'Neal's motion for default judgment, awarding Mr. O'Neal $608,400 in damages. (Doc. 77). Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146).

On July 11, 2022, the court granted the Shaman Defendants' motion for judgment on the pleadings and dismissed Mr. O'Neal's supplemental complaint. (Doc. 230). On January 30, 2023, the undersigned denied Mr. O'Neal's motions to amend his supplemental complaint (Docs. 241, 243, 272). (Doc. 273). Mr. O'Neal now moves for reconsideration of that order. (Doc. 279).

## II.   ANALYSIS

District courts have "inherent authority to revise interlocutory orders before the entry of judgment adjudicating all the claims and rights and liabilities of all the parties in a case." *Hollander v. Wolf*, No. 9:09-cv-80587-KLR, 2009 WL 10667896, at *1 (S.D. Fla. Nov. 17, 2009). These limited circumstances prompt reconsideration of a court order: (1) an intervening change in the controlling law; (2) new evidence which has become available; or (3) a need to correct clear error or prevent manifest injustice. *McGuire v. Ryland Group, Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007); *True v. Comm'r of the I.R.S.*, 108 F. Supp. 2d 1361, 1365, (M.D. Fla. 2000).

The plaintiffs must therefore present "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *McGuire*,

497 F. Supp. 2d at 1358 (internal quotations omitted). "This ordinarily requires a showing of clear and obvious error where the interests of justice demand correction." *Id.* (internal quotations omitted).

Mr. O'Neal has not met this high burden. The undersigned denied Mr. O'Neal's motion for two reasons: (1) because Mr. O'Neal failed to adequately plead certain claims (Doc. 273, p. 12); and (2) because the time and manner in which Mr. O'Neal filed his motions to amend "raise[d] at lease the specter of undue delay, bad faith, and dilatory motive" such that leave to amend was not warranted under Federal Rule of Civil Procedure 15. (*Id.* at 13).

Mr. O'Neal's motion for reconsideration does not materially dispute the court's first reason beyond noting later motions to amend allegedly remedied the pleading defects noted in the court's order. *See* (Doc. 279, p. 2). Mr. O'Neal's motion for reconsideration instead devotes the lion's share of its attention to arguing the court was incorrect to conclude undue delay and bad faith warranted denying Mr. O'Neal's motion to amend.

Specifically, Mr. O'Neal argues the undersigned erred in its interpretation of the court's prior order (Doc. 230) granting the Shaman Defendants' motion for judgment on the pleadings. In denying Mr. O'Neal's motion to amend, the undersigned noted the court's prior order "concluded the Prior Settlement Agreement is enforceable and Mr. O'Neal's supplemental complaint violated the Prior Settlement Agreement that bound Mr. O'Neal 'to

7

his promise to release his non-FLSA claims.'" (Doc. 272, p. 11) (*citing* (Doc. 230, p. 8)). Based on this conclusion, the undersigned concluded Mr. O'Neal's waiting "nearly a year after filing a supplemental complaint challenging the Prior Settlement Agreement on other grounds" raised issues of undue delay and bad faith necessitating the denial of his motion to amend. (Doc. 272, p. 12).

Mr. O'Neal in his motion for reconsideration argues the undersigned simply misread the court's prior order. Mr. O'Neal alleges the court's prior order "made a single determination: that the mutual release is unenforceable as to [sic] FLSA claim under the *Lynn's Food* doctrine, but the rule does not render the mutual release unenforceable as to [Mr.] O'Neal's state law claims." (Doc. 279, p. 7). Relying on this interpretation of the court's prior order, Mr. O'Neal alleges not only that that his state law claims against the Shaman Defendants remain active, but also (and for the first time) the Shaman Defendants also maintain "the burden of proving that the mutual release bars each of [Mr.] O'Neal's state law causes of action and overcome application" of multiple Florida state equity rules. (*Id.* at 11).

However, the undersigned previously noted in a prior report and recommendation on Mr. O'Neal's motion for summary judgment on the Shaman Defendants' counterclaims (Doc. 272) that "the issue of whether Mr. O'Neal violated the releases in the Prior Settlement Agreement was already decided in the court's prior order." (*Id.* at 10). In adopting the undersigned's

8

report and recommendation in full, the court noted "the releases in the Prior Settlement Agreement barred [Mr.] O'Neal from raising his fraudulent transfer claims against the Shaman Defendants" was a conclusion already reached in the court's prior order. (Doc. 282, p. 3) (*citing* (Doc. 230)). The court's order in no way excepted state law claims from the relief granted to the Shaman Defendants. Thus, the equitable defenses raised in Mr. O'Neal's motion for reconsideration are irrelevant because the court's prior order granting the Shaman Defendants' motion for judgment on the pleadings dismissed all of Mr. O'Neal's claims in his supplemental complaint against the Shaman Defendants.

Finally, Mr. O'Neal argues "[t]he record simply does not support a finding of 'delay' by [Mr.] O'Neal . . . or that he filed his motion to amend . . . with a 'dilatory motive.'" (Doc. 279, p. 10). Mr. O'Neal cites no new evidence to support this claim or raise any argument materially distinct from those raised in support of his original motion to amend.

### III. CONCLUSION

Mr. O'Neal's motion does not present "facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *McGuire*, 497 F. Supp. 2d at 1358. Mr. O'Neal's motion (Doc. 279) is thus **DENIED**.

**ORDERED** in Tampa, Florida on February 22, 2023.

AMANDA ARNOLD SANSONE
United States Magistrate Judge

9