UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC, et al.,

    Counter-Plaintiffs,

v.                                               Case No. 8:20-cv-936-KKM-AAS

THOMAS O'NEAL,

    Counter-Defendant.
_____/

## ORDER

Counter-plaintiffs American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Parties) move for this court to determine an August 26, 2021 email (Doc. 328, sealed) (hereafter, the Email) sent by Counter-defendant Thomas O'Neal's counsel Kevin Graham is discoverable. (Doc. 327). Mr. O'Neal responds in opposition. (Doc. 332). The Shaman Parties replied. (Doc. 344). The motion (Doc. 327) is **GRANTED**.

I.    **BACKGROUND**

This case arises from a post-judgment dispute between Mr. O'Neal and the Shaman Parties. Mr. O'Neal initiated supplemental proceedings against the Shaman Parties on December 20, 2021. (Doc. 135). Mr. O'Neal's post-

1

judgment complaint brought fraudulent transfer claims under Florida law against Brandon Carnes to recover the value of a judgment Mr. O'Neal obtained in the underlying proceedings. (*Id.*). Mr. O'Neal alleged the Shaman Parties were duly liable because they "received direct benefits as a consequence of the fraudulent conveyance." (*Id.* at ¶ 36).

On February 28, 2022, the Shaman Parties answered Mr. O'Neal's supplemental complaint and raised two counterclaims: a counterclaim for a declaratory judgment that a settlement agreement between Mr. O'Neal and the Shaman Parties in the underlying proceeding (the Prior Settlement Agreement) is enforceable (Count I) and a counterclaim for breach of contract by Mr. O'Neal for allegedly raising his post-judgment action against the Shaman Parties in violation of the Prior Settlement Agreement (Count II). (Doc. 188).

On July 11, 2022, District Judge Kathryn Kimball Mizelle granted judgment on the pleadings on Mr. O'Neal's supplemental complaint in favor of the Shaman Parties, leaving the Shaman Parties' counterclaims against Mr. O'Neal as the only active claims in this action. (Doc. 230). The Shaman Parties now move to determine whether the attorney-client privilege or attorney work-product protections apply to an August 26, 2021 email that Mr. O'Neal's counsel inadvertently produced. (Doc. 327).

**II.   LEGAL STANDARD**

Federal Rule of Civil Procedure 26 requires a party asserting privilege or any similar protection to (i) expressly make the claim, and (ii) "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(i)-(ii).

### III. ANALYSIS

The Shaman Parties argue the Email is discoverable for three reasons: (1) any work-product protection claims[1] are waived because the Email was inadvertently disclosed and Mr. O'Neal's counsel, Kevin Graham, did not take reasonable steps to prevent its disclosure; (2) the Email is not protected work-product; and (3) to the extent the Email is protected work-product, the Shaman Parties have a substantial need for its disclosure. (Doc. 327). The court will address each argument in turn.

**A. Inadvertent Disclosure**

The Shaman Parties argue the Email is discoverable because Attorney

---

[1] The Shaman Parties also argue Attorney Graham's email is not protected by the attorney-client privilege. (Doc. 327, pp. 11–16). The court declines to consider the application of the attorney-client privilege to the Email because Mr. O'Neal and Attorney Graham now state they do "not contend that the attorney-client privilege is applicable to [the Email]." (Doc. 332, p. 15 n. 3).

3

Graham failed to take reasonable steps to prevent its disclosure. (Doc. 327, pp. 7–10). Under Federal Rule of Evidence 502(b), the inadvertent disclosure of protected material does not waive privilege claims if the following three elements are established by the disclosing party: "(1) the disclosure is inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder took reasonable steps to rectify the error." Fed. R. Evid. 502(b); *Walker v. GEICO Indem. Co.*, No. 615CV1002ORL41KRS, 2016 WL 11578803, at *6 (M.D. Fla. July 11, 2016).

