UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC, et al.,

    Counter-Plaintiffs,

v.                                          Case No. 8:20-cv-936-KKM-AAS

THOMAS O'NEAL,

    Counter-Defendant.
_____/

**ORDER**

Counter-plaintiffs American Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa's (collectively, the Shaman Parties) move to compel current and former counsel for counter-defendant Thomas O'Neal, Attorneys Scott Terry and Kevin Graham, to sit for depositions. (Doc. 364).[1] Mr. O'Neal responds in opposition. (Doc. 373). The Shaman Parties' motion (Doc. 364) is **GRANTED**.

---

[1] None of the briefs address whether the Shaman Parties served subpoenas on Attorneys Terry and Graham. The court thus assumes for purposes of adjudicating this motion that the Shaman Parties subpoenaed Attorneys Terry and Graham for their testimony and construes the Shaman Parties' request for "the Court to permit depositions of attorneys Scott Terry and Kevin Graham" as a request to compel Attorneys Terry and Graham to comply with the Shaman Parties' subpoenas. (Doc. 364, p. 1).

1

I. **BACKGROUND**

This case arises from a post-judgment dispute between Mr. O'Neal and the Shaman Parties. Mr. O'Neal initiated supplemental proceedings against the Shaman Parties on December 20, 2021. (Doc. 135). Mr. O'Neal's post-judgment complaint brought fraudulent transfer claims under Florida law against Brandon Carnes to recover the value of a judgment Mr. O'Neal obtained in the underlying proceedings. (*Id.*). Mr. O'Neal alleged the Shaman Parties were duly liable because they "received direct benefits as a consequence of the fraudulent conveyance." (*Id.* at ¶ 36).

On February 28, 2022, the Shaman Parties answered Mr. O'Neal's supplemental complaint and raised two counterclaims: a counterclaim for a declaratory judgment that a settlement agreement between Mr. O'Neal and the Shaman Parties in the underlying proceeding (the Prior Settlement Agreement) is enforceable (Count I) and a counterclaim for breach of contract by Mr. O'Neal for allegedly raising his post-judgment action against the Shaman Parties in violation of the Prior Settlement Agreement (Count II). (Doc. 188).

On July 11, 2022, District Judge Kathryn Kimball Mizelle granted judgment on the pleadings on Mr. O'Neal's supplemental complaint in favor of the Shaman Parties, leaving the Shaman Parties' counterclaims against Mr. O'Neal as the only active claims in this action. (Doc. 230).

## II. LEGAL STANDARD

A party may obtain discovery about any nonprivileged matter relevant to any party's claim or defense and proportional to the needs. Fed. R. Civ. P. 26(b)(1). Discovery helps parties ascertain facts that bear on issues. *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017) (citations omitted).

A party may move for an order compelling discovery from the opposing party. Fed. R. Civ. P. 37(a). The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional. *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quotation and citation omitted). The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559–60 (11th Cir. 1985).

## III. ANALYSIS

The Shaman Parties request that the court compel Attorneys Terry and Graham to sit for depositions about their roles in drafting and negotiating the Prior Settlement Agreement. (Doc. 364) (*citing* (Docs. 358, 359)). Mr. O'Neal makes two arguments in response: (1) that the Shaman Parties' motion is untimely; and (2) the Shaman Parties fail to establish Attorneys Terry or Graham's testimony is relevant or crucial to the Shaman Parties' pursuit of

3

their counterclaims. (Doc. 373, pp. 4–8). The court will consider each argument in turn.

### 1. Timeliness of Motion

Mr. O'Neal argues the Shaman Parties' motion is untimely. (Doc. 373, pp. 4–6). Mr. O'Neal argues the Shaman Parties fail to provide good cause for why they now seek depositions of Attorneys Terry and Graham despite the "ample opportunity" to do so before the previous June 9, 2023 discovery deadline[2] Judge Mizelle set for resolving the Shaman Parties' counterclaims. (*Id.* at 5–6) (*citing First Nat'l. Bank of Oneida, N.A. v. Brandt*, Case No. 8:16-cv-51-T-60AAS, 2019 WL 13063444, at *1–2 (M.D. Aug. 2, 2019) ("[a] finding of lack of diligence on the part of the party seeking modification ends the good cause inquiry.").

On July 12, 2023, the court (over the Shaman Parties' objection) granted Mr. O'Neal permission to conduct limited depositions of current and former counsel for the Shaman Parties, Attorneys David Luck and Nicholas Porto. (Docs. 358, 359). *See also* (Doc. 334) (wherein the Shaman Parties argue the depositions of Attorneys Luck and Porto are unwarranted). In doing so, the court concluded the Shaman Parties affirmatively placed Attorneys Luck and Porto's "knowledge of the circumstances of the negotiation and drafting of the

---

[2] The undersigned thereafter extended the discovery deadline to July 31, 2023. *See* (Doc. 353).

