# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**THOMAS O'NEAL,**

     **Plaintiff,**

**v.**                                              **Case No. 8:20-cv-936-KKM-AAS**

**AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,**

     **Defendants.**

_____/

## REPORT AND RECOMMENDATION

Plaintiff Thomas O'Neal moves for summary judgment against Defendants Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa (collectively, the Shaman Defendants). (Doc. 385). The Shaman Defendants responded, and Mr. O'Neal replied. (Docs. 397, 400).

The Shaman Defendants move for summary judgment against Mr. O'Neal on their breach of contract claim (Count II), request that their declaratory judgment claim (Count I) be "dismissed as moot," and request a sanctions hearing against Attorney Kevin Graham. (Doc. 390). Mr. O'Neal

1

responded, and the Shaman Defendants replied. (Docs. 393, 399).

The parties also submit two joint statements of undisputed facts. (Docs. 388, 391).

Upon consideration of the summary judgment papers, the undersigned **RECOMMENDS** that Mr. O'Neal's motion be **GRANTED-IN-PART and DENIED-IN-PART**, and the Shaman Defendants' motion be **GRANTED-IN-PART and DENIED-IN-PART**.

## I.    BACKGROUND

### A.    Underlying Facts[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell the CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores American Shaman planned to open, but American Shaman would cover the initial costs to open the store and classify the stores as company-owned. (*Id.* at ¶ 18). Also, under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours

---

[1] This report pulls the underlying facts from Mr. O'Neal's amended complaint in the underlying action. *See* (Doc. 6).

per week and receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal met Joe Griffith, who was supposed to help build out the Tampa store. However, Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Brandon Carnes and Katelyn Sigman[3] would be visiting the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand

---

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman. (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notice of surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B. Procedural History of Underlying Action

In his amended complaint in the underlying action,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the underlying action. (Doc. 6).

enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Ultimately, Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled. (Docs. 65, 72).[5]

Because Florida Shaman did not respond to Mr. O'Neal's amended complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26). Mr. O'Neal also successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51). Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58). One month later, Mr. O'Neal settled his claims with Shaman Franchise, American Shaman, and Shaman Botanicals. (Doc. 65). A July 30, 2021 order granted Mr. O'Neal's motion for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC, and awarded Mr. O'Neal $608,400 in damages. (Doc. 77).

## C.   Procedural History of Post-Judgment Proceedings

Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146). In December 2021, Mr. O'Neal initiated post-

---

[5] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC and Mr. O'Neal in the legal action underlying Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Settlement Agreement."

judgment proceedings. (Doc. 135). Mr. O'Neal's post-judgment amended complaint brought fraudulent transfer claims under Florida law to recover the value of a judgment Mr. O'Neal obtained in the underlying action. (Doc. 161). Mr. O'Neal alleged the Shaman Defendants were duly liable because they "received direct benefits as a consequence of the fraudulent conveyance." (Doc. 161, ¶ 40).

On February 28, 2022, the Shaman Defendants answered Mr. O'Neal's supplemental complaint and raised two counterclaims: a counterclaim for a declaratory judgment that the settlement agreement between Mr. O'Neal and the Shaman Defendants in the underlying action (the Settlement Agreement) is enforceable (Count I) and a counterclaim for breach of contract by Mr. O'Neal for bringing this post-judgment proceeding against the Shaman Defendants in violation of the Settlement Agreement and for disparaging the Shaman Defendants (Count II). (Doc. 188).

On July 11, 2022, the court granted the Shaman Defendants' motion for judgment on the pleadings and dismissed Mr. O'Neal's supplemental complaint. (Doc. 230). Mr. O'Neal then unsuccessfully moved for summary judgment on the Shaman Defendants' counterclaims under theories of Florida's litigation privilege, the Shaman Defendants lacking a right to attorney's fees, and Mr. O'Neal's filing of a supplemental complaint not violating the Settlement Agreement. (Docs. 233, 276, 282).

