## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**THOMAS O'NEAL,**

     **Plaintiff,**

**v.**                             **Case No. 8:20-cv-936-KKM-AAS**

**AMERICAN SHAMAN FRANCHISE SYSTEM,
LLC; CBD AMERICAN SHAMAN,
LLC; SHAMAN BOTANICALS, LLC;
SVS ENTERPRISES, LLC; STEPHEN
VINCENT SANDERS II; BRANDON CARNES;
and FRANCIS KALAIWAA,**

     **Defendants.**
_____/

## REPORT AND RECOMMENDATION

The court awarded Defendants Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), Shaman Botanicals, LLC, SVS Enterprises, LLC, Stephen Vincent Sanders II, and Francis Kalaiwaa (collectively, the Shaman Defendants) their reasonable attorney's fees as damages for Plaintiff Thomas O'Neal's breach of the release section of the Settlement Agreement. (Docs. 410, 415). The Shaman Defendants filed a supplemental motion on the amount of attorney's fees in accord with Local Rule 7.01(c). (Doc. 423). Mr. O'Neal responded, and the Shaman Defendants replied. (Docs. 425, 443). For the reasons discussed below, it is **RECOMMENDED** that the Shaman Defendants' motion for an award of

1

attorney's fees be **GRANTED-IN-PART AND DENIED-IN-PART**.

# I.   BACKGROUND

## A.   Underlying Facts[1]

On August 29, 2018, Mr. O'Neal contracted with Shaman Franchise to operate a retail establishment to sell hemp-derived CBD products in the Florida market. (Doc. 6, ¶¶ 14, 17–18; Doc. 6, Ex. 1). Shaman Franchise is an affiliate of American Shaman, which sells franchises for retail establishments that sell CBD products. (Doc. 6, ¶ 14). Under the contract, Mr. O'Neal agreed to manage one or more Florida stores American Shaman planned to open, but American Shaman would cover the initial costs of opening the store and classify the stores as company-owned. (*Id.* at ¶ 18). Also, under the contract, Mr. O'Neal would work or staff his first company-owned store for sixty hours per week and receive $1,200.00 per week as a non-recoverable draw against commissions.[2] (*Id.* at ¶ 19; Doc. 6, Ex. 1). The contract also provided Mr. O'Neal with the right to open a second company-owned store. (Doc. 6, Ex. 1).

Mr. O'Neal found a retail location in Tampa, and American Shaman executed a lease in October 2018. (Doc. 6, ¶ 20). In November 2018, Mr. O'Neal

---

[1] This report pulls the underlying facts from Mr. O'Neal's amended complaint in the underlying action. *See* (Doc. 6).

[2] Under the contract, Mr. O'Neal would also own 30% of the business and 30% of the store's net profits, which he would receive monthly. (Doc. 6, ¶ 19; Doc. 6, Ex. 1).

met Joe Griffith, who was supposed to help build out the Tampa store. However, Mr. O'Neal instead did much of the initial prep work because Mr. Griffith, who managed several American Shaman stores in the area, was working in Orlando. (*Id.* at ¶¶ 21–22). Despite being informed by the president of Shaman Franchise that Mr. Griffith would have the Tampa store ready to open on December 7, 2018, Mr. O'Neal returned to Tampa on December 5, 2018, after attending required sales training, to find the store not ready to open. (*Id.* at ¶¶ 23–24). Mr. O'Neal worked diligently to prepare the store to open and began selling products on December 14, 2018. (*Id.* at ¶ 26).

