UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THOMAS O'NEAL,

    Plaintiff,

v.                                                      Case No: 8:20-cv-936-KKM-AAS

AMERICAN SHAMAN FRANCHISE
SYSTEM, LLC, CBD AMERICAN
SHAMAN, LLC, SHAMAN
BOTANICALS, LLC, SVS ENTERPRISES, LLC,
STEPHEN VINCENT SANDERS II, BRANDON CARNES,
and FRANCIS KALAIWAA,

    Defendants.
_____

## ORDER

The United States Magistrate Judge recommends granting in part and denying in part the defendants' motion for sanctions. (Doc. 472). The plaintiff's attorney objects, and the defendants respond. (Docs. 474, 476). Considering the record, I overrule the objections and adopt the Report and Recommendation.

### I. BACKGROUND

O'Neal initiated this action—related to efforts to open retail establishments in Florida that sell hemp-derived CBD products—in April 2020 against a large group of defendants. Am. Compl. (Doc. 6). O'Neal eventually settled his claims with three of those

1

defendants: Shaman Franchise System, LLC (Shaman Franchise), CBD American Shaman, LLC (American Shaman), and Shaman Botanicals (collectively, the Shaman Defendants). (Docs. 65, 72). O'Neal obtained a default judgment with respect to other defendants, including Brandon Carnes, and was awarded $608,400.00 in damages. (Docs. 77, 78).

O'Neal later filed a supplemental complaint against the Shaman Defendants, alleging that they assisted Carnes in evading O'Neal's efforts to enforce his judgment. (Doc. 161). The Shaman Defendants answered and alleged two counterclaims: a counterclaim for a declaratory judgment that the settlement agreement between O'Neal and the Shaman Defendants is enforceable and a counterclaim for breach of contract by O'Neal for bringing this post-judgment proceeding against the Shaman Defendants in violation of the settlement agreement and for disparaging the Shaman Defendants. (Doc. 188). I granted the Shaman Defendants' motion for a judgment on the pleadings with respect to O'Neal's supplemental complaint. (Doc. 230). The parties then filed cross motions for summary judgment on the counterclaims, and I granted-in-part and denied-in-part both motions in accord with the Magistrate Judge's recommendation. (Doc. 415).[1]

In the summary judgment order, I directed the Shaman Defendants to file a supplemental motion for attorney's fees and expenses and a new sanctions motion. *Id.* at

---

[1] I also denied an earlier motion for summary judgment that O'Neal filed. (Doc. 282).

2

20. The Shaman Defendants filed a supplemental motion for attorney's fees, and I awarded the Shaman Defendants $220,850.00 in attorney's fees, adopting the Magistrate Judge's recommendation. (Docs. 451, 469).

The Shaman Defendants also filed a motion for sanctions against O'Neal's attorney, Kevin Graham. (Doc. 424). The Shaman Defendants argue that sanctions are justified on four bases: (1) Graham's filing of the supplemental complaint; (2) Graham's representations to the court about his role in drafting the settlement agreement; (3) Graham's filing of baseless and duplicative motions and arguments; and (4) Graham's threats to opposing counsel. *See id.* at 4–15. O'Neal responded. (Doc. 426).

After holding an evidentiary hearing (Doc. 462), the Magistrate Judge recommended granting in part and denying in part the Shaman Defendants' motion. (Doc. 472). The Magistrate Judge recommended sanctioning Graham for filing five motions. R&R at 16; *see* (Docs. 279, 288, 398, 402, 434). The Magistrate Judge recommended "that [O'Neal's] Attorney Graham should be held jointly and severally liable for the reasonable attorney's fees and expenses related to the Shaman Defendants defending against Attorney Graham's duplicative motions." R&R at 20. The Magistrate Judge also recommended "that Attorney Graham be directed to review the Florida Bar's Guidelines for Professional Conduct and be admonished for his failure to uphold professional standards throughout

the course of this litigation." *Id.* at 21. O'Neal objected to this recommendation, (Doc. 474), and the Shaman Defendants responded, (Doc. 476).

## II. LEGAL STANDARD

### A. Sanctions

Under 28 U.S.C. § 1927, a court has the power to sanction an attorney when the attorney engages in "'unreasonable and vexatious' conduct" and that conduct "multiplies the proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). A sanction is justified "only when the attorney's conduct is so egregious that it is 'tantamount to bad faith.'" *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1239 (11th Cir. 2007) (quoting *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991)). The bad-faith inquiry turns "on the attorney's objective conduct." *Id.* To pass muster, any sanctions award under § 1927 must "bear a financial nexus to the excess proceedings." *Peterson*, 124 F.3d at 1396. The sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of [the attorney's] conduct." 28 U.S.C. § 1927.