Neither party materially disputes that the Email's initial disclosure was actually inadvertent or that Attorney Graham took reasonable steps to rectify his error. (Doc. 327, pp. 7–10) (wherein the Shaman Parties only argue protection due to inadvertent production is waived because "the facts confirm that [Attorney Graham] failed to take reasonable steps to prevent the mistaken disclosure"); (Doc. 332, pp. 21–23) (Mr. O'Neal and Attorney Graham claiming the Email's disclosure was inadvertent and noting the Shaman Parties "do not contest" that Attorney Graham took reasonable steps to rectify his error); (Doc. 344, p. 3) (the Shaman Parties in reply arguing the Email "is not protected as an inadvertent disclosure under [Federal Rule of Evidence 502(b)] because [Attorney Graham] did not take reasonable steps to prevent disclosure.").

As to the only other element, the court concludes Attorney Graham did

4

not take reasonable steps to prevent the Email's disclosure. The court recognizes the document production at issue was produced in an expedited fashion due to the abbreviated discovery period provided in the case management and scheduling order. (Doc. 294). However, the Email was produced as part of a small four-page batch of 14 emails. (Doc. 327, Ex. 2). Though Attorney Graham attests to difficulty obtaining documents from "multiple home and office computer hard drives and electronic data storage systems," this difficulty does not appear to have prevented Attorney Graham from reviewing and redacting other emails produced within the small four-page batch of 14 emails. (*Id.*). Even considering the abbreviated discovery period, the court concludes Attorney Graham has not met his burden of establishing he took reasonable steps to prevent the Email's disclosure. (Doc. 332, p. 8).

The court therefore concludes the Email's inadvertent disclosure waived claims of protection under the work-product doctrine. Even so, because the court concludes some of the Shaman Parties' other arguments that the Email is discoverable are also meritorious, the court turns to the question of whether the Email is protected work product.

**B. Work-Product Doctrine**

The Shaman Parties make four arguments that the Email is discoverable despite the work-product doctrine: (1) the Email was not prepared in

5

anticipation of litigation; (2) the Email was sent to an outside party; (3) work-product protections are waived because Mr. O'Neal affirmatively injected the issue of the Email's contents into this litigation; and (4) the Email contains only pure factual material. (Doc. 327, pp. 17–20); (Doc. 344, pp. 1–2). The court will consider each argument in turn.

### 1. Prepared in Anticipation of Litigation and Sent to an Outside Party

The Shaman Parties argue the Email was not prepared in anticipation of litigation and was sent to an outside party. (Doc. 327, pp. 18–20).

The work-product doctrine only protects the production of documents prepared at a time where "there is a substantial possibility that litigation will occur and that commencement of that litigation is imminent." *Fed. Deposit Ins. Corp. v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 603 (M.D. Fla. 1990). Furthermore, disclosing protected work product material to a third party waives protections under the work-product doctrine. *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987).

The court concludes the Email was prepared in anticipation of litigation and was not sent to an outside party. The Email was sent on August 26, 2021, a mere three months before Mr. O'Neal would launch his post-judgment action against the Shaman Parties. *See* (Doc. 101) (Mr. O'Neal first moving for leave to file his post-judgment action on November 18, 2021). The contents of the

Email make clear the "driving force behind its preparation" was gathering information in anticipation of Mr. O'Neal's raising of fraudulent transfer claims. *Montes v. Liberty Mut. Fire Ins. Co.*, Case No. 6:22-cv-920-WWB-LHP, 2023 WL 2743210, *2-3 (M.D. Fla. Mar 31, 2023).

Moreover, the email was sent by Attorney Graham to Attorney Scott Terry, who represented Mr. O'Neal in the underlying proceedings and his post-judgment efforts against the Shaman Parties until August 8, 2021. *See* (Doc. 83) (wherein Attorney Graham was substituted as counsel of record for Mr. O'Neal in place of Attorney Terry). On this record, the court declines to conclude such recent prior counsel is a third-party in the context of work-product protection waiver. *See, e.g.*, *Stern v. O'Quinn*, 253 F.R.D. 663, 683 (S.D. Fla. 2008) (concluding defense counsel's disclosure of information to sources not "assisting Defendants in advancing their case" and conducted "in such a way as to create a substantial risk that information would be received by Defendants' adversary" waived work-product protections because defense counsel "could not reasonable expect that future use of the information could be limited.").