4

Prior Settlement Agreement at issue in this litigation" by incorporating to their counterclaims a seven-page declaration by Attorney Luck that repeatedly discussed his and Attorney Porto's roles "as co-counsel for the Shaman Parties during the negotiation of the Prior Settlement Agreement." (Doc. 358, p. 6; Doc. 359, p. 5). On that basis, the court granted Mr. O'Neal permission to depose Attorneys Luck and Porto "about the topics addressed in Attorney Luck's declaration for a period no longer than 2 hours." (Doc. 358, pp. 6–7; Doc. 359, p. 5). *See also Curley v. Stewart Title Guar. Co.*, No: 2:18-cv-9-FtM-38UAM, 2019 WL 2552245, at *3 (M.D. Fla. Feb. 20, 2019) ("parties seeking to depose another party's attorney must demonstrate [. . .] the information sought is relevant, outweighs the dangers of deposing a party's attorney, and will not interfere with attorney-client privilege or invade the attorney work product doctrine.") (internal citations omitted).

The Shaman Parties' motion makes clear their current pursuit of Attorneys Terry and Graham's testimony is animated only by the court's rejection of the Shaman Parties' initial arguments against allowing for the depositions of Attorneys Luck and Porto. (Doc. 364, p. 2). Given the court's orders permitting the depositions of current and former counsel for the Shaman Parties about the Prior Settlement Agreement (Docs. 358, 359), the Shaman Parties' efforts to obtain what they now consider the equitable implications of that relief is sensible. The Shaman Parties provide good cause

5

for their failure to pursue this testimony before the previous June 9, 2023 discovery deadline.

**2. Merits of Motion**

Mr. O'Neal further argues the Shaman Parties failed to establish Attorneys Terry and Graham's testimony is "relevant to their breach of contract counterclaims and crucial to preparing their case." (Doc. 373, p. 6) (internal citations omitted).

On July 12, 2023, the court, separately from the order granting Mr. O'Neal permission to depose Attorneys Luck and Porto, concluded "Mr. O'Neal affirmatively injected the issue of Attorney Graham's participation in the Prior Settlement Agreement into this litigation and selectively disclosed contradictory evidence." (Doc. 357, p. 8). The court noted Mr. O'Neal's present defense to allegations of bad faith raised in the Shaman Parties' counterclaims is a factual argument that Attorney Graham "was not part of the negotiations of the Prior Settlement Agreement and thus did not know it barred Mr. O'Neal from raising his post-judgment action." (*Id.* at 9). In raising that defense, Mr. O'Neal has repeatedly attached declarations from Attorney Terry discussing his and Attorney Graham's alleged involvement in drafting and negotiation the Prior Settlement Agreement. *See, e.g.*, (Doc. 318, Ex. 2; Doc. 326, Ex. 1; Doc. 332, Ex. 2).

The court concluded "[b]y making this argument multiple times as a

6

defense to the Shaman Parties' counterclaims and selectively disclosing declarations from Attorney Terry to support this argument, Mr. O'Neal and Attorney Graham have undoubtedly injected the issue of Attorney Graham's participation in drafting the Prior Settlement Agreement into the present litigation." (*Id.* at 10). The Shaman Parties argue this logic duly applies to Mr. O'Neal's actions in this litigation and the Shaman Parties should thus be granted permission to conduct similarly limited depositions of Attorneys Terry and Graham. (Doc. 364).

The court agrees. By injecting the issue of Attorney Graham's role in drafting and negotiating the Prior Settlement Agreement, Mr. O'Neal has affirmatively placed the knowledge of Attorney Graham (and Attorney Terry as his co-counsel) into issue in this litigation. Just as Mr. O'Neal is entitled to question Attorneys Luck and Porto about knowledge of the drafting and negotiating of the Prior Settlement Agreement, so too are the Shaman Parties entitled to question Attorneys Terry and Graham on the same issue. The Shaman Parties should therefore be granted the opportunity to inquire as to those matters.

## IV. CONCLUSION

The Shaman Parties' Construed Motion to Compel (Doc. 364) is **GRANTED**. The Shaman Parties may depose Attorneys Terry and Graham about the drafting and negotiation of the Prior Settlement Agreement for a

period of no longer than two hours per deposition. Each party will bear their own costs and fees. *See* Fed. R. Civ. P. 37(a)(5)(A).

**ORDERED** in Tampa, Florida on July 24, 2023.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge

8