Mr. O'Neal now moves again for summary judgment on both counts of the Shaman Defendants' counterclaims under theories of the Florida Independent Tort Doctrine, the "American Rule," and the Shaman Defendants' alleged prior material breach of the Settlement Agreement. (Doc. 385). The Shaman Defendants move for summary judgment on their counterclaim for breach of contract (Count II) and request a hearing to determine the imposition of sanctions against Mr. O'Neal's counsel, Kevin Graham. (Doc. 390). The Shaman Defendants also request the court "dismiss as moot" their counterclaim for declaratory judgment (Count I). (*Id.*).

## II.   ANALYSIS

An order granting summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A moving party is entitled to summary judgment when the nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 316, 323 (1986). The nonmoving party must "go beyond the pleadings and her own affidavits," and she must point to evidence in the record that demonstrates the existence of a genuine issue for trial. *Id.*

If evidence requires credibility determinations or deciding factual inferences in the moving party's favor, summary judgment is inappropriate because the duty to weigh credibility and evidence belongs to the jury when the judge is not the factfinder. *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (quotation and citation omitted). Further, all record evidence is reviewed with inferences construed in the nonmoving party's favor. *Id.* at 1192–93 (citation omitted).

## A. Preliminary Issue of Mr. O'Neal's Multiple Motions for Summary Judgment

The "Summary Judgment Procedures" section of the October 8, 2020 Case Management and Scheduling Order in the underlying action plainly instructs "[a] party's claims or defenses for which summary judgment is sought **shall** be presented in a **single** motion . . .." (Doc. 36, p. 6) (emphasis in original). This section further instructs "[a] violation of any of these directives will result in the Court *sua sponte* striking a party's motion for summary judgment and incorporated memorandum of law without notice." (*Id.*).

The "Summary Judgment Procedures" section of the March 30, 2023 Case Management and Scheduling Order for these post-judgment proceedings not only includes the same instruction, but also states: "Multiple motions for summary judgment will not be permitted." (Doc. 294, p. 3). Between the entry of these two orders, Mr. O'Neal unsuccessfully moved for summary judgment

on the Shaman Defendants' counterclaims in these post-judgment proceedings. (Docs. 233, 282). Now, Mr. O'Neal again moves for summary judgment on the Shaman Defendants' counterclaims. (Doc. 385).

Because successive motions for summary judgment violate the court's Case Management and Scheduling Orders, Mr. O'Neal's motion should be stricken. Nevertheless, because Mr. O'Neal's arguments in his motion for summary judgment are repeated and intertwined with his arguments in his response to the Shaman Defendants' motion for summary judgment, this report addresses Mr. O'Neal's arguments and recommends a ruling on the merits of Mr. O'Neal's successive motion for summary judgment.

### B. Count I for Declaratory Judgment

Count I of the Shaman Defendants' counterclaim requests two things — (1) a declaratory judgment that the Settlement Agreement is fair, reasonable, and enforceable and the mutual release bars all claims Mr. O'Neal asserts in these post-judgment proceedings and (2) an award of their reasonable attorney's fees incurred in this action. (Doc. 188, ¶¶ 37–38). Mr. O'Neal raises a summary judgment argument against only the part of Count I that requests attorney's fees. (*See* Doc. 385). The Shaman Defendants do not request summary judgment on Count I and instead ask the court to "dismiss[] as moot" Count I if the court grants summary judgment on Count II. (Doc. 390, p. 19).

But whether Count I is now moot does not hinge on whether the court

grants summary judgment on the breach of contract claim in Count II. Instead, the Shaman Defendants' request for a declaratory judgment that the Settlement Agreement is fair, reasonable, and enforceable and the mutual release bars all claims Mr. O'Neal asserts in these post-judgment proceedings was rendered moot when the court's July 11, 2022 order on the Shaman Defendants' motion for judgment on the pleadings contained this exact ruling. (Doc. 230).[6]

Specifically, the court's July 11, 2022 order has already concluded that the Shaman Defendants are entitled to judgment on the pleadings on this issue because "the settlement binds Mr. O'Neal to his promise to release his non-FLSA claims [and] [h]is attempts to reassert those claims violates that agreement." (Doc. 230, p. 8). And this ruling was repeated in the court's February 17, 2023 order denying Mr. O'Neal's last motion for summary judgment on the Shaman Defendants' counterclaims. (Doc. 282, p. 3).