In January 2019, Mr. Griffith informed Mr. O'Neal that Brandon Carnes and Katelyn Sigman[3] would visit the Tampa store. (*Id.* at ¶ 27). Mr. Griffith also instructed Mr. O'Neal to travel to Manatee County for the grand opening of Mr. Carnes' and Ms. Sigman's store. (*Id.* at ¶ 28). After the Manatee County store opening, Mr. Griffith informed Mr. O'Neal that Mr. O'Neal works for Mr. Carnes and Ms. Sigman. (*Id.* at ¶ 29). Mr. Carnes and Ms. Sigman then became increasingly involved in Mr. O'Neal's Tampa store. (*Id.* at ¶ 31). Part of that involvement included Mr. Carnes installing new surveillance, which intercepted and recorded audio, in the Tampa store. (*Id.* at ¶¶ 31–32). Because of potential legal liability for recording in the store without notice of

---

[3] Mr. Carnes and Ms. Sigman operate Florida Shaman Properties, LLC (Florida Shaman), which is an American Shaman franchisee. (Doc. 6, ¶ 14).

surveillance, Mr. O'Neal informed Mr. Griffith that he unplugged the security system. (*Id.* at ¶ 33). That same day, Mr. Griffith notified Mr. O'Neal that he was terminated. (*Id.* at ¶ 34).

### B.    Procedural History of Underlying Action

In his amended complaint in the underlying action,[4] Mr. O'Neal sued Shaman Franchise for breach of contract. (Doc. 6, ¶¶ 35–38). Mr. O'Neal sued Florida Shaman, Mr. Carnes, and Ms. Sigman for tortious interference with a contract. (*Id.* at ¶¶ 39–44). Mr. O'Neal sued American Shaman and Shaman Botanicals for violating the Fair Labor Standards Act on minimum and overtime wages and under the Florida Private Whistleblower Act. (*Id.* at ¶¶ 45–47, 48–51, 53–58). Mr. O'Neal sued all the defendants for unjust enrichment. (*Id.* at ¶¶ 59–63). Shaman Franchise, American Shaman, and Shaman Botanicals answered and asserted affirmative defenses. (Docs. 19, 20, 21). Ultimately, Mr. O'Neal, Shaman Franchise, American Shaman, and Shaman Botanicals settled. (Docs. 65, 72).[5]

Because Florida Shaman did not respond to Mr. O'Neal's amended

---

[4] Mr. O'Neal filed his initial complaint on April 22, 2020. (Doc. 1). On April 29, 2020, Mr. O'Neal filed an amended complaint, which was the operative complaint in the underlying action. (Doc. 6).

[5] The settlement agreement between Shaman Franchise, American Shaman, Shaman Botanicals, LLC and Mr. O'Neal in the legal action underlying Mr. O'Neal's current post-judgment efforts will hereafter be referred to as the "Settlement Agreement."

complaint, Mr. O'Neal successfully moved for a Clerk's default against Florida Shaman. (Docs. 25, 26). Mr. O'Neal also successfully moved for Clerk's default against Mr. Carnes and Ms. Sigman. (Docs. 43, 44, 49, 51). Mr. O'Neal moved for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC. (Doc. 58). One month later, Mr. O'Neal settled his claims with Shaman Franchise, American Shaman, and Shaman Botanicals. (Doc. 65). A July 30, 2021 order granted Mr. O'Neal's motion for default judgment against Mr. Carnes, Ms. Sigman, and Florida Shaman Properties, LLC, and awarded Mr. O'Neal $608,400 in damages. (Doc. 77).

## C.   Procedural History of Post-Judgment Proceedings

Post-judgment, Mr. O'Neal successfully moved for entry of a charging order, entry of writs of garnishment, and leave to file a supplemental complaint. (Docs. 93, 127, 146). In December 2021, Mr. O'Neal initiated post-judgment proceedings. (Doc. 135). Mr. O'Neal's post-judgment amended complaint brought fraudulent transfer claims under Florida law to recover the value of a judgment Mr. O'Neal obtained in the underlying action. (Doc. 161). Mr. O'Neal alleged the Shaman Defendants were duly liable because they "received direct benefits as a consequence of the fraudulent conveyance." (Doc. 161, ¶ 40).

On February 28, 2022, the Shaman Defendants answered Mr. O'Neal's supplemental complaint and raised two counterclaims: a counterclaim for a

declaratory judgment that the settlement agreement between Mr. O'Neal and the Shaman Defendants in the underlying action (the Settlement Agreement) is enforceable (Count I) and a counterclaim for breach of contract by Mr. O'Neal for bringing this post-judgment proceeding against the Shaman Defendants in violation of the Settlement Agreement and for disparaging the Shaman Defendants (Count II). (Doc. 188).