Federal Rule of Civil Procedure 11(c) authorizes sanctions "when a party files a pleading or motion that '(1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose.'" *Gulisano v. Burlington, Inc.*, 34 F.4th 935, 941–42 (11th Cir. 2022) (quoting *Johnson v.*

*27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1314 (11th Cir. 2021)). "When deciding whether to impose sanctions under Rule 11, a district court must conduct a two-step inquiry, determining '(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous.'" *Id.* (quoting *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)).

Finally, a court has the inherent power to order sanctions. *Peer v. Lewis*, 606 F.3d 1306, 1314 (11th Cir. 2010). "[T]he inherent-powers standard is a subjective bad-faith standard." *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017). Generally, a court may rely on its inherent power only when "neither the statute nor the Rules are up to the task." *Peer*, 606 F.3d at 1315 (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)).

## B. Review of a Report and Recommendation

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report and Recommendation. 28 U.S.C. § 636(b)(1). If a party files a timely and specific objection to a finding of fact by a magistrate judge, the district court must conduct a de novo review with respect to that factual issue. *Stokes v. Singletary*, 952 F.2d 1567, 1576 (11th Cir. 1992). The district court reviews legal conclusions de novo, even in the absence of an objection. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994);

*Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d 1244, 1246 (M.D. Fla. 2019).[2]

## III. ANALYSIS

Graham raises three objections. First, he argues that he was deprived of a minimally fair hearing and due process because, among other things, the Magistrate Judge failed to consider certain pieces of evidence. Objections (Doc. 474) at 2–5. Second, Graham objects to the Magistrate Judge's conclusion that there are "competing interpretations of Attorney Graham's level of involvement with the completed Settlement Agreement." *Id.* at 5–14. Third, Graham objects to the Magistrate Judge's recommendation as to the reasonableness of certain motions. *Id.* at 14–18. I consider each in turn.

### A. Magistrate Judge's Consideration of the Holder Testimony and the Terry Supplemental Declaration

Graham argues that the Magistrate Judge deprived him of due process. Objections at 3. Graham faults the Magistrate Judge for "ignor[ing] the testimony of James T. Holder who was presented as an expert witness by Attorney Graham at the hearing" by failing to discuss it in the R&R. *Id.* Graham argues that Holder "provided expert testimony directly germane to the matters set forth" in the Shaman Defendants' motion and the R&R. *Id.* at 4. Graham also argues that the Magistrate Judge "entirely ignore[d] the written testimony

---

[2] The Shaman Defendants argue that the Magistrate Judge's report should be reviewed under a clear error standard. Resp. to Objections (Doc. 476) at 2–3. I need not reach this question because my decision would remain the same even if a more lenient standard of review applied. *See* FED. R. CIV. P. 72(a).

in the Terry Supplemental Declaration" because she failed to mention it in the R&R. *Id.* This declaration, Graham says, "is clearly dispositive as to whether Attorney Graham was 'directly involved' 'in preparing the final Settlement Agreement' and 'made line edits to the draft Settlement Agreement.'" *Id.*

I overrule this objection. "In general, regardless of whether the Court invokes Rule 11, 28 U.S.C. § 1927, or its inherent authority, it must provide a lawyer (or a party) notice of the possibility of sanctions, the reasons why the court is contemplating sanctions, and an opportunity to respond." *In re Engle Cases*, 283 F. Supp. 3d 1174, 1204 (M.D. Fla. 2017) (citing cases). Graham does not credibly argue that the Magistrate Judge deprived him of any of these things. Contrary to Graham's argument that he did "not receive anything approaching the minimally fair hearing required" by the Due Process Clause, Objections at 4–5, the Magistrate Judge held an evidentiary hearing and provided Graham with "fair notice and an opportunity for a hearing on the record," *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 767 (1980). Although Graham may challenge the Magistrate Judge's weighing of the evidence, he fails to substantiate the argument that the Magistrate Judge's weighing of the evidence in this case deprived him of due process.

Further, Graham fails to explain why in his view the Magistrate Judge erred in failing to explicitly discuss James T. Holder's testimony. Instead, in conclusory fashion, Graham argues that Holder "provided expert testimony directly germane to the matters set

7

forth in the Shaman Parties' motion and the R&R." Objections at 4. Graham's assertion fails to convince me that the Magistrate Judge erred.

Graham's arguments as to the relevance of Scott Terry's Supplemental Declaration are better suited for Graham's second objection—which concerns whether he played a role in drafting the settlement agreement—rather than his objection as to the process he received. There is no dispute that the Magistrate Judge explicitly considered Terry's testimony at the hearing on the motion of sanctions, *see* R&R at 14, which appears similar in content to Terry's supplemental declaration. The Magistrate Judge's failure to mention by name the supplemental declaration does not convince me that Graham did not receive the process he was due.