### 2. Issue Injection

The Shaman Parties argue the Email is waived because its contents related to an issue Mr. O'Neal and Attorney Graham have affirmatively injected into this litigation. (Doc. 327, pp. 14–16; Doc. 344, p. 1–2). The work-

7

product doctrine is "a shield, not a sword." *GAB Bus. Serv., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987) (internal citations omitted). Thus, in the context of the Shaman Parties' allegations of bad faith against Mr. O'Neal and Attorney Graham, "[f]airness may compel a finding of an implied waiver [of the work-product doctrine] when a party asserts a claim or defense that requires examination of protected communications." *Guarantee Ins. Co. v. Heffernan Ins. Brokers, Inc.*, 300 F.R.D. 590, 594-95 (S.D. Fla. 2014).[2]

The court concludes any work-product claims against production of the Email are waived because Mr. O'Neal affirmatively injected the issue of Attorney Graham's participation in the Prior Settlement Agreement into this litigation and selectively disclosed contradictory evidence. The Shaman Parties raised two counterclaims in their answer to Mr. O'Neal's supplemental complaint: (1) the Prior Settlement Agreement between Mr. O'Neal and the

---

[2] In *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994), the Eleventh Circuit concluded the doctrine "that a party who injects into the case an issue that in fairness requires an examination of communications otherwise protected by the attorney-client privilege loses that privilege . . . does not extend to materials protected by the opinion work product privilege." *Cox*, 17 F.3d at 1422. However, "[a] number of lower courts have found an exception to this limitation where the opinion work product in question is directly at issue." *Centennial Bank v. ServisFirst Bank, Inc.*, 2020 WL 1061450, at *3 (M.D. Fla. Mar 4, 2020) (collecting cases). *See also Levesque v. Gov. Employees Ins. Co.*, 2016 WL 4261842, at *2 (S.D. Fla. Apr. 14, 2016) (holding "bad faith litigation counts as one of exceptions to the near absolute protection afforded opinion work product."). The particular allegations of bad faith in the Shaman Parties' motion, coupled with the Email's direct relevance to Mr. O'Neal and Attorney Graham's central defense to those allegations of bad faith, therefore support an implied waiver of opinion work product privilege on the basis of issue injection.

Shaman Parties is enforceable (Count I); and (2) Mr. O'Neal's post-judgment action against the Shaman Parties violated that settlement agreement (Count II). (Doc. 188). On top of their request for declaratory judgment and compensatory damages, the Shaman Parties also allege Mr. O'Neal and Attorney Graham acted in bad faith by filing claims "barred as a matter of law by the release in the [Prior Settlement Agreement]" with "no good faith basis in law or fact for asserting" said claims. (*Id*. at 30, 32).

Mr. O'Neal and Attorney Graham in response to the Shaman Parties' allegations of bad faith have maintained a consistent posture in no fewer than three filings before this court that Attorney Graham did not negotiate, draft, or edit the Prior Settlement Agreement at the center of the Shaman Parties' counterclaims against Mr. O'Neal. (Doc. 244, p. 7; Doc. 247, p. 6; Doc. 318, p. 6). Attorney Graham argues he cannot be held to have acted in bad faith (as alleged in the Shaman Parties' counterclaim) because he was not part of the negotiations of the Prior Settlement Agreement and thus did not know it barred Mr. O'Neal from raising his post-judgment action. Mr. O'Neal's response to this motion again makes this point. *See* (Doc. 332, p. 3) (stating "the documentary and testimonial evidence makes clear" the Prior Settlement Agreement was drafted without Attorney Graham's involvement); (*Id*. at 7–8) (citing a declaration by Mr. O'Neal's prior counsel Scott Terry wherein Attorney Terry states he "personally negotiated the terms of the Settlement

9

Agreement" that Attorney Graham made no "'mark-ups' or revisions to.").

By making this argument multiple times as a defense to the Shaman Parties' counterclaims and selectively disclosing declarations from Attorney Terry to support this argument, Mr. O'Neal and Attorney Graham have undoubtedly injected the issue of Attorney Graham's participation in drafting the Prior Settlement Agreement into the present litigation. *See Wesolek v. Wesolek*, No. 2:19-cv-463-JES-MRM, 2021 WL 3576460, at *18 (M.D. Fla. Mar. 24, 2021) ("Defendants may not assert a defense and then object to the production of documents that will assist in proving or disproving the defense."). As noted in the Shaman Parties' reply, Mr. O'Neal "does not dispute this argument" at any point in his response to the Shaman Parties' motion. (Doc. 344, p. 2).