The Shaman Defendants, however, not only request a declaratory ruling in Count I but they also include a request for attorney's fees. (*See* Doc. 188). Because the court's prior orders did not address that request, that portion of Count I has not been rendered moot. Specifically, the Shaman Defendants

---

[6] The Florida Supreme Court explains "the purpose of a declaratory judgment is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." *Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles*¸ 680 So. 2d 400, 404 (Fla. 1996) (citation omitted).

request this court hold Mr. O'Neal and his attorney Mr. Graham "jointly and severally liable for payment of such fees because they know that the claims they are pursuing against the Shaman Defendants in this action are barred as a matter of law by the release in the Settlement Agreement and there is no good faith basis in law or fact for asserting these released claims." (Doc. 188, ¶ 38). In addition, in their response to Mr. O'Neal's motion for summary judgment (Doc. 385), the Shaman Defendants describe the request for attorney's fees as "relief for bad faith litigation." (Doc. 397, p. 8). Similarly, in their own motion for summary judgment, the Shaman Defendants describe the request as a "sanction for bad faith litigation conduct in filing claims known to be barred by release." (Doc. 390, p. 2).

Regardless of whether attorney's fees are requested as a sanction for bad faith litigation or as damages for the breach of the release section, the inclusion of the request for attorney's fees in Count I for declaratory judgment is not proper. The Florida Declaratory Judgment Act does not provide for an award of attorney's fees. *See* FLA. STAT. §§ 86.011–86.121. Section 86.081 permits the court to "award costs as are equitable." That section awarding costs, however, does not include attorney's fees. *Price v. Tyler*, 890 So. 2d 246, 252 (Fla. 2004).

In light of the court's prior rulings cited above, the Shaman Defendants previously prevailed on their request in Count I that the court conclude the Settlement Agreement is fair, reasonable, and enforceable and the mutual

release bars all claims Mr. O'Neal asserts in these post-judgment proceedings. Attorney's fees, however, are not an appropriate award in connection with Count I and so it is recommended that any request for attorney's fees in connection with Count I be summarily judged in Mr. O'Neal's favor. Otherwise, the remaining relief requested by the Shaman Defendants in Count I (specifically the declaration that the Settlement Agreement is fair, reasonable, and enforceable and the mutual release bars all claims Mr. O'Neal asserts in these post-judgment proceedings) was rendered moot due to the court's prior rulings already granting this relief. (Doc. 230, p. 8; Doc. 282, p. 3).

### C. Count II for Breach of Contract

Count II of the Shaman Defendants' counterclaim asserts Mr. O'Neal breached the Settlement Agreement's release and non-disparagement sections. (Doc. 188, ¶¶ 41–46). Both Mr. O'Neal and the Shaman Defendants request summary judgment on Count II. (*See* Docs. 385, 390).

The release and non-disparagement sections of the Settlement agreement state:

> Mutual Release. Upon the Effective Date, the Parties, [. . .] hereby fully, forever and irrevocably release and discharge each other Party [. . .] from any and all "Claims" (as defined in Section 2.2), that the Parties [. . .] have had, now have, or hereafter can or shall have against any of the other Released Parties.
>
> [. . .]
>
> Mutual Non-Disparagement. All parties hereto agree that they

12

shall not, in any communications whatsoever, no matter the medium, whether verbally, in writing, or online, with the press or other media or any customer, client or supplier, criticize, ridicule or make any statement which disparages or degrades the other party.

(Doc. 391, Ex. 11, pp. 1–3).

To state a claim for breach of contract, a plaintiff must allege "(1) the existence of a valid contract; (2) a breach of such contract; and (3) damages resulting from such breach." *Senter v. JP Morgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (citing *Knowles v. C.I.T. Corp.*, 346 So.2d 1042, 1043 (Fla. 1st DCA 1977)). Further, "to maintain an action for breach of contract, a claimant must also prove performance of its obligations under the contract or a legal excuse for its nonperformance." *Rollins v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006).