On July 11, 2022, the court granted the Shaman Defendants' motion for judgment on the pleadings and dismissed Mr. O'Neal's supplemental complaint. (Doc. 230). Mr. O'Neal then unsuccessfully moved for summary judgment on the Shaman Defendants' counterclaims under theories of Florida's litigation privilege, the Shaman Defendants lacking a right to attorney's fees, and Mr. O'Neal's filing of a supplemental complaint not violating the Settlement Agreement. (Docs. 233, 276, 282).

The parties filed cross motions for summary judgment in August 2023. (Docs. 385, 390). The undersigned recommended the court award nominal damages of one dollar for Mr. O'Neal's breach of the non-disparagement section of the Settlement Agreement and reasonable attorney's fees and expenses as damages for Mr. O'Neal's breach of the release section of the Settlement Agreement. (Doc. 410, p. 22). United States District Judge Kathryn Kimball Mizelle adopted the undersigned's recommendation and directed the Shaman Defendants to file a supplemental motion on the amount of attorney's fees and

6

expenses under Local Rule 7.01(c). (Doc. 415, p. 20). The Shaman Defendants filed the instant motion, Mr. O'Neal responded, and the Shaman Defendants replied. (Docs. 423, 425, 443).

## II.   ANALYSIS

Florida courts use the "lodestar method" to calculate a reasonable attorney's fee amount. *Dependable Component Supply, Inc. v. Carrefour Informatique Tremblant, Inc.*, 572 F. App'x 796, 802 (11th Cir. 2014) (citing *Fla. Patient's Comp. Fund v. Rowe*, 472 So. 2d 1145, 1151–52 (Fla. 1985)). This "method requires the court to determine a 'lodestar figure' by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the services of the prevailing party's attorney[s]." *Unum Life Ins. Co. of Am. v. Pawloski*, No. 8:13-cv-2290-T-36MAP, 2014 WL 3887513, at *1 (M.D. Fla. Aug. 7, 2014) (citing *Rowe*, 472 So. 2d at 1151). "The lodestar amount may then be adjusted to reach a more appropriate fee amount." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, No. 14-60268-CIV-COHN/SELTZER, 2016 WL 3944033, at *3 (S.D. Fla. Jan. 15, 2016) (citing *Rowe*, 472 So. 2d at 1151). The initial burden of proving the attorney's fee requested is reasonable falls on the Shaman Defendants, who must submit evidence about the number of hours expended and the hourly rate claimed. *See Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Norman v. Hous. Auth. of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir. 1988).

The Shaman Defendants request an hourly rate of $350.00 for attorneys S.J. Moore and Nick Porto. (Doc. 423, p. 3). Mr. O'Neal does not oppose the reasonableness of the hourly rate request. (Doc. 425, p. 1). Accordingly, an hourly rate of $350.00 for attorneys S.J. Moore and Nick Porto is appropriate. Mr. O'Neal opposes the award of fees for hours spent before the filing of the supplemental proceedings, hours described in block billing, and hours attributable to pursuing the Shaman Defendants' counterclaim. (Doc. 425, pp. 4–13).

The lodestar analysis requires the court to determine the reasonable number of hours the moving party's attorneys expended. *Rowe*, 472 So. 2d at 1150 (Fla. 1985). To prevail in its request for attorney's fees, the moving party must present accurate records that detail the work the attorneys performed. (*Id.*). Attorneys must exercise billing judgment, which "means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary hours, which are hours that would be unreasonable to bill to a client and therefore to one's adversary irrespective of the skill, reputation or experience of counsel." *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (quotations, citations, and emphasis omitted).

Mr. O'Neal first argues any attorney's fees incurred before the filing of the Supplemental Complaint should not be included in the measure of damages. (Doc. 425, pp. 2–3). The court awarded the Shaman Defendants

8

attorney's fees as a measure of damages for Mr. O'Neal's breach of the release section of the Settlement Agreement. (Doc. 410, pp. 16–19; Doc. 415, p. 20). Mr. O'Neal first filed the supplemental complaint on November 16, 2021. (Doc. 99). Because Mr. O'Neal filed the supplemental complaint without leave of court, the court struck the filing. (Docs. 99, 100). Mr. O'Neal then moved for leave to file the supplemental complaint, the court granted his request, and Mr. O'Neal again filed the supplemental complaint on December 20, 2021. (Docs. 104, 127, 135).