### B. Graham's Involvement in Drafting the Settlement Agreement

Graham argues that the Magistrate Judge was wrong to conclude that there are "competing interpretations of Attorney Graham's level of involvement with the completed Settlement Agreement." Objections at 5–14; *see* R&R at 14. Graham seeks a "definitive adjudication" that "he at no time lied to the Court about his involvement in the settlement negotiations or drafting of the settlement agreement." Objections at 5.

I share the Magistrate Judge's appraisal of the record. In various filings, Graham stated that he did not participate in negotiating the terms of the settlement agreement. *See, e.g.*, (Doc. 244) at 7; (Doc. 247) at 6. He represented to the Court that he had no

8

"communications with any attorney involved in drafting and negotiating the Settlement agreement and did not receive or comment on any drafts, and did not receive a copy of the Settlement Agreement until June 24, 2021." (Doc. 247) at 6.

Graham is correct that certain evidence in the record supports his assertions. Most importantly, as mentioned above, Scott Terry states that Graham "did not negotiate, draft, or edit the Settlement Agreement ultimately reached." (Doc. 474-3) ¶ 6. From the Magistrate Judge's report, it appears that Terry's testimony at the evidentiary hearing was much the same. R&R at 14 ("Mr. Terry testified at the hearing on the motion for sanctions that he kept Attorney Graham at arm's length during the drafting and negotiation of the Settlement Agreement because he believed Attorney Graham's strategy did not align with his own."). And as the Magistrate Judge notes, "Attorney Graham is not cc'ed on any of the communication between Mr. Terry and the Shaman Defendants' attorneys." *Id.*

At the same time, emails in the record demonstrate that Graham emailed proposed language to Terry on May 3, 2021, and then later, in August 2021, inquired as to whether Terry presented that language for inclusion in the settlement agreement. (Doc. 474-4) at 2, 5. Although these emails do not demonstrate that Graham participated in settlement negotiations or that he received or commented on any drafts, they do call into question the veracity of his assertion that he "had no communications with any attorney involved in

9

drafting and negotiating the Settlement agreement." (Doc. 247) at 6. On this basis, I overrule Graham's objection.

In their response to Graham's second objection, the Shaman Defendants ask me to set aside the Magistrate Judge's recommendation that Graham should not be sanctioned for filing the supplemental complaint. Resp. to Objections (Doc. 476) at 8 & n.2. They also ask me to sanction Graham "for knowingly and deliberately misrepresenting to the Court his direct involvement in preparing the underlying settlement agreement." *Id.* at 9. Given their disagreements with the Magistrate Judge's recommendation, the Shaman Defendants should have filed an objection. Regardless of waiver, the Shaman Defendants do not convince me to part ways with the Magistrate Judge. Although I granted the Shaman Defendants' motion for a judgment on the pleadings (Doc. 230), I cannot conclude that Graham's filing of the supplemental complaint was objectively unreasonable in the light of the Magistrate Judge's differing recommendation on that motion, *see* R&R at 11–12. As for the Shaman Defendants' second request, related to Graham's representations about his involvement in preparing the settlement agreement, I agree with the Magistrate Judge that sanctions are not warranted in the light of the "competing interpretations of Attorney Graham's level of involvement with the completed Settlement Agreement." *Id.* at 14.

10

### C. Graham's Filing of Baseless and Duplicative Motions

Graham argues that, contrary to the Magistrate Judge's conclusion, he filed in good faith the five motions at issue. Objections at 14–18. First, Graham contests the Magistrate Judge's authority to rule on a motion to amend a supplemental complaint. *Id.* at 15–16. Second, Graham contends that he filed the five motions in good faith to "overcome the overwhelming prejudice" caused by a declaration submitted by an attorney for the Shaman Defendants (Doc. 447-1) and the Magistrate Judge's order denying the motion to amend his supplemental complaint, Objections at 16–17.

I start with the Magistrate Judge's recommendation regarding Graham's motions for reconsideration. With one point of clarification, I agree with the Magistrate Judge that three of Graham's motions merit sanctions. According to the Magistrate Judge, "Graham filed four motions for reconsideration of the court's order granting the Shaman Defendants' motion for judgment on the pleadings." R&R at 15. One of those motions, though, is a motion for reconsideration of the Magistrate Judge's denial of Graham's motion for leave to file an amended supplemental complaint and an amended answer and affirmative defenses, not the order granting the motion for a judgment on the pleadings. *See* (Doc. 279) at 1–2 (moving "for reconsideration of the Court's Order (Doc. 273) denying O'Neal's motion to amend his Supplemental Complaint and his Answer and Affirmative Defenses").