Claims to protection from disclosing the Email under the work-product doctrine are thus waived. The Email, in which Attorney Graham asks a series of questions to Attorney Terry about the Prior Settlement Agreement, including "[d]id you present the language I prepared for inclusion in the [Prior] Settlement Agreement and emailed to you on May 3, 2021," is discoverable. (Doc. 328).

### c. Fact Work Product

The Shaman Parties also argue the contents of the Email contain only "pure facts" such that the Email's disclosure is not barred under the work-

product doctrine. (Doc. 327, pp, 20–24). Rule 26(b)(3)(A)(ii) states fact work product may be produce when the party requesting its production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

The Email is two paragraphs: the first being a description of what Attorney Graham believed to be transfers of franchise interests from certain of the Shaman Parties, and the second being Attorney Graham asking Attorney Terry questions about language Attorney Graham suggested for inclusion in the Prior Settlement Agreement. Beyond an arguable claim that a portion of the first paragraph where Attorney Graham states the transfers "appear[] to have all the badges of a fraudulent transfer" relays a legal opinion, the rest of the Email provides only a recitation of facts and inquiries to Attorney Terry. (Doc. 328). This statement alone does not render the Email opinion work product. Thus, the Email contains only fact work product.

The court further concludes the Shaman Parties' substantial need for the information contained in the Email and cannot without undue hardship otherwise obtain said information. The Email's content presents testimony directly relevant to the Shaman Parties' allegations of bad faith, testimony made more relevant by the fact that the Email was sent prior Mr. O'Neal's initiation of post-judgment proceedings. While deposition testimony from Mr.

11

O'Neal and Attorney Graham could produce other relevant information on this topic, the date the Email was sent provides vital context to the Email's content. This weighs both "the importance of the materials to [the Shaman Parties]" and "the difficulty [the Shaman Parties] will have obtaining them by other means" in favor of the Shaman Parties. *Burrow v. Forjas Taurus S.A.*, 334 F. Supp. 3d 1222, 1229 (S.D. Fla. 2018). *See also Mason v. U.S. Dept. of Justice-Civil Division*, Case No. 3:22-MC-00002-KDB, 2022 WL 737459, at *6 (W.D. N.C. Mar. 10, 2022) ("courts have held the passage of time can satisfy substantial need, recognizing the uniqueness of the statements at issue.").

### IV. CONCLUSION

The Shaman Parties' motion to overrule Mr. O'Neal's privilege objections (Doc. 327) is thus **GRANTED**. The Clerk is **DIRECTED** to unseal the docket entry containing the Email (Doc. 328).

The Shaman Parties also request that the court order Mr. O'Neal to provide unredacted names of attachments to previously produced emails, as well as conduct an in-camera review of other withheld emails to determine whether the other emails were also incorrectly redacted. (Doc. 327, p. 25). Mr. O'Neal does not address or otherwise respond to this additional request for relief.

The incorrect attempt to claw back production of the Email provides a sufficient basis for further court review of emails redacted or withheld by

12

Attorney Graham. *U.S. v. Zolin*, 491 U.S. 554, 572 109 S. Ct. 2619, 2731 (1989). The Shaman Parties' request (Doc. 327, p. 25) for Mr. O'Neal to provide unredacted names of attachments to previously produced emails and for the court to conduct an in-camera review of redacted or withheld emails is also **GRANTED**. No later than **July 18, 2023**, Mr. O'Neal is **ORDERED** to provide copies under seal to the Clerk of other redacted or withheld emails for the court's review. Also, no later than **July 18, 2023**, Mr. O'Neal must provide to opposing counsel the unredacted names of attachments to previously produced emails.

    **ORDERED** in Tampa, Florida on July 12, 2023.

*[signature: Amanda Arnold Sansone]*

AMANDA ARNOLD SANSONE
United States Magistrate Judge