As an initial matter, Mr. O'Neal argues the breach of contract claims are barred because the Shaman Defendants breached the confidentiality section of the Settlement Agreement prior to Mr. O'Neal's alleged breach. (Doc. 385, pp. 9–12). Mr. O'Neal states the Shaman Defendants breached the confidentiality section by "(1) publicly disclosing the terms of the Settlement Agreement [in their counterclaim filed with this court] without providing 'prior written notice' to Mr. O'Neal's 'attorney'; and (2) filing the Suggestions in Opposition and the partially redacted copy of the Settlement Agreement in the publicly accessible records of the [United States District Court for the Western District of

13

Missouri.]" (Doc. 385, pp. 11–12).[7] The Shaman Defendants' disclosure of the settlement terms and filing of the redacted Settlement Agreement, however, were permitted under an exception to the confidentiality restriction for disclosure "to a court in order to obtain an order seeking enforcement of the settlement." (Doc. 391, Ex. 11, p. 4).

Turning to the elements for a breach of contract, for the first element, neither party disputes the Settlement Agreement's validity and all elements necessary for a valid contract are present. For the second element, this court already ordered twice that Mr. O'Neal's fraudulent transfer claims breached the release in the Settlement Agreement. (*See* Docs. 230, 276, 282). The court has also noted that the non-disparagement section covers these post-judgment proceedings, and that the supplemental complaint is "replete with accusations that the Shaman Defendants collaborated with Mr. Carnes on a multistate scheme of fraud and deceit in an effort to shield Mr. Carnes and protect him from paying the $608,400 default judgment Mr. O'Neal obtained against Mr. Carnes." (Doc. 276, pp. 11–12, adopted by Doc. 282, p. 4). Therefore, Mr. O'Neal's disparaging accusations against the Shaman Defendants in his numerous filings constitute a breach of the non-disparagement section in the

---

[7] The Shaman Defendants filed a heavily redacted copy of the Settlement Agreement as an exhibit when responding to a motion to compel Mr. O'Neal filed in the United States District Court for the Western District of Missouri. (Doc. 397, pp. 5–7; Doc. 391-16).

Settlement Agreement.[8]

At issue, therefore, is whether damages result from Mr. O'Neal's breach of these two sections in the Settlement Agreement.[9] The Shaman Defendants allege in Count II that damages from the breaches are "reputational and business harm from Mr. O'Neal's disparaging statements, along with incurring attorneys' fees and other costs in defending these post-judgment proceedings that Mr. O'Neal was expressly prohibited from pursuing under the release in the Settlement Agreement." (Doc. 188, p. 32). The Shaman Defendants argue these same types of damages in their summary judgment motion. (Doc. 390, pp. 7–11).

The Shaman Defendants admit they cannot prove pecuniary harm from Mr. O'Neal's disparaging statements but posit Florida law permits an award of presumed damages or at least nominal damages. *See Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So. 2d 279, 281 (Fla. 1st DCA 1977) ("Words which are actionable in themselves, or per se, necessarily import general damages

---

[8] By way of example, Mr. O'Neal's accusations against the Shaman Defendants range from "willful and deliberate plan[s] to prejudice [Mr. O'Neal]" to "fraudulent and criminal conspiracy" and appear frequently in his post-judgment filings. (*See* Docs. 258, 304, 313, 318, 320, 383,385, 393, 398, 400).

[9] Mr. O'Neal also argues Florida's independent tort doctrine bars the Shaman Defendants' counterclaims for breach of contract. (Doc. 385, pp. 8–9). "The independent tort doctrine bars recovery in tort for actions that challenge a breach of contract[.]" *Stepakoff v. IberiaBank Corp.*, 637 F. Supp. 3d 1309, 1315 (S.D. Fla. 2022) (internal citations omitted)). The Shaman Defendants pursue recovery under contract law, not tort law, and thus Florida's independent tort doctrine does not apply.

and need not be pleaded or proved but are conclusively presumed to result."); *Sch. Bd. Of Osceola Cnty v. Gallagher Benefit Servs., Inc.*, No. 6:21-cv-1979-ACC-LHP, 2022 WL 19914514, *5 (M.D. Fla. June 22, 2022) ("Florida law allows nominal damages once a breach of contract has been established."). Because the parties stipulated to a bench trial, the Shaman Defendants argue the court could decide the amount of presumed or nominal damages at summary judgment. The undersigned agrees an award of nominal damages is appropriate here, however the Shaman Defendants do not argue or suggest what the amount of nominal damages should be. (*See* Doc. 390). Due to the absence of evidence supporting a specific amount, this report recommends nominal damages of one dollar should be awarded to the Shaman Defendants for Mr. O'Neal's breach of the non-disparagement section of the Settlement Agreement.[10]

Regarding attorney's fees as damages for the breach of the release, the Settlement Agreement states, consistent with the American Rule: "Each party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Lawsuit, this Settlement Agreement and the matters and documents referred to herein, and all related matters." (Doc.

---

[10] Section 504.11 of the Florida Standard Jury Instructions states, "If you decide that (defendant) breached the contract but also that (claimant) did not prove any loss or damage, you may still award (claimant) nominal damages such as one dollar." *In re Standard Jury Instructions--Cont. & Bus. Cases*, 116 So. 3d 284, 341 (Fla. 2013).

188, Ex. 1, p. 6). However, the Shaman Defendants ground their claim for attorney's fees as compensatory damages in the exception to the American rule for attorney's fees when the attorney's fees are incurred because of litigation brought in violation of a covenant not to sue. *See Gregoire v. Lucent Techs., Inc.¸* No. 6:03-cv-251-Orl-31KRS, 2005 WL 1863429, *4 (M.D. Fla. Aug. 5, 2005).

The release in the Settlement Agreement reads, "[T]he Parties [. . .] forever and irrevocably release and discharge each other Party . . . from any and all 'Claims' [. . .] that the Parties [. . .] have had, now have, or hereafter can or shall have against any of the other Released Parties." (Doc. 388, Ex. 1, pp. 2–3). "Claims" is defined broadly to encompass "any and all past, present or future claims[.]" (*Id.* at 3). The release functions as a covenant not to sue. *See Hall v. Sargeant*, No. 18-80748-CIV, 2020 WL 1536435, *8 (S.D. Fla. Mar. 30, 2020) ("A party that releases, and forever discharges, both 'suits' and 'claims'—whether known or unknown—has contractually agreed never to sue."); *see also Rinks v. Courier Dispatch Grp.*, Inc., No. 1:01-CV0678JOF, 2002 WL 32093321, at *4 (N.D. Ga. July 17, 2002), aff'd, 77 F. App'x 504 (11th Cir. 2003).

The Settlement Agreement states "[e]ach party hereto shall bear all attorney's fees and costs arising from the actions of its own counsel in connection with the Lawsuit, this Settlement Agreement [. . .] and all related

matters." (Doc. 388, Ex. 1, p. 6). In light of the Settlement Agreement's covenant not to sue, "all related matters" does not include Mr. O'Neal's supplemental complaint, and the Shaman Defendants may recover reasonable attorney's fees and expenses as a measure of damages for Mr. O'Neal's breach of the release and covenant not to sue. The natural damages flowing from the breach of the release and covenant not to sue are the reasonable attorney's fees and expenses incurred by the Shaman Defendants in defending against Mr. O'Neal's numerous post-judgment filings. *See MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 223 (Fla. 2008) ("[A] person or entity injured by either a breach of contract or by a wrongful or negligent act or omission of another is entitled to recover a fair and just compensation that is commensurate with the resulting injury or damage") (citing *Winn & Lovett Grocery Co. v. Archer*, 126 Fla. 308, 171 So. 214 (1936)); *see also Wilmington Tr., N.A. v. Est. of Gonzalez*, No. 15-CV-23370-UU, 2016 WL 11656681 (S.D. Fla. Nov. 1, 2016) (finding attorney's fees proper measure of damages against party that breached release and covenant not to sue).

*   *   *

For the breach of contract claims in Count II, there are no material facts in dispute that preclude this court from entering summary judgment. The Settlement Agreement is a valid contract. Mr. O'Neal breached the Settlement Agreement's non-disparagement section and the broad release with his filings

in these post-judgment proceedings. The Shaman Defendants should be awarded nominal damages of one dollar for the breach of the non-disparagement section. The damages resulting from the breach of the release, however, are the reasonable attorney's fees and expenses the Shaman Defendants incurred in defending these post-judgment proceedings filed in violation of the broad release in the Settlement Agreement.

The undersigned therefore recommends the court find the Shaman Defendants entitled to their reasonable attorney's fees and expenses incurred in these post-judgment proceedings. If this report is adopted by the court, the Shaman Defendants should file a supplemental motion on amount of attorney's fees and expenses as required by Local Rule 7.01, M.D. Fla.

### D. The Shaman Defendants' Request for Sanctions Against Attorney Graham.

Imbedded in the Shaman Defendants' motion for summary judgment is a request for the court to order sanctions against Attorney Graham. Section 1927 of Title 28 authorizes the court to order an attorney "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" because the attorney multiplied the proceedings in the case "unreasonably and vexatiously." Attorney Graham's commencement of the post-judgment proceedings on Mr. O'Neal's behalf is insufficient to trigger the application of the statute because the statute applies when counsel "multiplies" the

proceedings. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010).

To order sanctions, the statute's plain language sets forth three requirements: "(1) an attorney must engage in 'unreasonable and vexatious' conduct; (2) such 'unreasonable and vexatious' conduct must 'multiply the proceedings;' and (3) the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1281 (11th Cir. 2010) (quoting *McMahon v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001)). Whether an attorney multiplies court proceedings "unreasonably and vexatiously" turns on whether the attorney's conduct is objectively "so egregious that it is tantamount to bad faith." *Norelus*, 628 F.3d at 1282 (internal quotations and citation omitted). The Eleventh Circuit instructs the court to "compare the conduct at issue with how a reasonable attorney would have acted under the circumstances." *Id.*

Attorney Graham is entitled to a hearing on the Shaman Defendants' request for sanctions against him. *Reynolds v. Roberts*, 207 F.3d 1288, 1302 (11th Cir. 2000); *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11the Cir. 2007) (describing an evidentiary hearing as necessary when an attorney is threatened with sanctions under § 1927). Consequently, this report recommends that the request for sanctions under § 1927 be set for an evidentiary hearing after the sanctions request has been fully briefed. Prior to the court scheduling a hearing, the Shaman Defendants should be given an

opportunity to file a motion detailing the unreasonable and vexatious conduct that multiplied the proceedings. Attorney Graham should be given an opportunity to respond to the motion.

Notably, the court previously ordered Attorney Graham to show cause as to why he should not be sanctioned for the conduct outlined by the Shaman Defendants in a prior motion. (*See* Docs. 347, 381). Attorney Graham responded three times, filed a notice of supplemental authority, and incorporated the arguments he made in the three filings concerning the instant summary judgment motions before this court. (Docs. 383, 384, 394, 396). A single sanctions motion (and subsequent evidentiary hearing) should address every ground the Shaman Defendants assert for the imposition of sanctions against Attorney Graham.

## III.   CONCLUSION

It is **RECOMMENDED** that Mr. O'Neal's Motion for Summary Judgment (Doc. 385) be **GRANTED-IN-PART and DENIED-IN-PART**. Mr. O'Neal's motion should be **GRANTED** on the issue of the Shaman Defendants' request for attorney's fees as declaratory judgment damages in Count I. Otherwise, Mr. O'Neal's motion should be **DENIED**.

It is **RECOMMENDED** that the Shaman Defendants' Motion for Summary Judgment (Doc. 390) be **GRANTED-IN-PART and DENIED-IN-PART**. The Shaman Defendants' motion should be **GRANTED** as to Count II.

Nominal damages of one dollar should be awarded for Mr. O'Neal's breach of the non-disparagement section and reasonable attorney's fees and expenses should be awarded as damages for Mr. O'Neal's breach of the release.

It is further **RECOMMENDED** that the Shaman Defendants' request for the court to order sanctions against Attorney Graham be **DENIED without prejudice** pending more detailed briefing and an evidentiary hearing.

**ENTERED** in Tampa, Florida on January 12, 2024.

_Amanda Arnold Sansone_
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to request an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's

right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.