Mr. O'Neal argues the Shaman Defendants cannot collect attorney's fees for work performed before December 20, 2021. (Doc. 425, p. 4). Although Mr. O'Neal filed the November 16, 2021 supplemental complaint in violation of Federal Rule of Civil Procedure 15(d) and it was consequently stricken from the docket, the filing constitutes the first breach of the release section of the Settlement Agreement. Counsel for the Shaman Defendants billed 24.2 hours before November 16, 2021, totaling $8,470.00 in attorney's fees. (Doc. 423-1, pp. 7–8). It is recommended the fees incurred before November 16, 2021 not be included in the fee award.

Mr. O'Neal's next contention with the requested hours concerns the hours counsel for the Shaman Defendants spent prosecuting their counterclaims. (Doc. 425, p. 5). Mr. O'Neal argues only hours expended defending against his supplemental complaint should be awarded as damages

for the breach of the release section of the Settlement Agreement. (Doc. 425, p. 5). The Shaman Defendants' counterclaim addresses the Settlement Agreement's enforceability and whether Mr. O'Neal's supplemental complaint breached certain sections. (*See* Doc. 188, pp. 19–33). The court granted summary judgment on Count II of the Shaman Defendants' counterclaim and awarded reasonable attorney's fees as a measure of damages for Mr. O'Neal's breach of the release section. (Doc. 415, p. 20). Mr. O'Neal's reliance on *Farrar v. Hobby* is misplaced. 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). *Farrar* analyzes "prevailing party" attorney's fees under 42 U.S.C. § 1988. *Id.* at 570.  This case concerns attorney's fees as the natural damages flowing from a party breaching a contractual promise not to sue. *See Wilmington Tr., N.A. v. Est. of Gonzalez*, No. 15-CV-23370-UU, 2016 WL 11656681 (S.D. Fla. Nov. 1, 2016) (finding attorney's fees proper measure of damages against party that breached release and covenant not to sue). Due to Mr. O'Neal filing a supplemental complaint barred by the Settlement Agreement, the Shaman Defendants incurred damages from defending against Mr. O'Neal's supplemental complaint and prosecuting their counterclaim. Accordingly, it is recommended the attorney's fees incurred in prosecuting the Shaman Defendants' counterclaim be included in the measure of damages for Mr. O'Neal's breach of the release.

  Mr. O'Neal also argues the Shaman Defendants utilized block billing.

(Doc. 425, pp. 4–5, 8). "Block billing is the practice of listing all of the day's tasks on a single entry, without separately identifying the time spent on each task." *Stimson v. Stryker Sales Corp.*, No. 1:17-CV-00872-JPB, 2022 WL 376375, *5 (N.D. Ga. Feb. 8, 2022) (citing *Ceres Env't Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012). The portions of billing records Mr. O'Neal provides in his response in opposition do not contain block billing because each entry breaks out the amount of time spent on a particular task. (*See* Doc. 425, pp. 8–9). Accordingly, a reduction is not recommended on this basis.

## III.   CONCLUSION

The undersigned respectfully **RECOMMENDS** the Shaman Defendants' motion (Doc. 423) for an award of attorney's fees as a measure of damages for Mr. O'Neal's breach of the Settlement Agreement be **GRANTED-IN-PART AND DENIED-IN-PART** and the Shaman Defendants be awarded $220,850.00, which is the requested amount of $229,320.00 of attorney's fees minus the $8,470.00 incurred before Mr. O'Neal's first breach of the Settlement Agreement on November 16, 2021.

**ENTERED** in Tampa, Florida June 14, 2024.

*Amanda Arnold Sansone*

AMANDA ARNOLD SANSONE
United States Magistrate Judge

11

## **NOTICE TO PARTIES**

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.