In any case, this motion, like the others, represents one of Graham's "repeated attempts to sidestep the Court's previous decisions," all of which "have vastly multiplied the proceedings and amounted to an incredible waste of judicial and legal resources." (Doc. 404) at 7. As the Magistrate Judge recognized, Graham's motion to amend the supplemental complaint and O'Neal's affirmative defenses appeared to represent "an attempt at maneuvering around the court's order granting the Shaman Defendants' motion for judgment on the pleadings." (Doc. 273) at 11. The motion for reconsideration (Doc. 279) is only another attempt at the same objective, and Graham's filing of it, after the Magistrate Judge denied the motion to amend, constitutes bad faith litigation conduct. The same is true of the two other motions for reconsideration that the Magistrate Judge flagged. (Docs. 288, 402). Graham's main objection, aimed at the Magistrate Judge's authority to deny the motion to amend, *see* (Doc. 273), does not justify Graham's conduct. Indeed, Graham did not raise this argument in any of the motions at issue. I adopt the Magistrate Judge's recommendation as to these three motions.

I also adopt the Magistrate Judge's recommendation with respect to motions for the court to determine the applicability of the crime-fraud exception to communications and work product produced by the Shaman Defendants and their attorneys. Graham filed three motions seeking this relief. (Docs. 258, 398, 434). In his second and third motions, Graham failed to identify a plausible justification for seeking the same relief despite the

Magistrate Judge's denial of his first motion. Although Graham purported in his second motion to "address the Court's concerns," (Doc. 398) at 4, the Magistrate Judge concluded in her order denying the second motion that "[a]ll the reasons for the substantive denial the first time around persist" (Doc. 414) at 2. In the third motion, Graham again failed to cure the deficiencies in his arguments. *See* (Doc. 458) at 2 ("Mr. O'Neal does not bring forth any evidence to bolster his third request, and therefore he again fails to meet the requisite burden for applicability of the crime-fraud exception."). Therefore, I agree with the Magistrate Judge that sanctions are appropriate with respect to these two motions.

Along with their response to Graham's objections, the Shaman Defendants tack on objections of their own. *See* Resp. to Objections at 11–13. The Shaman Defendants ask me to find that Graham "is liable for additional attorneys' fees incurred by the Shaman Parties in responding to other frivolous and vexatious motions that Attorney Graham has filed throughout the proceedings." *Id.* at 11. The Shaman Defendants cite a motion for sanctions that Graham filed (Doc. 346); two motions to compel that Graham filed and Graham's objections to the Magistrate Judge's rulings (Docs. 313, 339, 376, 377); a motion for protective order that the Shaman Defendants filed and two motions to compel depositions that Graham filed (Docs. 314, 318, 326); a motion for a protective order that the Shaman Defendants filed (Doc. 340); and all the related filings, *see* Resp. to Objections

13

at 12. The Shaman Defendants represent that their attorneys worked 45.8 hours in relation to these motions and filings. *Id.* at 13.

For most of these motions, this is the first time that the Shaman Defendants have sought sanctions in the form of attorney's fees. Out of the motions included in their response, only the motions to compel depositions were enumerated in the Shaman Defendants' motion for sanctions. *See* (Doc. 424) at 11 (citing Docs. 318, 326). The Magistrate Judge never had an opportunity to consider whether sanctions were warranted with respect to most of these motions and the related filings. As a result, the Shaman Defendants are not entitled to de novo consideration of these arguments. *See Williams v. McNeil*, 557 F.3d 1287, 1291–92 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). With respect to the motions to compel depositions, I agree with the Magistrate Judge that the motions to compel depositions "do not rise to the high standard of bad faith," R&R at 16, and thus agree that sanctions are not warranted. Further, the Shaman Defendants have not provided a reason to question the Magistrate Judge's conclusions as to whether other filings by Graham merit sanctions. *See id.* at 15–16. Therefore, I adopt the Magistrate Judge's recommendation.

## IV. CONCLUSION

After reviewing the record and the parties' arguments, I overrule the objections and adopt the Report and Recommendation. Accordingly, it is **ORDERED**:

1. The Magistrate Judge's Report and Recommendation (Doc. 472) is **ADOPTED.**

2. Under 28 U.S.C. § 1927, Graham is jointly and severally liable with O'Neal for $14,105.00 in attorney's fees, which is the amount related to the Shaman Defendants defending against Attorney Graham's motions (Docs. 279, 288, 398, 402, 434).

3. Graham is admonished for his failure to uphold professional standards throughout the course of this litigation. Graham must review the Florida Bar's Guidelines for Professional Conduct.

4. The Motion to Expedite (Doc. 477) is **DENIED as moot.**

**ORDERED** in Tampa, Florida, on January 27, 2025.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge